

1  Tod L. Gamlen, State Bar No. 83458
   Jerry Salcido, State Bar No. 233282
2  **BAKER & McKENZIE LLP**
   660 Hansen Way
3  Palo Alto, CA  94304-1044
   Telephone:  +1 650 856 2400
4  Facsimile:  +1 650 856 92
   tod.l.gamlen@bakernet.com
5  jerry.m.salcido@bakernet.com

6  Attorneys for Petitioner
   MAXIM INTEGRATED PRODUCTS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10 MAXIM INTEGRATED PRODUCTS, INC.,        CIVIL ACTION

11          Petitioner,                    NO. _____

12      v.                                 **PETITION OF MAXIM**
                                           **INTEGRATED PRODUCTS, INC. TO**
13 MASTER CHIPS BVBA,                      **VACATE ARBITRATION AWARD**

14          Respondent.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

                                    1

PALDMS/358367.2

                                                    Case No
                           PETITION TO VACATE ARBITRATION AWARD

FILED

2008 JAN 31  A 9 33

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S. J.

Fee Paid
SI
99

C08  00721

JW

PVT

ADR

E-FILING

# CONTENTS

Page (s)

I.    INTRODUCTION ..................................................................................................... 1

II.   PARTIES .................................................................................................................. 6

III.  JURISDICTION ........................................................................................................ 7

IV.   VENUE ..................................................................................................................... 7

V.    INTRADISTRICT ASSIGNMENT ........................................................................... 8

VI.   GENERAL ALLEGATIONS .................................................................................... 8

      A.    The Parties' Relationship and the Arbitration Agreement ............................. 8

      B.    Master Chips' Improper Belgium Lawsuit Against Maxim (October 2001 to
            December 14, 2004) ...................................................................................... 9

      C.    The ICC Arbitration—Commencement to Initial Evidentiary Hearing from
            November 2005 to November 9, 2006) ........................................................ 10

            i.    Master Chips Claims in the Arbitration, Maxim's Counterclaim and
                  Procedural Order No. 1 ...................................................................... 10

            ii.   The Terms of Reference and Procedural Order No. 2 ......................... 12

            iii.  Relevant Discovery Proceedings ....................................................... 13

            iv.   Master Chips' Claim for Increased Damages, Maxim's Request for
                  Postponement of November 2006 Hearing and Arbitrator's Denial ... 13

            v.    The November 2006 Hearing and The November 2006 Stipulation ..... 14

      D.    The ICC Arbitration—Proceedings After Initial November 2006 Hearing to
            November 9 Award (December 2006 to November 9, 2007) ......................... 16

            i.    The Arbitrator's Refusal to Honor the November 2006 Stipulation ..... 16

            ii.   The Arbitrator Improperly Allowed Master Chips to Increase Its
                  Damages Claim On the Eve of the May 2007 Hearing and Improperly
                  Denied Maxim's Request to Continue that Hearing ........................... 22

            iii.  The Arbitrator Improperly Permitted Master Chips' Expert on Belgium
                  Law (Willemart) to Testify in French .................................................. 25

      E.    The November 9 Award .................................................................................. 27

            i.    The Arbitrator's Rulings on Master Chips' Notice Termination Claim ......... 27

            ii.   The Arbitrator's Rulings on Master Chips' Equitable Compensation
                  Claim ................................................................................................ 27

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

i

iii.    The Commission Claim and The Arbitrator's Reliance on Arbitrary, Unauthenticated Information.................................................................28

VII.   THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE ARBITRATOR IMPROPERLY REFUSED TO POSTPONE THE NOVEMBER 2006 AND MAY 2007 HEARINGS...............................................29

VIII.  THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE ARBITRATOR ALLOWED MASTER CHIPS' EXPERT TO TESTIFY IN FRENCH IN VIOLATION OF ITS OWN ORDER AND TO THE PREJUDICE OF MAXIM..........................................................................................................30

IX.    THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE ARBITRATOR IGNORED THE NOVEMBER 2006 STIPULATION ..............................31

X.     REQUEST FOR RELIEF.................................................................................31

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

ii

1    Pursuant to Section 10 of the Federal Arbitration Act ("FAA") and Article V(1)(B) of the

2   Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the

3   "New York Convention"), Petitioner Maxim Integrated Products, Inc. ("Maxim"), by its undersigned

4   counsel, hereby files this Petition to vacate the arbitration award entered on November 9, 2007 ("the

5   November 9 Award") in favor of Master Chips BVBA ("Master Chips") in the International

6   Chamber of Commerce, International Court of Arbitration, Case No. 14123/RCH/JHN. A true and

7   correct copy of the November 9 Award is submitted herewith as **EXH. 51**.[1] The arbitrator was Eric

8   Van Ginkel ("the Arbitrator").

9        In support of this Petition, Maxim alleges as follows:

## I. INTRODUCTION

11       1.    In this Petition Maxim is requesting that the Court vacate the November 9 Award in

12  which, among other things, Master Chips was awarded $2,124,904 because the Arbitrator allowed

13  Master Chips to abuse and manipulate the arbitration process; and, as a result, the Arbitrator

14  rendered an award in violation of the New York Convention, the FAA, and Maxim's rights to due

15  process and a fair hearing.

16       2.    Maxim is an American manufacturer of analog semiconductor devices located in

17  Sunnyvale, California; Master Chips is located in Belgium and is a former distributor of Maxim.

18  The parties' distributor agreement, which is in English, is governed by Belgian law and contains an

19  arbitration clause that calls for arbitration in Santa Clara County, California. In March 2003, Maxim

20  terminated Master Chips as a distributor after giving Master Chips 18 months' advance written

21  notice of termination in September 2001. Thereafter, in direct violation of the arbitration clause

22  Master Chips filed a court action in the Belgian Commercial Court, which ruled that the dispute was

23  subject to arbitration; this ruling was affirmed on appeal by the Belgian Court of Appeal.

24  Consequently, it was not until 2005—after Master Chips caused the parties to incur the expense and

25  time to litigate in a foreign court—that Master Chips finally commenced arbitration proceedings.

26       3.    In its Request for Arbitration Master Chips asserted several claims under Belgian law.

27

28  [1] The exhibits referred to in this Petition are attached to the Notice of Lodgment being filed with this Petition.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

1

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1    The three (3) most significant claims were for (i) failure to grant a reasonable termination period

2    (alleging that 18 months prior notice was insufficient) ("the Termination Notice Claim");

3    (ii) equitable compensation for the value of the clientele allegedly developed by Master Chips but

4    which remained with Maxim after termination ("the Equitable Compensation Claim"); and,

5    (iii) underpayment of commissions allegedly due to Master Chips over the life of the agreement

6    ("the Commission Claim"). In the November 9 Award:

7            a.    The Arbitrator found in favor of Master Chips on the Termination Notice

8    Claim (finding that Maxim should have given Master Chips 30 months notice of termination, *six*

9    *months more* than the longest termination period found reasonable by a Belgian court) and, in favor

10   of Master Chips on the Equitable Compensation Claim; however, the Arbitrator deferred awarding

11   damages on those two claims, which will likely be substantial, until after they are calculated by an

12   expert accountant appointed by the Arbitrator. The Arbitrator has stated he will issue an award with

13   respect to those claims on or about March 30, 2008;

14           b.    On the Commission Claim the Arbitrator ruled in favor of Master Chips and

15   awarded it $2,081,043;

16           c.    The Arbitrator also awarded Master Chip's $43,861 plus interest for a claim

17   that it was entitled to reimbursement for contributing to the salary of a Field Application Engineer

18   ("FAE"); and

19           d.    The Arbitrator also found in Master Chips' favor on its claim of "undue

20   payment" of publicity expenses, but deferred awarding damages until it rendered its final award[2].

21       4.    The November 9 Award should be vacated because through the abusive and

22   manipulative conduct of Master Chips the Arbitrator engaged in misconduct and acts in violation of

23   the New York Convention, the FAA and Maxim's rights to due process and a fair hearing in the

24   following ways:

25           a.    *After violating the parties' arbitration clause, by filing a court action in*

26   *Belgium, (leading to unnecessary expenditures of money and time) and after being compelled to*

27   ─────────────────

28   [2] The Arbitrator also dismissed Master Chips' newly added claim under Section 21 of the Belgian Act of April 13, 1995, dismissed Master Chips' claim that it was damaged as result of Maxim's pricing and publicity campaign, and dismissed Maxim's counterclaim.

2

ker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No.
PETITION TO VACATE ARBITRATION AWARD

1  *arbitrate by the Belgium courts, Master Chips manipulated the amounts it was claiming in the*

2  *arbitration and the Arbitrator refused to continue the hearing so as to deny Maxim a fair*

3  *opportunity to defend itself against the damages claim that Master Chips belatedly and improperly*

4  *asserted.* When Master Chips filed its Request for Arbitration in November of 2005, it claimed

5  damages in the amount of €750,000 (approximately $878,941), which amount was set forth in the

6  June 2006 Terms of Reference.

7         i.     After discovery closed on September 8, 2006 and prior to the

8  scheduled November 2006 evidentiary hearing, Master Chips notified the parties and the Arbitrator

9  that it was increasing its damages claim to more than $10 million. Maxim requested a continuance

10  of the hearing but such request was denied and the hearing proceeded on November 6, 7, and 8,

11  2006. In early January of 2007, the ICC Court required Master Chips to pay additional advance

12  costs in conformance with its newly increased $10 million claim. In order to reduce the amount of

13  advance costs it would have to pay, Master Chips filed a Formal Request in January of 2007

14  reducing its claim to $2 million, which the ICC Court accepted. Thus, as of Friday, May 4, 2007 the

15  amount Master Chips was claiming as damages had been limited to $2,000,000.

16        ii.    A final evidentiary hearing was scheduled to commence on Monday,

17  May 7, 2007 for the purpose of receiving expert testimony on Belgian law and closing arguments.

18  On the afternoon of Friday, May 4, 2007, at approximately 4:11 p.m. Master Chips informed the

19  ICC that it was wiring additional advance on costs to the ICC Court and was increasing its damages

20  claims from $2 million to $10 million; Master Chips sent such notice to Maxim's counsel on Friday,

21  May 4, 2007 at 5:41 p.m., that is, after close of business. Such attempt to increase its damages was

22  in violation of ICC Rules because Master Chips had filed no Formal Request to increase its

23  damages. Had it done so, the May 2007 hearing could not have proceeded until the ICC had

24  approved the Formal Request. At the commencement of the evidentiary hearing on Monday, May 7,

25  2007, Maxim's counsel *again* requested that the hearing be continued or postponed in order to allow

26  Maxim and its counsel to prepare for damage claims that had increased by $8 million. The

27  Arbitrator refused to continue or postpone the May 2007 hearing which took place on May 7 and 8

28  and led to the November 9 Award. In spite of the fact that the ICC had approved a maximum

aker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

3

Case No
PETITION TO VACATE ARBITRATION AWARD

PALDMS/358367.2

1   damages claim of only $2 million, the Arbitrator treated Master Chips' unilateral, unauthorized

2   increased claim for damages as valid, and even added to Master Chips' claim by nearly another

3   $4 million, bringing Master Chips' total claim to $13,760,475.

4                 iii.     Moreover when the ICC Court discovered what Master Chips had

5   done, it notified the parties and the Arbitrator that it was returning Master Chips' additional

6   payment, because Master Chips had not followed the proper procedure (*i.e.*, by filing a Formal

7   Request) to increase its claim for damages. The Arbitrator then unilaterally contacted the ICC Court

8   and persuaded it to allow Master Chips to choose whether to file a Formal Request to increase its

9   damages claim or to request return of the additional payment, thereby evidencing a disturbing lack of

10   impartiality. Master Chips filed the Formal Request, which the ICC Court accepted two months

11   after the parties had filed their closing briefs. Had the Formal Request been filed on May 4 as it

12   should have been, the proceedings would have been postponed to allow Maxim to respond to the

13   Formal Request and for the ICC Court to rule on it. Maxim has been prejudiced as it had prepared

14   its defense based on a $2 million claim and would have taken other steps in order to properly defend

15   itself against a claim of between $10 million $13 million.

16                 b.     ***The Arbitrator allowed Maxim's expert on Belgian law to testify in French***

17   ***even though the official language of the Arbitration was English.*** Maxim could not understand or

18   address such testimony, and such testimony was accepted by the Arbitrator as the basis of the

19   November 9 Award. On or about May 7, 2006 the Arbitrator issued Procedural Order No. 1 in

20   which he ordered, among other things, that the official language of the arbitration would be English

21   and that written submissions and oral submissions could be submitted to the Arbitrator in English or

22   Dutch without the necessity of a translation. On or about August 17, 2006 the Arbitrator issued

23   Procedural Order No. 2 in which he ordered, among other things, that at the hearing for examining

24   witnesses and experts no translator would be required. An initial hearing was held on November 6,

25   7, and 8, 2006 in which lay witnesses testified, either in English or Dutch. On May 7 and 8, 2007 a

26   further hearing was held in which each party's experts were to testify on the Belgian law relating to

27   each of Master Chips' claims. At that hearing the Arbitrator violated his own Procedural Order

28   No. 1, to the detriment of and prejudice to Maxim, by allowing Master Chips to examine its own

laker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1  expert witness, Marc Willemart ("Willemart"), in French, even though Willemart speaks both

2  English and Dutch. The counsel for Maxim who was to examine Willemart is not fluent in French

3  and had no notice that Willemart would testify in French until his examination began. Maxim's

4  counsel objected on these grounds but the Arbitrator permitted and even encouraged Willemart's

5  examination to be conducted in French. Maxim's counsel was unable to conduct a meaningful

6  cross-examination of Willemart or rebut his testimony; and was prevented from formulating her line

7  of questioning for Maxim's own expert witness in the hopes of addressing the issues raised by

8  Willemart. The Arbitrator, who also speaks French, essentially received this evidence *ex parte*,

9  because Maxim had no meaningful opportunity to address it. In the November 9 Award the

10  Arbitrator adopted many of the opinions testified to in French by Master Chips' expert.

11          c.    *Master Chips misrepresented facts to the Arbitrator relating to the*

12  *production of documents which caused the Arbitrator to disregard a stipulation entered into by*

13  *the parties relating to such document and to employ an arbitrary and unjustified method to*

14  *calculate $2,081,043 of the $2,124,904 amount awarded in the November 9 Award.* During

15  discovery in the arbitration proceeding Master Chips requested several categories of documents from

16  Maxim which Master Chips claimed were relevant to the amount of commissions it was allegedly

17  due under its Commission Claim. In this regard Master Chips contended it would need sales data for

18  Maxim's products sold by Arrow (a distributor of Maxim's products) to Alcatel and sales data for

19  Maxim's products sold by Flextronics (an Alcatel contract manufacturer) to Alcatel. In

20  November 2006 Master Chips and Maxim reached a stipulated agreement ("the November 2006

21  Stipulation") which was confirmed by the Arbitrator at the November 2006 evidentiary hearing.

22  Under the November 2006 Stipulation the parties agreed that Maxim would contact Arrow in an

23  effort to obtain sales data of specific Maxim parts sold by Arrow to Alcatel, and Master Chips would

24  contact Flextronics in an effort to obtain sales data of specific Maxim parts sold by Flextronics to

25  Alcatel. The Arbitrator approved this stipulation at the November 2006 hearing. Maxim complied

26  with its end of the agreement and obtained sales data from Arrow, which Maxim provided to the

27  Arbitrator and Master Chips. Master Chips was not successful in obtaining information from

28  Flextronics. Nevertheless, based upon the misrepresentation of Master Chips the Arbitrator

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

5

Case No
PETITION TO VACATE ARBITRATION AWARD

1   thereafter proceeded to ignore the November 2006 Stipulation and issued a ruling that could not be

2   reconciled with such stipulation. Among other things, on or about April 14, 2007 the Arbitrator

3   issued Procedural Order No. 7 in which he accepted statements of Master Chips that Maxim had

4   failed to produce sales figures relating to sales by third parties to Alcatel; and, the Arbitrator ruled

5   that if such sales were found to be commissionable Master Chips would be allowed to submit its

6   own calculation of such sales based on Master Chips' "extrapolation" from publicly available

7   information. In the November 9 Award the Arbitrator also ruled that Maxim had not produced sales

8   data from third parties, wholly ignoring the fact that Maxim was only required to contact one third

9   party—Arrow. The Arbitrator also ruled that Maxim had failed to produce sales figures from

10  Flextronics, which was *Master Chips'* responsibility. Consequently, the Arbitrator refused to

11  consider the *actual* sales figures of Maxim and Arrow provided by Maxim and ruled that Maxim had

12  not produced the required information. In lieu of the *actual* records produced by Maxim pursuant to

13  the November 2006 Stipulation, the Arbitrator accepted Master Chips' arbitrary "best estimate" of

14  past commissions, which estimate was based on irrelevant and unauthenticated sales data found in

15  purported "public records" of Alcatel concerning its *worldwide* (not just Belgium) sales of products;

16  and, *was not limited to only those products which contained a Maxim part for which Master Chips*

17  *was entitled to a commission.* Relying on this unsubstantiated and irrelevant information the

18  Arbitrator awarded Master Chips past commissions of $2,081,043—a number which far exceeds any

19  amount supported by the documents which were submitted in accordance with the November 2006

20  Stipulation. Maxim justifiably believed that the Arbitrator and Master Chips would act in

21  accordance with the November 2006 Stipulation, and therefore had no opportunity to refute the

22  "evidence" on which Master Chips and the Arbitrator relied in determining the amount of past

23  commissions to which Master Chips alleged it was entitled.

24      5.      These acts, both separately and in combination, are what led to the November 9

25  Award and demonstrate that such award was rendered in violation of the New York Convention, the

26  FAA, and Maxim's rights to due process and a fair hearing.

## II. PARTIES

28      6.      Maxim is incorporated in Delaware and has its principal place of business in

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1    Sunnyvale, California. Maxim's counsel in the arbitration proceedings were Jan Swinnen and Bieke

2    Noels of Lafili, Van Crombrugghe & Partners, Kardinaal Mercierlei 44, B-2600 Antwerpen,

3    Belgium.

4        7.    Master Chips is a limited liability company organized under the laws of Belgium and

5    located in Kortrijk, Belgium. Master Chips' counsel in the arbitration proceedings were Leo

6    Goovaerts, Sabine Thielemans, and Philip Peerens of Novalex Advocaten, Kerselarenlaan 118

7    Avenue des Cerisiers, Brussels 1200 Bruxelles, Belgium.

## III. JURISDICTION

8        8.    This Court has subject matter jurisdiction over this Petition under 9 U.S.C. § 203

9

10    because it falls under the Convention in that it (1) arises out of a legal relationship, (2) is commercial

11    in nature, and (3) the relationship is not entirely domestic in scope. *Ministry of Defense of the*

12    *Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989).

13        9.    This Court also has subject matter jurisdiction over this petition under 28 U.S.C.

14    § 1332(a),(c). Maxim is a citizen of Delaware and California, Master Chips is a citizen of Belgium,

15    and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. *See Certain*

16    *Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d, 926, 932 n.1 (N.D. Cal.

17    2003).

18        10.    This Court has personal jurisdiction over Master Chips as it signed an arbitration

19    agreement that is subject to the New York Convention and the agreed upon place of arbitration is

20    located in Santa Clara County, California which is within this District. *See Reed & Martin, Inc. v.*

21    *Westinghouse Electric Corp.*, 439 F.2d 1268, 1276-1277 (2d Cir. 1971); *Marine Trading Ltd. v.*

22    *Naviera Comercial Naylamp SA*, 879 F. Supp. 389, 391 (S.D.N.Y. 1995).

## IV. VENUE

24        11.    Venue is proper in this Court because this Court is in the district and division which

25    embraces the place designated in the agreement as the place of arbitration and is within the United

26    States (notwithstanding the fact that the Arbitrator ordered that all witness hearings take place in

27    Brussels, Belgium). 9 U.S.C. § 204.

28        12.    Venue is also proper in this Court because Master Chips is an alien corporation (a

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No.
PETITION TO VACATE ARBITRATION AWARD

1    Belgium limited liability company) and therefore venue is proper in any District Court. *See* 28

2    U.S.C. § 1391(d); *see also Brunette Machine Work, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706,

3    714 (1972).

## V.  INTRADISTRICT ASSIGNMENT

5          13.    This action arose in Santa Clara County and should be assigned to the San Jose

6    Division because "a substantial part of the events [*i.e.* the arbitration] which give rise to the claim

7    occurred" in San Jose, California. Rules 3-2(c), (e) of the Civil Local Rules of the Northern District

8    of California.

## VI.  GENERAL ALLEGATIONS

10   **A.    The Parties' Relationship and the Arbitration Agreement**

11         14.    Maxim manufactures analog semiconductors which are used in a variety of

12   electronics, including cell phones, notebook computers, navigational systems, and modems. Master

13   Chips was Maxim's distributor for Maxim's products in Luxemburg from October 1, 1987 to

14   October 1, 1998, and in Belgium from October 1, 1987 to March 7, 2003; between October 1, 1987

15   to December 1, 1998, Master Chips was an exclusive distributor of Maxim parts in Belgium and

16   Luxemburg. Maxim's Answer to the Request for Arbitration ("Maxim's Answer"), p. 5,

17   Section III.1, a true and correct copy of which is submitted herewith as **EXH. 7**. Prior to 1998

18   several companies in Belgium, such as Alcatel Telecom ("Alcatel"), Philips, and Option, purchased

19   Maxim analog switches and other products through Master Chips. November 9 Award, p. 5,

20   **EXH. 51**. Alcatel was Maxim's biggest customer in Belgium, purchasing Maxim products for

21   inclusion into several products, including System 12 exchanges and ADSL modems. *Id*. Master

22   Chips was unable to meet client needs and expectations, which resulted in client complaints; it

23   therefore became economically beneficial for Maxim to sell directly to these customers. Declaration

24   of Jan Swinnen ("Swinnen Decl.") ¶ 7.b.; Maxim's Answer, p. 5, Section III.2, **EXH. 7**.

25   Accordingly, Maxim and Master Chips entered into a modified distribution agreement on

26   December 1, 1998, which set forth that Master Chips would continue distributing Maxim products in

27   Belgium, but not in Luxemburg, and would have the right to continue distributing Maxim products

28   to Alcatel, Philips, and Option which became known as "House Accounts," but from that point on

8

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

Maxim also would have direct access to sale its own products to the House Accounts." International Non-Exclusive Distributor Agreement Between Maxim Integrated Products, Inc. and Master Chips BVBA, dated December 1, 1998, ("the 1998 Distribution Agreement") Article I(B), a true and correct copy of which is submitted herewith as **EXH. 2**; November 9 Award, p. 2-3, **EXH. 51**. From that point Maxim began selling directly to the House Accounts. Under the 1998 Distribution Agreement, however, Master Chips was entitled to receive commissions for sales of Maxim's parts made directly to a House Account provided that Master Chips could demonstrate its involvement in a "design win"[3] for the Maxim part that was ultimately sold by Maxim to Alcatel. The 1998 Distribution Agreement, Article I (B), **EXH. 2**.

15. Article 16, paragraphs (F) and (G), of the 1998 Distribution Agreement contained a choice of law and arbitration clause, which provide as follows:

> F. This Agreement and the performance thereof shall be governed by and construed in accordance with the laws of Belgium.

> G. The Parties agree that any disputes which may arise hereunder or in any way arising out of the interpretation or application of this Agreement shall be submitted to the international Commercial Arbitration Committee of the International Chamber of Commerce for arbitration in accordance with its rules and that the decision on such arbitration shall be final. The place of arbitration shall be the State of California, Santa Clara County unless another place be designated by mutual agreement between the parties.

The 1998 Distribution Agreement Article 16(F),(G), **EXH. 2**.

16. On August 31, 2001, Maxim sent Master Chips a notice of termination of the 1998 Distribution Agreement, which termination was to be effective after 18 months, that is, by March 7, 2003. Notice of Termination, a true and correct copy of which is submitted herewith as **EXH. 3**; November 9 Award at p. 2, **EXH. 51**.

**B.    Master Chips' Improper Belgium Lawsuit Against Maxim (October 2001 to December 14, 2004)**

17. On October 30, 2001, Master Chips violated the arbitration clause of the 1998 Distribution Agreement by filing a lawsuit against Maxim in the Commercial Court of Brussels on the grounds, *inter alia*, that under the Belgian Exclusive Distribution Act of July 21, 1961 ("the

---

[3] A "design win" means that a given Maxim party was chosen by Alcatel to be incorporated into the design of one or more Alcatel products.

9

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No
PETITION TO VACATE ARBITRATION AWARD

PALDMS/358367.2

1  Belgian Distribution Act"), Maxim did not provide Master Chips with a reasonable termination

2  period or equitable compensation for the loss of Maxim's account. The Commercial Court

3  dismissed the case on the grounds that it was subject to arbitration pursuant to the 1998 Distribution

4  Agreement. November 9 Award, p. 2, **EXH. 51**.

5      18.    Master Chips appealed the Commercial Court's decision to the Court of Appeal of

6  Brussels. On December 14, 2004 the Court of Appeal affirmed, also holding that the dispute was

7  subject to mandatory arbitration. *Id.*

8  **C.    The ICC Arbitration—Commencement to Initial Evidentiary Hearing (from November 2005 to November 9, 2006)**

9

10      19.    On November 30, 2005, that is, after dragging the parties through several years of

11  unnecessary litigation in the Belgian judicial system, and then waiting another year after the Court of

12  Appeal of Brussels issued its decision, Master Chips filed a Request for Arbitration against Maxim

13  in the International Chamber of Commerce International Court of Arbitration ("ICC Court").

14  Request for Arbitration, a true and correct copy of which, along with an English translation, is

15  submitted herewith as **EXH. 4**.

16      20.    Under Article 16(G) of the 1998 Distribution Agreement the arbitration was to be

17  conducted in accordance with the ICC Rules of Arbitration ("ICC Rules"). A true and correct copy

18  of the ICC Rules is submitted herewith as **EXH. 1**. Under Articles 4(4), 30, 31 and Appendix III of

19  the ICC Rules, the cost of the arbitration included administrative fees and arbitrator fees and are

20  calculated based on the amount of the claim; and, the parties are to advance the costs so calculated

21  pursuant to requests for such payment by the Secretary General of the ICC. To the extent an

22  advance of costs is not complied with by the party making the claim, such claim is to be considered

23  withdrawn. ICC Rules, Art. 30(4).

24      i.    **Master Chips Claims in the Arbitration, Maxim's Counterclaim and Procedural Order No. 1**

25

26      21.    Master Chips asserted several claims for relief in its Request for Arbitration,

27  including the following:

28      a.    The Termination Notice Claim under Section 2 of the Belgian Distribution

10

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

1   Act, in which Master Chips claimed .. was damaged in the amount of nearly €7 million ($8,203,445)

2   (based on November 2005 exchange rates) as a result of the allegedly unreasonable termination

3   period of 18 months.  Request for Arbitration, pp. 10-12, **EXH. 4**.

4         b.    The Equitable Compensation Claim under Section 3 of the Belgian

5   Distribution Act in which Master Chips claimed that Maxim owed Master Chips equitable

6   compensation for the clientele that Master Chips built up over the years and which remained with

7   Maxim after termination of the 1998 Distribution Agreement. *Id.*, pp. 12-14, **EXH. 4**.

8         c.    The Commission Claim in which Master Chips claimed it was entitled to an

9   undetermined amount of commissions which Maxim had allegedly failed to pay over the life of the

10  1998 Distribution Agreement. *Id.*, p. 15, **EXH. 4**.[4] Prior to filing its lawsuit, Master Chips had

11  never complained that Maxim's commission payments were deficient.

12        d.    Master Chips contended it was entitled to at least €8 million ($9,375,365).

13  However, it further alleged that it was seeking only €750,000 ($837,900) in damages because it

14  could not pay an advance on costs corresponding to a €8 million claim which would be required by

15  Rule 30(1) and Appendix III of the ICC Rules. *Id.*, p. 15, **EXH. 4**; ICC Rules, **EXH. 1**.

16      22.    On April 14, 2006, Maxim filed an Answer to Master Chips' Request for Arbitration.

17  Maxim generally denied Master Chips' allegations.  Maxim also specifically alleged, among other

18  things, that the termination notice period was reasonable, Master Chips was not entitled to equitable

19  compensation because it did not develop the clientele known as the House Accounts, and Maxim had

20  paid all commissions due to Master Chips per the 1998 Distribution Agreement.  Maxim also filed a

21  Counterclaim against Master Chips for overpayment of commissions between the January 1, 1998

22  and March 7, 2003 time period.  Maxim's Answer, pp. 6-11, **EXH. 7**.

23      23.    On February 24, 2006 the ICC appointed Eric Van Ginkel as the sole arbitrator in the

24  arbitration.  Letter from Secretariat of the ICC Court to Eric Van Ginkel dated February 24, 2006, a

25  true and correct copy of which is submitted herewith as **EXH. 5**.

26

27  ---

[4] The other claims asserted by Master Chips were: reimbursement for contributing to the FAE's salary; "undue payment" of publicity expenses; and damages as result of Maxim's pricing and

28  publicity campaign.

11

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

24.    Based on Master Chips' claim for damages of €750,000 ($837,900) the Secretariat of the ICC Court estimated the costs of arbitration to be $50,000 and requested Master Chips to pay a provisional advance of costs in the amount of $15,000 to cover the costs of arbitration until the Terms of Reference had been drafted. Letter from the Secretariat of the ICC Court to Eric Van Ginkel dated February 24, 2006, a true and correct copy of which is submitted herewith as **EXH. 6**. On February 24, 2006, after Maxim had filed its Answer and Counterclaim, the Secretariat requested Master Chips and Maxim to pay the remainder of the costs. *Id*. Master Chips paid an additional $10,000 and Maxim paid $25,000. *Id*.

25.    On May 7, 2006 the Arbitrator issued Procedural Order No. 1, which established the official language of the arbitration to be English, and allowing for evidence to be produced in English and Dutch); the place of arbitration to be San Jose, California; the manner of procedural conferences to be via telephone; and the place for evidentiary hearings. Procedural Order No. 1, a true and correct copy of which is submitted herewith as **EXH. 8**.

ii.    **The Terms of Reference and Procedural Order No. 2**

26.    Under Article 18 of the ICC Rules the Arbitrator is to prepare Terms of Reference which are to include, among other things, "a summary of the parties' respective claims and of the relief sought by each party, with an indication to the extent possible of the amounts claimed or counterclaimed; and, "a list of issues to be determined." Under Article 18(2) the Terms of Reference are to be signed by the parties and the Arbitrator. The Arbitrator prepared Terms of Reference which were signed by both parties; and in June 2006 the ICC Court entered such Terms of Reference, which were to govern the arbitration. A true and correct copy of the Terms of Reference is submitted herewith as **EXH. 9**. Among other things, the Terms of Reference set forth the issues to be arbitrated, and provided the amount of damages being claimed by Master Chips was limited to €750,000. Terms of Reference, p. 11, **EXH. 9**.

27.    On August 16, 2006, the Arbitrator issued his Procedural Order No. 2, a true and correct copy of which is submitted as **EXH. 10**. In Procedural Order No. 2 the Arbitrator scheduled an evidentiary hearing for November 6, 7, and 8 (if required), 2006; in ¶ 1.D of the order the Arbitrator ordered that no translator will be required to attend the hearing. The order also set forth

12

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1   the following deadlines:

2             a.      September 1, 2006—Witness Statements to be disclosed.

3             b.      September 8, 2006—All discovery to be completed.

4             c.      September 22, 2006—Initial arbitration hearing "memorials" (*i.e.*, briefs or

5   memoranda) to be submitted.

6             d.      October 11, 2006—"Counter" (or opposition) arbitration "memorials" to be

7   submitted.

8             e.      October 20, 2006—"Repliques" (reply briefs) to be submitted.

9             f.      November 1, 2006—"Dupliques" (sur-reply briefs) to be submitted.

10    **iii.    Relevant Discovery Proceedings**

11        28.     During the discovery stage of the arbitration proceedings, Master Chips requested

12  information concerning Maxim's sales data for various Maxim parts that were sold to the House

13  Accounts. Maxim objected to certain parts of the request which were overbroad and Master Chips

14  did not contest the objections. Email from Jan Swinnen dated September 21, 2006, a true and

15  correct copy of which is submitted herewith as **EXH. 11.** In response to Master Chips' request,

16  Maxim searched through thousands of documents at various Maxim locations such as Germany, the

17  United Kingdom, France, and Oregon and filled four large boxes worth of documents, which Maxim

18  provided to its Belgian counsel on September 6, 2006. Maxim's Belgian counsel worked full time to

19  determine which documents were responsive to Master Chips' request and produced the documents

20  to Master Chips. *Id.*

21        29.     Master Chips was not satisfied with the production, claiming that the production was

22  incomplete. Obstruction of the Arbitrational Legal Proceedings, p. 2, a true and correct copy of

23  which is submitted herewith as **EXH. 22.** On October 6, 2006, Master Chips filed an untimely

24  petition requesting that Maxim produce additional information. *Id.* Maxim objected on the grounds

25  that Maxim had fully complied with the request. *Id.* This dispute was eventually resolved by way of

26  stipulation which the parties reached at the November 2006 hearing, discussed below.

27

28

taker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

13

Case No _____
PETITION TO VACATE ARBITRATION AWARD

     **iv.**     **Master Chips' Claim for Increased Damages, Maxim's Request for Postponement of November 2006 Hearing and the Arbitrator's Denial**

30.     As of September 8, 2006 discovery had closed and Master Chips' claims were limited to €750,000 as set forth in the Request for Arbitration and Terms of Reference. However, on September 9, 2006 and again on October 11, 2006, and in preparation for the November 2006 hearing, Master Chips served its initial and counter "memorials" (*i.e.*, arbitration briefs) on the Arbitrator and Maxim which stated that Master Chips intended to (1) increase its prayer for damages from €750,000 to $10,946,820; and (2) add claims based on violations of Articles 20 and 21 of the Belgian Act of April 13, 1995 ("1995 Belgian Agency Act") regarding agency agreements, without seeking approval from the ICC Court. In a letter dated October 12, 2006 Maxim's counsel objected to the Arbitrator's considering Master Chips' additional or increased damages and additional claims; and requested either that the claims should be declared inadmissible, or, the hearing should be continued. Letter from Maxim's counsel Jan Swinnen to the Arbitrator dated October 12, 2006, a true and correct copy of which is submitted herewith as **EXH. 12**. In this latter regard Maxim requested the Arbitrator to continue evidentiary hearings scheduled for November 2006 because if the arbitration would hear such new claims Maxim would have to address them for the first time in the arbitration hearing and Master Chips had provided no discovery or disclosure concerning them. *Id.* The Arbitrator denied Maxim's request and proceeded with the November 2006 hearing.

     **v.**     **The November 2006 Hearing and The November 2006 Stipulation**

31.     Maxim was severely prejudiced in this regard because it had prepared for the hearing based on a damages limit of €750,000. It did not have a reasonable opportunity to take discovery on, or otherwise procure evidence, relating to a $10 million claim.

32.     On November 6-8, 2006 the evidentiary hearing was held in Brussels, Belgium. Pursuant to Procedural Order No. 2 the original purpose of the hearing was to examine witnesses and experts and to present oral argument. Procedural Order No. 2 at ¶ 1., A., a true and correct copy of which is submitted herewith as **EXH. 10**. However, because of the difficulties the parties and Arbitrator experienced with regards to choosing expert witnesses and scheduling their availability for examination, testimony from expert witnesses and oral argument was not presented at that

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1   hearing and a further hearing was scheduled for such purpose.

2       33.     At that hearing, non-expert evidence was presented. Maxim was severely prejudiced

3   in this respect because it had taken discovery and prepared for the hearing based on a €750,000

4   claim. In addition, the following occurred:

5           a.     In light of Master Chips' then recent attempts to increase its damages claim,

6   the Arbitrator told the parties to expect a request from the ICC Court for additional advance costs.

7   Email from Jan Swinnen to the Arbitrator, dated December 7, 2006, a true and correct copy of which

8   is submitted herewith as **EXH. 15**.

9           b.     As of November 8, the last day of the November 2006 hearing, Maxim and

10  Master Chips had still not resolved the extent to which Maxim was to produce sales records which

11  Master Chips contended were relevant to the Commission Claim. At the encouragement of the

12  Arbitrator counsel for Maxim and Master Chips conferred and agreed to the November 2006

13  Stipulation, concerning the disclosure duties that each party had with regards to the Commission

14  Claim. The Arbitrator approved the November 2006 Stipulation at the November 2006 hearing.

15  11/08/2006 Arbitration Hearing Transcript, Bates #s Nov0806C-1 to Nov0806C-22, a true and

16  correct copy of which is submitted herewith as **EXH. 13**. Under the November 2006 Stipulation the

17  parties agreed that:

18           i.     Maxim and Master Chips agreed on the Maxim products that were at

19  issue in the Commission Claim.[5]

20           ii.     Maxim would produce a spreadsheet (the "Spreadsheet") reflecting all

21  of its and its subsidiaries' and branches' sales of such part numbers to Alcatel, its subsidiaries and

22  branches. 11/08/2006 Arbitration Hearing Transcript, Bates #s Nov0806C-15 to Nov0806C-22,

23  **EXH. 13**.

24  

25  [5] These products were Part Nos. DG409DY, MAX1651CSA, MAX1685EEE, MAX1760EUB,
    MAX1864TEEE, MAX3223CAP, MAX3232CSE, MAX3232EEUP, MAX3681, MAX3762,
26  MAX4144ESD, MAX603CSA, MAX604CSA, MAX6357MRUT, MAX6501UKP085,
    MAX6654MEE, MAX708CSA, MAX708RESA, MAX708SCSA, MAX809, MAX856, MAX934,
27  MAX708SESA, MAX707ESA, MAX907ESA, MAX232ACSE, MAX232AEWE, MAX1649CSA,
    MAX649CSA, MAX651ESA, MAX774ESA, MAX774CSA, ICL7642ECPD, MAX3491CSD.
28  Master Chips' Petition requesting that Maxim produce information pursuant to November 2006
    Stipulation, **EXH. 14**.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

15

PALDMS/358367.2

1             iii.     Maxim's *sole obligation* with respect to sales of such part numbers by

2  third parties, including distributors and contract manufacturers, was to contact Arrow Electronics,

3  Inc. ("Arrow"), Maxim's principal franchised distributor, and request the production of its sales

4  figures of such parts by Arrow to Alcatel during the relevant time period. *Id.*, **EXH. 13**. On

5  December 14, 2006, Maxim sent a letter to Arrow requesting that Arrow produce the details of its

6  sales to Alcatel of the relevant Maxim products during the relevant time period, as required by the

7  November 2006 Stipulation. Letter from Mark Casper dated December 14, 2006, **EXH. 19**.

8             iv.     Maxim was not required to obtain or produce any documentation of its

9  sales figures relating to sales made by Maxim to any of Alcatel's subcontractors or contract

10  manufacturers. 11/08/2006 Arbitration Hearing Transcript, Bates #s Nov0806C-16 to Nov0806C-

11  22, **EXH. 13**. Instead, Master Chips, had the obligation to request sales figures from Alcatel's

12  subcontractors and contract manufacturers, including Flextronics, one of Alcatel's primary contract

13  manufacturers. *Id.* Master Chips could request that the ICC Court use its subpoena power to

14  propound discovery of third-party sales information to Alcatel.

15  **D.    The ICC Arbitration—Proceedings After Initial November 2006 Hearing to**
16         **November 9 Award (December 2006 to November 9, 2007)**

17          34.     At the November 2006 hearing expert testimony on Belgium law and closing

18  arguments were not presented and a further hearing was scheduled for that purpose; that further

19  hearing was ultimately scheduled to commence on Monday, May 7, 2007 in Belgium. As alleged in

20  ¶ 30, above, the Arbitrator should have granted Maxim's request to continue the November 2006

21  hearing in light of Master Chip's belated claim for increased damages, and by failing to do so the

22  Arbitrator denied Maxim a fair and reasonable opportunity to present its defense to Master Chip's

23  newly asserted damages claim. This denial alone qualified vacating the November 9 Award.

24  Between the adjournment of the November 2006 hearing and the rendering of the November 9

25  Award Master Chips induced the Arbitrator to engage in the following other acts which further

26  justify the Court vacating such award.

27      **i.    The Arbitrator's Refusal to Honor the November 2006 Stipulation**

28         35.     As of December 2, 2006 Maxim was still working on the creation of the Spreadsheet

16

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No _____
PETITION TO VACATE ARBITRATION AWARD

1   referred to in ¶ 33.b.ii., above. On December 2, 2006, Master Chips filed a petition before the

2   Arbitrator, wherein Master Chips requested that the Arbitrator sanction Maxim in the amount of

3   $2500/day until Maxim provided the Spreadsheet with the requested sales information required by

4   the November 2006 Stipulation. In that Petition, Master Chips reiterated the terms of the

5   November 2006 Stipulation, namely that: (i) *Master Chips* (not Maxim) would seek the relevant

6   sales figures from Flextronics; and, (ii) Maxim would provide the Spreadsheet with its own sales

7   figures and would also contact Arrow to obtain Arrow's relevant sales figures. Master Chips'

8   Petition dated December 2, 2006, a true and correct copy of which is submitted herewith as

9   **EXH. 14**. On December 8, 2006, Master Chips emailed the Arbitrator and modified its December 2,

10  2006 Petition in that it requested that the Arbitrator sanction Maxim in the amount of $100,000 a

11  day. Email from Master Chips' counsel to the Arbitrator, dated December 8, 2006, a true and

12  correct copy of which is submitted herewith as **EXH. 16**. Master Chips argued that Maxim was

13  delaying fulfilling its obligations pursuant to the November 2006 Stipulation, not notifying the

14  Arbitrator that it had not completed its end of the bargain. *Id.*

15       36.    On December 11, 2006, the Arbitrator responded to Master Chips' December 2, 2006

16  Petition and December 8, 2006 email with Procedural Order No. 6 sent to the parties via email.

17  Email from the Arbitrator dated December 11, 2006, a true and correct copy of which is submitted

18  herewith as **EXH. 17**. The Arbitrator ordered Maxim "to produce all requested documents" by

19  December 15, 2006. The Arbitrator also stated that "the sales to Alcatel or any of its subsidiaries or

20  *subcontractors* of these parts is relevant..." *Id.*, (emphasis added). In doing so the Arbitrator

21  ignored the November 2006 Stipulation and Master Chips' December 2, 2006 Petition which

22  reiterated the terms of the November 2006 Stipulation where the parties agreed that the *only* Alcatel

23  subcontractor from whom sales records would be sought was Flextronics, and it was Master Chips,

24  not Maxim, that was to obtain that information. 11/08/2006 Arbitration Hearing Transcript, Bates #s

25  Nov0806C-17 to Nov0806C-22, **EXH. 13**.

26       37.    Maxim's counsel, Jan Swinnen, did not receive the Arbitrator's December 11, 2006

27  email until December 18, 2006. Mr. Swinnen immediately obtained the Spreadsheet from Maxim

28  and produced it to the Arbitrator and to Master Chips that same day, December 18, 2006. Email

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

17

Case No
PETITION TO VACATE ARBITRATION AWARD

1   from Maxim's counsel Jan Swinnen dated December 18, 2006, a true and correct copy of which is

2   submitted herewith as **EXH. 20**. Thus, as of December 18, 2006 Maxim had fulfilled its end of the

3   November 2006 Stipulation.

4       38.    Nonetheless, on December 29, 2007 Master Chips submitted an analysis of the

5   information that Maxim had submitted, arguing that it was insufficient and that the Arbitrator should

6   disregard the information in its entirety and instead accept Master Chips' "Best Estimate" of its

7   damages. Maxim's Analysis dated December 29, 2007, a true and correct copy of which is

8   submitted herewith as **EXH. 21**. On April 6, 2007 Master Chips sent its December 29, 2006

9   Analysis to the Arbitrator again, claiming that Maxim had not complied with the November 2006

10  Stipulation. Email from Sabine Thielemans dated April 6, 2007, a true and correct copy of which is

11  submitted herewith as **EXH. 35**.

12      39.    On January 10, 2007, Master Chips' counsel sent an email to the Arbitrator and

13  Maxim notifying them that it had contacted Flextronics to obtain the information pursuant to the

14  November 2006 Stipulation but that Flextronics did not respond. Master Chips then argued that

15  *Maxim* should have produced this information (in spite of the November 2006 Stipulation) and its

16  *refusal* to do so warranted a sanction, namely that the Arbitrator should refuse to accept *any* of the

17  information regarding sales made by Arrow and sales made to Flextronics. In other words, to scrap

18  the November 2006 Stipulation as it pertains to the parties' obligations concerning third party sales

19  information. Master Chips also requested that the Arbitrator should only consider its "Best

20  Estimate" of past commissions as the sole source of determining the amount of past commissions

21  owed to Master Chips. Email from Sabine Thielemans dated January 10, 2007, a true and correct

22  copy of which is submitted herewith as **EXH. 26**. The Arbitrator made no decision on this until

23  April 14, 2007, discussed below.

24      40.    As a result of Master Chips' misrepresentations, the Arbitrator issued his Procedural

25  Order No. 7 on April 14, 2007, which contained seven separate orders. The seventh of those orders

26  responded to Master Chips' request to sanction Maxim based on Master Chips' misrepresentation

27  that Maxim had failed to produce documents. In that order the Arbitrator stated the following:

28      7. Claimant's Request for a Ruling on Evaluation of the Commissions

18

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No
PETITION TO VACATE ARBITRATION AWARD

PALDMS/358367.2

claimed to be owed by Respondent pursuant to Sales to Alcatel.

(1)  Without prejudice to the substantive ruling on the extent to which Claimant is or is not entitled to commissions relating to the Respondent's sales to Alcatel, it is my understanding that Respondent has failed to produce detailed sales figures relating to any sales to Alcatel that were made through *third parties*, whether such third parties acted as sales companies for Respondent or as purchasing or manufacturing companies for Alcatel.

(2)  In the event that I were to find that such sales are nonetheless commissionable, *Respondent failed to provide such information at its peril.* In the absence of data supplied by Respondent, Claimant has the right to present its own best evidence. Claimant is therefore free to either obtain such data directly from Alcatel, or to extrapolate in a reasonable manner such data from publicly available information."

Procedural Order No. 7, dated April 14, 2007, p. 7, a true and correct copy of which is submitted herewith as **EXH. 36**. The Arbitrator's ruling imposed a duty upon Maxim—*i.e.*, to produce sales figures relating to sales to Alcatel by third parties—that was expressly disclaimed by the parties' stipulation. 11/08/2006 Arbitration Hearing Transcript, Bates #s Nov0806C-19 to Nov0806C-22, **EXH. 13**. As will be discussed below, the November 9 Award concerning Master Chips' entitlement to past commissions was based *entirely* on this improper finding.

41.    On May 4, 2007, Maxim's attorney, Jan Swinnen emailed the Arbitrator a detailed explanation regarding why the Arbitrator's Procedural Order No. 7 was error. Email from Jan Swinnen dated May 4, 2007, a true and correct copy of which is submitted herewith as **EXH. 39**. Specifically, Mr. Swinnen reminded the Arbitrator that Maxim fully complied with the terms of the November 2006 Stipulation by producing the Spreadsheet (on December 18, 2006); and requesting that Arrow produce the details of its sales to Alcatel of the relevant Maxim products during the relevant time period (on December 14, 2006). *Id.* Indeed, Maxim not only requested the information from Arrow, but actually obtained it and produced it to the parties. Email from Jan Swinnen, dated May 2, 2007, a true and correct copy of which is submitted herewith as **EXH. 37**. Master Chips, on the other hand never obtained any information from Flextronics, a fact which confirms that the Arbitrator ignored Master Chips' noncompliance. *Id.*

42.    On May 6, 2007, the Arbitrator responded by email to Mr. Swinnen's May 4, 2007 email and stated that he was not "in a position" to reply. Email from the Arbitrator, dated May 6,

19

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1    2007, a true and correct copy of which is submitted herewith as **EXH. 40**. Instead, he asked Master

2    Chips' counsel to respond to Mr. Swinnen regarding Master Chips' position. *Id.*

3        43.    On May 6, 2007, Master Chips' counsel responded per the Arbitrator's request to Mr.

4    Swinnen's May 4, 2007 email and stated that the Arbitrator decided this issue in his Procedural

5    Order No. 7. Email from Master Chips' counsel Sabine Thielemans, dated May 6, 2007, a true and

6    correct copy of which is submitted herewith as **EXH. 41**.

7        44.    At the May 2007 hearing, the Arbitrator addressed the parties regarding the

8    production issue. Referencing Mr. Swinnen's May 4, 2007 email and Master Chips' counsel's May

9    6, 2007 email, the Arbitrator stated that he "did not know exactly what [he] need[ed] to do with

10   this." 5/07/2006 Arbitration Hearing Transcript, Bates #s May0707A-1, **EXH. 42**. Maxim's

11   counsel explained that Maxim had produced Arrow's sales data, but that Master Chips did not obtain

12   the information from Flextronics. *Id.* Master Chips' counsel explained that they contacted

13   Flextronics, but received no response to their request for relevant sales information. *Id.* at Bates #s

14   May0707A-2. The Arbitrator then questioned Master Chips' counsel how they intended to resolve

15   the Commission Claim (*i.e.*, determine the amount of damages) without the information from

16   Flextronics. *Id.* Master Chips' counsel referred the Arbitrator to its "Best Estimate." *Id.* Master

17   Chips' counsel also confirmed having received Arrow's sales data from Maxim. Additionally, the

18   following conversation took place, which demonstrates that the Arbitrator understood the limitations

19   of the November 2006 Stipulation, that Maxim had fulfilled its obligations, and that Master Chips,

20   whose burden it was to prove its damages, had not done so:

21                *ARBITRATOR:* what I am still wondering about is … because we are
         always talking about the part numbers. And on the one hand, we want

22                these part numbers, but to keep that small list as short as possible, of
         course, and on the other hand, we want to make it as long as possible.

23                ***Did you come to an agreement about this?***

24                *Mr. Swinnen:* that is actually that disclosure agreement we made on
         the occasion of ….

25                *ARBITRATOR:* during the hearing, yes.

26

27                \*\*\*

28                ***ARBITRATOR: But then it's a little late because I no longer have
         time for this. At a certain moment, we must … the discovery … that***

aker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

*one is actually already long since concluded.*

*Mrs. Thielemans:* yes, look here, we are already occupied with documents for a long time...

*Mr. Swinnen:* maybe this can help and maybe that M Va can say a word about that or respond to it. *We sat there for a long time together to draw up the list of components, the disclosure agreement, here downstairs in the hotel. And I think, I'm assuming that ... because you did not draw up this list and I did not either, you actually made this list. You actually said the part numbers for which you wished to have disclosure and we virtually adopted them.*

*Mrs. Thielemans:* yes, in deliberation with Mrs. Perry who was also attending ... about which are now actually the biggest runners.

*Mr. Swinnen:* yes indeed, thus more parties actually did this than advisors. I assume that you let those part numbers be recorded in that list of which you thought: that has potential. And that the part numbers that are not listed, that it does not automatically mean that they are completely worthless, but that you expect that they do not have potential.

*Mrs. Thielemans:* you can say it in this manner, yes, that we naturally focussed on the ...

*Mr. Vandamme:* we picked those high runners from it.

*ARBITRATOR:* yes, and so they are in there?

*Mrs. Thielemans:* yes

*Mr. Vandamme:* they are on this list, yes.

*ARBITRATOR:* Thus, basically, I can use this list as starting point or not?

*Mrs. Thielemans:* say that we are saying:if you accept that there are other components ...

*ARBITRATOR:* I leave it, of course, to your pleading about what you are asking me to do, *but you must, of course, show proof.* That is always difficult. *You are the claimant, you have to prove it. If you cannot prove it, there is nothing else I can do.*

*Id.* at Bates #s May0707A-2 to May0707A-4, **EXB. 42.**

45.    In the November 9 Award the Arbitrator awarded Master Chips the amount of $2,081,043 plus interest on its Commission Claim. November 9 Award at p. 69, **EXH. 51.** Such amount was based entirely on the grounds misrepresented by Master Chips that Maxim had allegedly failed to produce records of sales by "intermediary companies" (*i.e.*, Arrow) to Alcatel or sales to

21

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No
PETITION TO VACATE ARBITRATION AWARD

PALDMS/358367.2

Alcatel "subcontractors (such as Flextronics)"—the very companies covered by the November 2006 Stipulation; and, therefore, the Arbitrator was going to base his damages calculation of $2,081,043 on Master Chips' "Best Estimate" which was derived from an "extrapolation" of alleged Alcatel public records. *Id.* at p. 64-65. The Arbitrator knew that to rely on such information would result in an erroneous amount of damages:

> Extrapolating from publicly available production data is indeed not very accurate, especially if the data are unavailable for all relevant years. In addition one has to make assumptions as to how many Maxim products are included in each Alcatel product.

*Id.* at p. 65. In spite of recognizing the inappropriateness of basing an award on such information the Arbitrator justified his using the evidence on the misrepresentations of Master Chips and contrary to the November 2006 Stipulation that Maxim had a duty to provide the missing sales data. *Id.* Specifically, the Arbitrator ruled that the information "should have been supplied by Maxim itself" and Maxim's failure to do so estopped it from objecting to the Arbitrator's use of the public information. *Id.* Thus, the Arbitrator, instead of relying on the authenticated information that was actually produced by Maxim and Arrow, improperly relied on a baseless estimate.

### ii. The Arbitrator Improperly Allowed Master Chips to Increase Its Damages Claim On the Eve of the May 2007 Hearing and Improperly Denied Maxim's Request to Continue that Hearing

46.     Under Art. 31 of the ICC Rules an increased damages claim would require an increase in the amount of costs advanced to the ICC. Under Art. 30(4) of the ICC Rules to the extent an advance of costs is not complied with by the party making the claim it is to be considered withdrawn. As alleged above, after the close of discovery Master Chips claimed that the amount of damages it was seeking was $10,946,820, not the €750,000 set forth in its Request for Arbitration and the Terms of Reference. Yet, Master Chips failed and refused to pay the increase cost advances. Indeed, during the period December 2006 to March 14, 2007 Master Chips attempted to avoid compliance with those rules and shift the burden of paying the costs on Maxim. Such unjustified attempts were unsuccessful and by March 14, 2007 Master Chips had reduced its damages claims to $2,000,000. The steps that were taken in this regard are described in **EXHS. 15, 18, 23, 25, 27-34, and 38** being submitted herewith and in the Swinnen Decl. ¶¶ 40-42, being submitted herewith.

22

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

47.     As of Friday, May 4, 2007 the amount of Master Chips' claims was limited to $2 million and the parties were about to commence the May 2007 Hearing. However, on Friday, May 4, 2007 at 4:11 p.m. (Central European Time)—the Friday before the Monday May 7, 2007 scheduled arbitration hearing in Belgium—Master Chips made yet another improper attempt to increase the amount of its damages claims without complying with ICC Rules, particularly Art. 19. This time Master Chips sought to increase the amount of its damages claim from the $2 million approved by the ICC to $9,829,308; Master Chips made this attempt by unilaterally wiring the amount of $56,808 to the ICC Court's bank account, the amount which Master Chips arbitrarily concluded was a sufficient advance on costs to support a damages claim of $9,829,308. Master Chips then notified the ICC Court by email of such transfer. Email dated May 4, 2007, a true and correct copy of which is submitted herewith as **EXH. 38**. Master Chips did not notify the Arbitrator or Maxim's counsel of those steps until 5:41 p.m. on Friday, May 4, 2007, that is, after the close of business. *Id.*

48.     The hearing commenced on May 7, 2007 in Belgium. At the beginning of the hearing, the Arbitrator stated that he was accepting Master Chips' increase in damages based on its last minute payment to the ICC Court. Maxim's counsel immediately and again, requested a continuance of the arbitration proceedings in light of the fact that Master Chips had increased its damages claim by nearly 500% only one business day before the hearing. 5/07/2006 Arbitration Hearing Transcript, Bates #s May0707A-4 to May 0707A-8, a true and correct copy of which is submitted herewith as **EXH. 42**. Mr. Swinnen argued that Maxim needed additional time to meet the newly asserted claims. *Id.* The Arbitrator again denied Maxim's request for a continuance and proceeded to hear testimony. *Id.*

49.     . The ICC Court recognized that Master Chips' last minute attempt to increase its damages was improper. On May 29, 2007, the ICC Court sent a letter to the parties notifying them that it would return the $56,778 that Master Chips wired to the ICC Court's bank account on May 4, 2007. Letter from the Secretariat of the ICC Court, dated May 29, 2007, a true and correct copy of which is submitted herewith as **EXH. 43**. In response to the ICC Court's May 29, 2007 letter, the Arbitrator unilaterally called the ICC Court; the conversation was memorialized in a confirming

23

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1    letter from the Arbitrator to    s. von Trotha of the ICC and copied by email to the parties on that

2    same day. According to the Arbitrator's May 29, 2007 letter, Ms. von Trotha told the Arbitrator that

3    Master Chips had "not followed proper procedure in its effort to raise the amount of its claim back to

4    the original amount" and that if Master Chips wished to increase the amount of its claim from the

5    $2 million that the ICC Court had approved on March 14, 2007, Master Chips would have to

6    "submit a new request to the Court rather than simply pay the additional $56,778." Letter from the

7    Arbitrator to Ms. von Trotha of the ICC Court, dated May 30, 2007, a true and correct copy of which

8    is submitted herewith as **EXH. 44**. The Arbitrator stated that he "was not aware of this requirement"

9    and that he treated Master Chips claim as that included in its December 22, 2006 "Best Estimate,"

10    *i.e.*, €10,212,225.11 ($13,786,503.90). *Id.* The payment made by Master Chips on May 4, 2007,

11    however, was in relation to a $9,829,308 claim. Email from Master Chips' counsel Philip Peerens,

12    dated May 4, 2007, **EXH. 38**. Thus, the Arbitrator unilaterally increased Master Chips' damages

13    claim by nearly $4 million more than even the highest amount claimed by Master Chips to the ICC

14    Court. Further, the Arbitrator persuaded Ms. von Trotha to allow Master Chips to decide, *ex post*

15    *facto*, whether to file a formal request to increase its claim for damages or request a return of their

16    May 4, 2007 payment. Letter from the Arbitrator to Ms. von Trotha of the ICC Court, dated May

17    30, 2007, **EXH. 44.**

18        50.    On May 31, 2007 the parties filed their closing briefs. Thereafter on June 6, 2007,

19    Master Chips filed a Formal Request to increase the amount of its claim from $2 million to

20    $9,829,308. Master Chips' Formal Request dated June 6, 2007, a true and correct copy of which is

21    submitted herewith as **EXH. 45**.

22        51.    The ICC Court became confused regarding the amount of damages Master Chips was

23    claiming, because Master Chips' Formal Request stated that Master Chips sought $9,829,308, but

24    the Arbitrator had represented to the ICC Court that Master Chips' claim was for $13,786,503.90.

25    As a result of this confusion, and in spite of the clear terms of Master Chips' June 6, 2007 Formal

26    Request, the ICC Court requested that the Arbitrator ask the parties to state the exact amount of

27    damages they are claiming. Email from the Arbitrator, dated June 13, 2007, a true and correct copy

28    of which is submitted herewith as **EXH. 46**.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

52.     Consequentl₋  ⌐n June 15, 2007 Master Chips' counsel emailed Ms. von Trotha and notified her that although up until the present date Master Chips' claim was for $9,929,308, it was now seeking $13,578,174. Email from Master Chips' counsel Sabine Thielemans dated June 15, 2007, a true and correct copy of which is submitted herewith as **EXH. 47**.

53.     On July 12, 2007 the ICC Court notified the parties that it recognized Master Chips' increased claim to $13,578,174. Letter from the Secretariat of the ICC Court, dated July 12, 2007, a true and correct copy of which is submitted herewith as **EXH. 48**. On July 23, 2007 the ICC Court notified the parties that no further *advance* costs were required. Letter from the Secretariat of the ICC dated July 23, 2007, a true and correct copy of which is submitted herewith as **EXH. 49**. This was also in violation of ICC Rules which require an advance of costs corresponding to the amounts claimed.

### iii.     The Arbitrator Improperly Permitted Master Chips' Expert on Belgium Law (Willemart) to Testify in French

54.     At the May 2007 hearing, two expert witnesses testified regarding their understanding of the applicable Belgian laws: Willemart testified on behalf of Master Chips and Geert E. Bogaert ("Bogaert") testified on behalf of Maxim. On the first day of the May 2007 hearing, and only minutes before Master Chips' expert witness Willemart was to testify, the Arbitrator began speaking in French. Declaration of Bieke Noels ("Noels Decl.") ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-2, **EXH. 42**. Having received the impression that it was proper to proceed in French, Master Chips introduced Willemart in French. Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-2, **EXH. 42**. Ms. Bieke Noels, Maxim's attorney whose responsibility it was to defend Maxim on the very specific issues with which Willemart was asked to testify, immediately objected and requested that Willemart and Master Chips' counsel use the official languages of the arbitration—English or Dutch—on account that she is not fluent in French and cannot adequately comprehend a complicated expert witness's testimony given in French, nor can she adequately cross-examine such a witness in French. Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-2, **EXH. 42**. Master Chips' counsel requested that the Arbitrator permit her to question

25

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No.
PETITION TO VACATE ARBITRATION AWARD

1   Willemart in French, to wh... .he Arbitrator had no objection. Maxim's counsel, Ms. Noels and Jan

2   Swinnen, both objected and requested that Master Chips' question Willemart in Dutch or English.

3   Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-2,

4   **EXH. 42**. At this point Master Chips' counsel was willing to question Willemart in Dutch or

5   English in accordance with Procedural Order No. 1, but the Arbitrator intervened and permitted

6   Willemart to choose the language of questioning even though Willemart stated plainly that the

7   questioning could be conducted in Dutch. Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing

8   Transcript, Bates #s May0707B-1 to May 0707B-2, **EXH. 42**. Seeing that the Arbitrator was

9   determined to allow Willemart to testify in French Ms. Noels proposed that the questions and

10  answers be translated. Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s

11  May0707B-1 to May 0707B-2, **EXH. 42**. There were no translators, however, because the

12  Arbitrator had previously ruled in his Procedural Order No. 2 that no translators would be needed.

13  Noels Decl. ¶ 9; Procedural Order No. 2, **EXH. 10**. Accordingly, Maxim's counsel was made to

14  understand that Willemart's testimony would be repeated in Dutch, but this did not happen. Noels

15  Decl. ¶ 9. Instead, Ms. Noels was forced to ask Master Chips' counsel several times to translate

16  certain portions of Willemart's testimony to allow her to follow the examination. Noels Decl. ¶ 9;

17  05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-60, **EXH. 42**.

18  Ms. Noels was, therefore, made to rely on *opposing counsel's* summary of an *adverse witness's*

19  testimony. Noels Decl. ¶ 9. Further, when Ms. Noels attempted to question Willemart in Dutch—

20  which he stated was acceptable to him—Willemart generally responded in French, making it

21  difficult for Ms. Noels to understand his answers and to know whether his responses were sufficient.

22  Noels Decl. ¶ 9; 05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-

23  60, **EXH. 42**.

24      55.    The Arbitrator's conduct of permitting and even *encouraging* Willemart to testify in

25  French was in direct violation of Procedural Order No. 1 which set forth English as the language of

26  the arbitration and ¶ 1.D of Procedural Order No. 2 that stated no translation was required at the

27  hearing. Procedural Order No. 1, **EXH. 8**; Procedural Order No. 2, **EXH. 10**.

28      56.    Maxim was severely prejudiced by this conduct and was denied a fair opportunity to

26

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1  defend Master Chips' claim.           :stimony given by Willemart was directed to the interpretation

2  of Art. 28 of the Belgian Distributor Act as to what constituted a proper termination notice (*e.g.*,

3  Master Chips Termination Notice Claim), the interpretation of Art. 3 of the Belgian Distributor Act

4  relating to equitable compensation (*i.e.*, Master Chips' Equitable Compensation Claim) and issues

5  relating to how commissions should be determined (*i.e.*, Master Chips Commission Claim).

6  05/07/2007 Arbitration Hearing Transcript, Bates #s May0707B-1 to May 0707B-60, **EXH. 42**. In

7  the November 9 Award the Arbitrator found in Master Chips' favor on each of these issues and

8  adopted the opinions rendered by Willemart. November 9 Award at pp. 23-37, 42-70. The

9  Arbitrator's permitting and even *encouraging* Willemart to testify in French prevented Maxim from

10  properly cross-examining him on various points of Belgian law on which the Arbitrator relied.

11  Noels Decl. ¶ 11.

12  **E.    The November 9 Award**

13        **i.    The Arbitrator's Rulings on Master Chips' Notice Termination Claim**

14        57.    On November 9, 2007 the Arbitrator rendered the November 9 Award. In that award

15  the Arbitrator made several rulings which are the result of the violation of the New York

16  Convention, the FAA and Maxim's due process rights, including the following:

17        58.    In the November 9 Award at 23-38 the Arbitrator found in favor of Master Chips on

18  its Notice Termination Claim. The Arbitrator held that Master Chips was entitled to damages based

19  upon what an appointed expert concluded after analyzing Master Chips' profits from the relevant

20  time period. This ruling also was the result of arbitrator misconduct because:

21              a.    The Arbitrator refused to postpone the May 2007 hearing even though Master

22  Chips increased its damages claim from $2 million to $10 million less than one business day before

23  the hearing;

24              b.    The Arbitrator permitted Master Chips' expert witness to testify in French to

25  the detriment of Maxim, because Maxim's counsel could not understand French well enough to

26  conduct an expert examination.

27

28

3aker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

27

Case No
PETITION TO VACATE ARBITRATION AWARD

**ii.     The Arbitrator's Rulings on Master Chips' Equitable Compensation Claim**

59.     In the November 9 Award at 47-53 the Arbitrator found in favor of Master Chips on its Equitable Compensation Claim. Like the Award granting Master Chips' Notice Termination Claim, the Arbitrator held that Master Chips was entitled to damages based upon what an appointed expert concluded after analyzing Master Chips' profits from the relevant time period. This ruling was the result of improper conduct in that:

a.     The award could end up being as high as $13.7 million or $11.7 million more than the $2 million claim for which Maxim prepared its defense. The Arbitrator should have continued the May 2007 hearings to allow Maxim to prepare for the newly increased claims.

b.     The Arbitrator's November 9 Award was based on Willemart's testimony, which Maxim did not have a meaningful opportunity to rebut because Willemart testified in French. The Arbitrator should have required Willemart to testify in the official languages of the arbitration—English or Dutch.

**iii.     The Commission Claim and The Arbitrator's Reliance on Arbitrary, Unauthenticated Information**

60.     The Arbitrator ruled in favor of Master Chips on its Commission Claim and awarded damages in the amount of $2,081,043 plus interest. November 9 Award, pp. 53-70, **EXH. 51**.

a.     The Arbitrator found that according to the 1998 Distribution Agreement Master Chips was entitled to receive commissions for both "direct sales by Maxim itself" and "indirect sales through a distributor or other intermediary" to the House Accounts. November 9 Award, p. 62, **EXH. 51**.

b.     In addressing the amount of commissions to which Master Chips was to be awarded, the Arbitrator ignored the November 2006 Stipulation. Among other things, the Arbitrator made accusations that Maxim was not "very forthcoming with the necessary information that would have enabled [Master Chips] to make a well founded claim" (November 9 Award, p. 62, **EXH. 51**), that Maxim claimed to have been "under no obligation to assist" Master Chips in proving its damages (*Id.*, at p. 63), and that Maxim was "either unable or unwilling to provide [Master Chips]

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1   with the necessary information" (*Id.*). The Arbitrator ignored that Maxim had fully complied with

2   the November 2006 Stipulation by producing the Spreadsheet with the requested sales figures as

3   ordered by the Arbitrator and by producing Arrow's sales data. Letter from Mark Casper dated

4   December 14, 2006, **EXH. 19**. The Arbitrator found that the Spreadsheet was incomplete because it

5   did not include: (1) "sales intermediary companies that in turn sold products to Alcatel's

6   manufacturing or purchasing entities;" and, (2) "sales to Alcatel subcontractors (such as

7   Flextronics)..." November 9 Award, p. 64, **EXH. 51**. Such finding is in direct conflict with the

8   November 2006 Stipulation because the only intermediary considered relevant by the parties was

9   Arrow, and Maxim's only obligation with regards to Arrow was to contact Arrow to obtain the

10  information; and *Master Chips*, not Maxim, was obligated to contact Flextronics. The Arbitrator,

11  however, ignored this fact and blamed Maxim for not obtaining and producing Flextronics' sales

12  figures.

13          c.      The Arbitrator relied on these so-called deficiencies to justify a measure of

14  damages that was based on arbitrary information.

15          Given Maxim's failure to have provided useable evidence with respect
            to Alcatel, the Arbitrator holds that under these circumstances it is
16          entirely proper for MC to come to a "best estimate" of the
            commissions owed to it by extrapolating publicly available data with
17          respect to Alcatel's production records.

18  November 9 Award, p. 65, **EXH. 51**. This "publicly available data" concerned *all* of Alcatel's

19  production *worldwide* (not just Belgium); and, was not limited to the production of those Alcatel

20  products that contained a Maxim product that was sold by Maxim or Arrow or purchased by Alcatel

21  or Flextronics. The Arbitrator's use of this irrelevant overbroad and unauthenticated "public"

22  information resulted in an erroneous award of more than $2 million, an amount which is twenty (20)

23  times more than the total commissions reflected in the actual records submitted by the parties.

24  **VII. THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE
        ARBITRATOR IMPROPERLY REFUSED TO POSTPONE THE NOVEMBER 2006 AND
25      MAY 2007 HEARINGS**

26          1.      Maxim hereby refers to and incorporates ¶¶ 1 to 60, above, as set forth in full.

27          2.      The Convention provides that recognition and enforcement of an award may be

28  denied where an arbitral award has been set aside by a competent authority of the country under the

                                                    29

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No _____
PETITION TO VACATE ARBITRATION AWARD

1    law of which the award was made.  Article V(1)(e).  Further, the Convention allows for vacating an

2    arbitration award where,

> The party against whom the award is invoked was not given proper
> notice of the appointment of the Arbitrator or of the arbitration
> proceedings or *was otherwise unable to present his case.*

5    Article V(1)(b) (emphasis added).  This section of the Convention invokes American due process

6    standards.

7        3.    Section 10(a)(3) of the FAA, 9 U.S.C. § 10(a)(3), permits a district court to vacate an

8    arbitration award,

> Where the Arbitrators were guilty of misconduct *in refusing to postpone
> the hearing, upon sufficient cause shown,* or in refusing to hear
> evidence pertinent and material to the controversy; *or of any other
> misbehavior by which the rights of any party have been prejudiced.*

11       4.    The Arbitrator violated Maxim's right to due process by denying Maxim's requests to

12   postpone the November 2006 and the May 2007 hearings.  Just prior to each hearing Master Chips,

13   improperly and unilaterally increased its claim for damages to nearly $10 million.  Maxim was led to

14   believe that the damages being claimed was €750,000 (*i.e.*, approximately $878,941) and prepared

15   its defense accordingly. Maxim was denied a fair opportunity to prepare for or respond to Master

16   Chips' increased damage claims.

17       WHEREFORE, Maxim seeks relief as set forth below.

18   **VIII. THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE
     ARBITRATOR ALLOWED MASTER CHIPS' EXPERT TO TESTIFY IN FRENCH IN
     VIOLATION OF ITS OWN ORDER AND TO THE PREJUDICE OF MAXIM**

20       5.    Maxim hereby refers to and incorporates ¶¶ 1 to 60, above, as set forth in full.

21       6.    Allowing Willemart, Master Chips' expert witness, to testify in French on Belgium

22   law issues deprived Maxim of its rights to due process and constitutes arbitrator misconduct under 9

23   U.S.C. § 10(a)(3).  Under Procedural Order No. 1 the language of the arbitration was English, and

24   under Procedural Order No. 2 no translations were to be required at the evidentiary hearings.

25   Notwithstanding these orders the Arbitrator allowed Willemart to testify in French and the Arbitrator

26   relied on Willemart's opinion in nearly all regards in issuing his November 9 Award.  Maxim had no

27   meaningful opportunity to cross-examine Willemart's testimony because Maxim's counsel is not

28                                                30

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1  fluent in French, Maxim received no notice that Willemart would testify in French until Willemart's

2  testimony began, and Maxim had no reason to expect that Willemart would testify in French in light

3  of the Arbitrator's own Procedural Order Nos. 1 and 2.  The Arbitrator essentially received

4  Willemart's testimony *ex parte* in violation of acceptable arbitration standards and his own

5  procedural orders.

6        WHEREFORE, Maxim seeks relief as set forth below.

7  ## IX. THE COURT SHOULD VACATE THE NOVEMBER 9 AWARD BECAUSE THE ARBITRATOR IGNORED THE NOVEMBER 2006 STIPULATION

8

9        7.     Maxim hereby refers to and incorporates ¶¶ 1 to 60, above, as set forth in full.

10        8.     The Arbitrator's disregard for the November 2006 Stipulation deprived Maxim of its

11  due process rights and constitutes arbitrator misconduct under 9 U.S.C. § 10(a)(3).  Such disregard

12  served as the basis for the Arbitrator's damages award of $2,081,043 in favor of Master Chips on the

13  Commission Claim.  By such disregard the Arbitrator considered matters only submitted outside the

14  November 2006 Stipulation and improperly accepted information concerning Master Chips' alleged

15  damages from Master Chips in an *ex parte* manner.  Such disregard deprived Maxim of a meaningful

16  opportunity to be heard on the matter because Maxim had prepared its case based on the terms of the

17  November 2006 Stipulation and had no opportunity to rebut the new information submitted by

18  Master Chips *ex parte*.  Maxim was misled into preparing its defense based on the information

19  agreed to by the parties in the November 2006 Stipulation.

20        9.     WHEREFORE, Maxim seeks relief as set forth below.

21  ## X. REQUEST FOR RELIEF

22        Petitioner Maxim requests that the Court issue an order and judgment:

23        A.     Declaring that the Arbitrator's refusal to postpone the May 2007 hearing violated

24  Maxim's rights to due process and constituted arbitrator misconduct under 9. U.S.C. §10(a)(3).

25        B.     Declaring that the Arbitrator's permitting Willemart to testify in French violated

26  Maxim's rights to due process and constituted arbitrator misconduct under 9 U.S.C. §10(a)(3).

27        C.   · Declaring that the Arbitrator's disregarding the November 2006 Stipulation violated

28  Maxim's rights to due process and constituted arbitrator misconduct under 9. U.S.C. §10(a)(3).

31

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

PALDMS/358367.2

Case No
PETITION TO VACATE ARBITRATION AWARD

1        D.     Vacating the November 9, 2007 Award.  And,

2        E.     Granting any and all other relief which the Court deems proper.

3    Dated: January _____, 2008          BAKER & McKENZIE LLP

4

5                           By: _____

6                              Tod L. Gamlen
                           Attorneys for Petitioner

7                            MAXIM INTEGRATED PRODUCTS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

32

Case No
PETITION TO VACATE ARBITRATION AWARD

PALDMS/358367.2