HARVEY SISKIND LLP
LAWRENCE J. SISKIND (SBN 85628)
Email: siskind@harveysiskind.com
SETH I. APPEL (SBN 233421)
Email: sappel@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

Attorneys for Respondent and Cross-Petitioner
MASTER CHIPS, BVBA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAXIM INTEGRATED PRODUCTS, INC.,<br><br>        Petitioner,<br><br>v.<br><br>MASTER CHIPS, BVBA,<br><br>        Respondent.<br><br>MASTER CHIPS, BVBA,<br><br>        Cross-Petitioner,<br><br>v.<br><br>MAXIM INTEGRATED PRODUCTS, INC.,<br><br>        Cross-Respondent. | Case No. C 08 00721 JW<br><br>**ANSWER TO PETITION TO VACATE ARBITRATION AWARD; CROSS-PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Date: June 2, 2008<br>Time: 9:00 am<br><br>The Honorable James Ware<br>Courtroom 8, 4th Floor |

# ANSWER

Respondent and Cross-Petitioner Master Chips, BVBA ("Master Chips"), a Belgian corporation, for its Answer to the Petition to Vacate Arbitration Award of Petitioner and Cross-Respondent Maxim Integrated Products, Inc. ("Maxim"), a Delaware corporation, responds as follows:

1. Answering the allegations of Paragraph 1 of the Petition, Master Chips denies each and every such allegation.

2. Answering the allegations of Paragraph 2 of the Petition, Master Chips admits on information and belief that Maxim is an American manufacturer of analog semiconductor devices located in Sunnyvale, California. Master Chips further admits that Master Chips is located in Belgium and is a former distributor of Maxim. Master Chips further admits that the parties' distributor agreement, which is in English, is governed by Belgian law and contains an arbitration clause that calls for arbitration in Santa Clara County, California. Master Chips further admits that Maxim terminated Master Chips as a distributor in March 2003 after giving Master Chips 18 months' advance written notice of termination in September 2001. Master Chips further admits that it filed an action in the Belgian Commercial Court, which ruled that the dispute was subject to arbitration, and that this ruling was affirmed on appeal by the Belgian Court of Appeal. Master Chips further admits that it commenced arbitration proceedings in 2005. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 2.

3. Answering the allegations of Paragraph 3 of the Petition, Master Chips admits that it asserted several claims under Belgian law in its Request for Arbitration. Master Chips further admits that three of these claims were for (i) failure to grant a reasonable termination period (alleging that 18 months prior notice was insufficient), (ii) equitable compensation for the value of the clientele developed by Master Chips but which remained with Maxim after termination; and (iii) underpayment of commissions due to Master Chips over the life of the agreement. Master Chips further admits that in the November 9 Award, the Arbitrator found in favor of Master Chips on the Termination Notice Claim (finding that Maxim should have given Master Chips 30 months notice of

1  termination) and on the Equitable Compensation Claim, but that the Arbitrator deferred awarding
2  damages on those claims, which will likely be substantial, until after they are calculated by an expert
3  accountant appointed by the Arbitrator, and that the Arbitrator has stated he will issue an award with
4  respect to those claims on or about March 30, 2008. Master Chips further admits that the Arbitrator
5  ruled in favor of Master Chips on the commission claim and awarded it $2,081,043. Master Chips
6  further admits that the Arbitrator awarded Master Chips $43,861 plus interest for a claim that it was
7  entitled to reimbursement for contributing to the salary of a Field Application Engineer. Master
8  Chips further admits that the Arbitrator found in favor of Master Chips on its claim of "undue
9  payment" of publicity expenses, but deferred awarding damages until it rendered its final award.
10 Master Chips further admits that the Arbitrator rejected Master Chips's position under Section 21 of
11 the Belgian Act of April 13, 1995. Master Chips further admits that the Arbitrator dismissed Master
12 Chips's claim that it was damaged as a result of Maxim's pricing and publicity campaign. Master
13 Chips further admits that the Arbitrator dismissed Maxim's counterclaim. Except as expressly
14 admitted herein, Master Chips denies the remaining allegations of Paragraph 3.
15       4.       Answering the allegations of Paragraph 4 of the Petition, Master Chips admits that
16 Master Chips notified the parties and the Arbitrator that it was increasing its damages claim to more
17 than $10 million prior to the scheduled November 2006 hearing. Master Chips further admits that
18 the hearing proceeded on November 6, 7, and 8. Master Chips further admits that a final evidentiary
19 hearing was scheduled to commence on Monday, May 7, 2007 for the purpose of receiving expert
20 testimony. Master Chips further admits that on May 4, Master Chips informed the ICC that it had
21 paid the balance of the advance costs, and that it provided notice of this fact to Maxim. Master
22 Chips further admits that at the commencement of the evidentiary hearing on Monday, May 7, 2007,
23 Maxim's counsel requested that the hearing be continued or postponed, and that the Arbitrator
24 refused to continue or postpone the May 2007 hearing, which took place on May 7 and May 8.
25 Master Chips further admits that on or about May 7, 2006, the Arbitrator issued Procedural Order
26 No. 1 in which he ordered, among other things, that the official language of the arbitration would be
27 English and that written and oral submissions could be submitted to the Arbitrator in English or
28

Dutch without the necessity of a translation. Master Chips further admits that on or about August 17, 2006, the Arbitrator issued Procedural Order No. 2 in which he ordered, among other things, that no translator will be required to attend the hearing. Master Chips further admits that an initial hearing was held on November 6, 7, and 8, 2006, in which lay witnesses testified, either in English or in Dutch. Master Chips further admits that on May 7 and 8, 2007, a further hearing was held in which each party's experts were to testify on the Belgian law relating to each of Master Chips' claims. Master Chips further admits that during discovery in the arbitration proceeding, Master Chips requested several categories of documents from Maxim which Master Chips claimed were relevant to the amount of commissions it was due under its commission claim. Master Chips further admits that it contended it would need sales data for Maxim's products sold by Arrow (a distributor of Maxim's products) to Alcatel and sales data for Maxim's products sold by Flextronics (an Alcatel contract manufacturer) to Alcatel. Master Chips further admits that in November 2006 Master Chips and Maxim reached a stipulated agreement. Master Chips further admits that under this stipulation the parties agreed that Maxim would contact Arrow in an effort to obtain sales data of specific Maxim parts sold by Flextronics to Alcatel. Master Chips further admits that Master Chips was not successful in obtaining information from Flextronics. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 4.

5.  Answering the allegations of Paragraph 5 of the Petition, Master Chips denies each and every such allegation.

6.  Answering the allegations of Paragraph 6 of the Petition, Master Chips admits on information and belief that Maxim is incorporated in Delaware and has its principal place of business in Sunnyvale, California. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 6.

7.  Answering the allegations of Paragraph 7 of the Petition, Master Chips admits the allegations of Paragraph 7.

8.  Answering the allegations of Paragraph 8 of the Petition, Master Chips admits the allegations of Paragraph 8.

9. Answering the allegations of Paragraph 9 of the Petition, Master Chips admits the allegations of Paragraph 9.

10. Answering the allegations of Paragraph 10 of the Petition, Master Chips admits the allegations of Paragraph 10.

11. Answering the allegations of Paragraph 11 of the Petition, Master Chips admits the allegations of Paragraph 11.

12. Answering the allegations of Paragraph 12 of the Petition, Master Chips admits the allegations of Paragraph 12.

13. Answering the allegations of Paragraph 13 of the Petition, Master Chips admits the allegations of Paragraph 13.

14. Answering the allegations of Paragraph 14 of the Petition, Master Chips admits on information and belief that Maxim manufactures semiconductors which are used in a variety of electronics, including cell phones, notebook computers, navigational systems, and modems. Master Chips further admits that Master Chips was Maxim's distributor for Maxim's products in Luxembourg from October 1, 1987 to October 1, 1998, and in Belgium from October 1, 1987 to March 7, 2003. Master Chips further admits that between October 1, 1987 and December 1, 1998, Master Chips was an exclusive distributor of Maxim parts in Belgium and Luxembourg. Master Chips further admits that prior to 1998 several companies in Belgium, such as Alcatel Telecom, Philips, and Option, purchased Maxim analog switches and other products through Master Chips. Master Chips further admits on information and belief that Alcatel was Maxim's biggest customer in Belgium, purchasing Maxim products for inclusion in several products, including System 12 exchanges and ADSL modems. Master Chips further admits that Maxim and Master Chips entered into a modified distribution agreement on December 1, 1998, whereby Master Chips would continue distributing Maxim products in Belgium, but not in Luxembourg, and would have the right to continue distributing Maxim products to Alcatel, Philips, and Option, which became known as "House Accounts," but from that point on Maxim also would be able to sell its products directly to the House Accounts. Master Chips further admits that Maxim began selling directly to the House

Accounts. Master Chips further admits that under the 1998 agreement, Master Chips was entitled to receive commissions for sales of Maxim's parts made directly to House Accounts. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 14.

15. Answering the allegations of Paragraph 15 of the Petition, Master Chips admits the allegations of Paragraph 15.

16. Answering the allegations of Paragraph 16 of the Petition, Master Chips admits the allegations of Paragraph 16.

17. Answering the allegations of Paragraph 17 of the Petition, Master Chips admits that it filed a lawsuit against Maxim in the Commercial Court of Brussels on October 30, 2001, on the grounds that, *inter alia*, under the Belgian Exclusive Distribution Act of July 21, 1961, Maxim did not provide Master Chips with a reasonable termination period or equitable compensation for the loss of Maxim's account. Master Chips further admits that the Commercial Court dismissed the case on the ground that it was subject to arbitration pursuant to the 1998 agreement. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 17.

18. Answering the allegations of Paragraph 18 of the Petition, Master Chips admits that it appealed the Commercial Court's decision to the Court of Appeal of Brussels. Master Chips further admits that on December 14, 2004, the Court of Appeal affirmed. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 18.

19. Answering the allegations of Paragraph 19 of the Petition, Master Chips admits that it filed a Request for Arbitration against Maxim in the International Chamber of Commerce, International Commercial Court, on November 30, 2005. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 19.

20. Answering the allegations of Paragraph 20 of the Petition, Master Chips admits that the arbitration proceeding was to be conducted in accordance with the ICC Rules of Arbitration. Master Chips further admits that the ICC Rules speak for themselves. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 20.

21. Answering the allegations of Paragraph 20 of the Petition, Master Chips admits that it asserted several claims for relief in its Request for Arbitration, and that these claims included a claim under Section 2 of the Belgian Distribution Act, in which it claimed it was damaged in an amount of nearly €7 million ($8,203,445) (based on November 2005 exchange rates) as a result of the unreasonable termination period of 18 months; a claim under Section 3 of the Belgian Distribution Act in which it claimed that Maxim owed Master Chips equitable compensation for the clientele that Master Chips built up over the years and which remained with Maxim after termination of the 1998 Distribution Agreement; a claim that it was entitled to commissions that Maxim failed to pay over the life of the 1998 Distribution Agreement; and a claim that it was entitled to at least €8 million ($9,375,365). Master Chips further admits that it asserted claims for reimbursement, undue payment of publicity expenses, and damages as a result of Maxim's pricing and publicity campaign. Master Chips further admits that it temporarily limited its official damages clam to €750,000 ($837,900) because it could not pay an advance on costs corresponding to the full amount of its damages. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 21.

22. Answering the allegations of Paragraph 22 of the Petition, Master Chips admits the allegations of Paragraph 22.

23. Answering the allegations of Paragraph 23 of the Petition, Master Chips admits the allegations of Paragraph 23.

24. Answering the allegations of Paragraph 24 of the Petition, Master Chips admits that the letter of the Secretariat of the ICC Court speaks for itself.

25. Answering the allegations of Paragraph 25 of the Petition, Master Chips admits the allegations of Paragraph 25.

26. Answering the allegations of Paragraph 26 of the Petition, Master Chips admits that the ICC Rules speak for themselves. Master Chips further admits that the Arbitrator prepared Terms of Reference that were signed by the parties and entered in June 2006. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 26.

27. Answering the allegations of Paragraph 27 of the Petition, Master Chips admits that the Arbitrator issued his Procedural Order No. 2 on August 16, 2006, and that this Order set an evidentiary hearing for November 6, 7, and 8, and noted that no translator would be required to attend the hearing. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 27.

28. Answering the allegations of Paragraph 28 of the Petition, Master Chips admits that during the discovery stage of the proceeding it requested information concerning Maxim's sales data for various Maxim parts that were sold to the "House Accounts." Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 28.

29. Answering the allegations of Paragraph 29 of the Petition, Master Chips admits that it was not satisfied with Maxim's production and claimed that it was incomplete. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 29.

30. Answering the allegations of Paragraph 30 of the Petition, Master Chips denies each and every such allegation.

31. Answering the allegations of Paragraph 31 of the Petition, Master Chips denies each and every such allegation.

32. Answering the allegations of Paragraph 32 of the Petition, Master Chips admits that an evidentiary hearing was held on November 6-8, 2006, in Brussels, Belgium, and that the original purpose of the hearing was to examine witnesses and experts and to present oral argument. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 32.

33. Answering the allegations of Paragraph 33 of the Petition, Master Chips admits that non-expert evidence was presented at the hearing. Master Chips further admits that the parties agreed, without prejudice, on the products that were at issue in connection with Master Chips's commission claim, as set forth in Maxim's Petition. Master Chips further admits that the parties agreed Maxim would produce a spreadsheet reflecting all of its and its subsidiaries' and branches' sales of such parts to Alcatel, its subsidiaries, and branches. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 33.

34.     Answering the allegations of Paragraph 34 of the Petition, Master Chips admits that expert testimony on Belgian law and closing arguments were not presented at the November 2006 hearing, and that a further hearing was scheduled for that purpose. Master Chips further admits that the hearing was ultimately scheduled to commence on Monday, May 7, 2007 in Belgium. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 34.

35.     Answering the allegations of Paragraph 35 of the Petition, Master Chips admits that on December 2, 2006, Master Chips filed a petition requesting that the arbitrator sanction Maxim in the amount of $2,500/day until Maxim provided the spreadsheet with the requested sales information required by the November 2006 stipulation. Master Chips further admits that on December 8, 2006, Master Chips emailed the arbitrator requesting that the Arbitrator sanction Maxim in the amount of $100,000/day. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 35.

36.     Answering the allegations of Paragraph 36 of the Petition, Master Chips admits that the Arbitrator responded to Master Chips's December 2 petition and December 8 email with Procedural Order No. 6 sent to the parties via email. Master Chips further admits that the arbitrator ordered Maxim "to produce all requested documents" by December 15, 2006, and stated that "the sales to Alcatel or any of its subsidiaries or subcontractors on these parts is relevant." Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 36.

37.     Answering the allegations of Paragraph 37 of the Petition, Master Chips denies each and every such allegation.

38.     Answering the allegations of Paragraph 38 of the Petition, Master Chips admits that on December 29, 2007, it submitted an analysis of the information that Maxim had submitted, pointing out that it was insufficient and that the arbitrator should accept Master Chips's best estimate concerning certain damages. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 38.

39.     Answering the allegations of Paragraph 39 of the Petition, Master Chips denies each and every such allegation.

40.     Answering the allegations of Paragraph 40 of the Petition, Master Chips admits that Procedural Order No. 7, issued on April 14, 2007, included the language set forth in Maxim's Petition, 18:28 through 19:9. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 40.

41.     Answering the allegations of Paragraph 40 of the Petition, Master Chips admits that one of Maxim's attorneys, Jan Swinnen, emailed the arbitrator on May 4, 2007, concerning Maxim's position as to Procedural Order No. 7. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 41.

42.     Answering the allegations of Paragraph 40 of the Petition, Master Chips admits that in response to Mr. Swinnen's May 4, 2007, email, the arbitrator sent an email on May 6 asking Master Chips's counsel to respond regarding Master Chips's position. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 42.

43.     Answering the allegations of Paragraph 43 of the Petition, Master Chips admits the allegations of Paragraph 43.

44.     Answering the allegations of Paragraph 44 of the Petition, Master Chips admits that the arbitrator addressed the parties regarding production at the May 2007 hearing. Master Chips further admits that the transcript of the May 2007 hearing speaks for itself. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 44.

45.     Answering the allegations of Paragraph 44 of the Petition, Master Chips admits that in the November 9 award the arbitrator awarded Master Chips the amount of $2,081,043 plus interest on its commission claim. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 45.

46.     Answering the allegations of Paragraph 46 of the Petition, Master Chips admits that the ICC Rules speak for themselves. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 46.

47.     Answering the allegations of Paragraph 47 of the Petition, Master Chips admits that on May 4, 2007, it increased the official amount of its damages claim; that it wired $56,808 to the

ICC Court's bank account; and that it so notified that ICC Court and Maxim. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 47.

48. Answering the allegations of Paragraph 48 of the Petition, Master Chips admits that the hearing commenced on May 7, 2007, in Belgium, and that the Arbitrator denied Maxim's request for a continuance and proceeded to hear testimony. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 48.

49. Answering the allegations of Paragraph 49 of the Petition, Master Chips admits that the letters of the Secretariat of the ICC Court and the arbitrator speak for themselves. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 49.

50. Answering the allegations of Paragraph 50 of the Petition, Master Chips admits that the parties filed briefs on May 31, 2007, and that Master Chips filed a formal request concerning its damages claim on June 6, 2007. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 50.

51. Answering the allegations of Paragraph 51 of the Petition, Master Chips admits that the ICC Court requested that the arbitrator ask the parties to state the exact amount of damages they were claiming. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 51.

52. Answering the allegations of Paragraph 52 of the Petition, Master Chips denies each and every such allegation.

53. Answering the allegations of Paragraph 53 of the Petition, Master Chips admits that the letters of the Secretariat of the ICC Court speak for themselves. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 53.

54. Answering the allegations of Paragraph 54 of the Petition, Master Chips admits that at the May 2007 hearing, two expert witnesses testified regarding their understanding of the applicable Belgian laws: Marc Willemart on behalf of Master Chips, and Geert E. Bogaert on behalf of Maxim. Master Chips further admits that its counsel introduced Mr. Willemart in French, and that doing so was proper. Master Chips further admits that the transcript of the May 2007 hearing speaks

for itself. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 54.

55.     Answering the allegations of Paragraph 55 of the Petition, Master Chips denies each and every such allegation.

56.     Answering the allegations of Paragraph 56 of the Petition, Master Chips admits that the transcript of the May 2007 hearing speaks for itself. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 56.

57.     Answering the allegations of Paragraph 57 of the Petition, Master Chips admits that the arbitrator rendered an award on November 9, 2007. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 57.

58.     Answering the allegations of Paragraph 58 of the Petition, Master Chips admits that the arbitrator found in favor of Master Chips on its notice termination claim in the November 9, 2007, award. Master Chips further admits that in determining damages the arbitrator took into account the conclusions of an appointed expert who analyzed Master Chips's profits from the relevant time period. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 58.

59.     Answering the allegations of Paragraph 59 of the Petition, Master Chips admits that the arbitrator found in favor of Master Chips on its equitable compensation claim in the November 9, 2007, award. Master Chips further admits that in determining damages the arbitrator took into account the conclusions of an appointed expert who analyzed Master Chips's profits from the relevant time period. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 59.

60.     Answering the allegations of Paragraph 60 of the Petition, Master Chips admits that the arbitrator ruled in favor of Master Chips on its commission claim and awarded damages in the amount of $2,081,043 plus interest. Master Chips further admits that the arbitrator found that according to the 1998 Distribution Agreement, Master Chips was entitled to receive commissions for both "direct sales by Maxim itself" and "indirect sales through a distributor or other intermediary" to

the House Accounts. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 60.

61. Answering the allegations of Paragraph 61 of the Petition (labeled by Maxim as ¶1), Master Chips incorporates by this reference each and every response set forth above in Paragraphs 1-60, inclusive, as though fully set forth herein.

62. Answering the allegations of Paragraph 62 of the Petition (labeled by Maxim as ¶2), Master Chips admits that the language of the Convention speaks for itself. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 62.

63.   62.   Answering the allegations of Paragraph 63 of the Petition (labeled by Maxim as ¶3), Master Chips admits that the language of the FAA speaks for itself. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 63.

64. Answering the allegations of Paragraph 64 of the Petition (labeled by Maxim as ¶4), Master Chips denies each and every such allegation.

65. Answering the allegations of Paragraph 65 of the Petition (labeled by Maxim as ¶5), Master Chips incorporates by this reference each and every response set forth above in Paragraphs 1-65, inclusive, as though fully set forth herein.

66. Answering the allegations of Paragraph 66 of the Petition (labeled by Maxim as ¶6), Master Chips admits that Procedural Order No. 1 stated that the official language of the arbitration would be English. Except as expressly admitted herein, Master Chips denies the remaining allegations of Paragraph 66.

67. Answering the allegations of Paragraph 67 of the Petition (labeled by Maxim as ¶7), Master Chips incorporates by this reference each and every response set forth above in Paragraphs 1-66, inclusive, as though fully set forth herein.

68. Answering the allegations of Paragraph 68 of the Petition (labeled by Maxim as ¶8), Master Chips denies each and every such allegation.

69. Answering the allegations of Paragraph 69 of the Petition (labeled by Maxim as ¶9), Master Chips denies that Maxim is entitled to the relief it seeks.

## CROSS-PETITION TO CONFIRM ARBITRATION AWARD

Pursuant to 9 U.S.C. § 207, Master Chips BVBA ("Master Chips") respectfully applies to this Court for an order confirming the arbitration award issued on November 9, 2007, by the International Chamber of Commerce, International Court of Arbitration (Case No. 14123/RHR/JHN), in favor of Master Chips and against Maxim Integrated Products, Inc. ("Maxim"). This award is attached as Exhibit 51 to Maxim's Petition to Vacate Arbitration Award, filed on January 31, 2008.

WHEREFORE, Master Chips prays for judgment as follows:
1. That Maxim's Petition to Vacate Arbitration Award be denied;
2. That Master Chips's Petition to Confirm Arbitration Award be granted;
3. For reasonable attorneys' fees and costs of this action; and
4. For such other and further relief as the Court may deem just and proper.

Dated: April 28, 2008

Respectfully submitted,

HARVEY SISKIND LLP
LAWRENCE J. SISKIND
SETH I. APPEL

By: /s/ _____
Seth I. Appel

Attorneys for Respondent and Cross-Petitioner
MASTER CHIPS, BVBA


## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: April 28, 2008

Respectfully submitted,

HARVEY SISKIND LLP
LAWRENCE J. SISKIND
SETH I. APPEL

By: /s/ Seth I. Appel

Attorneys for Respondent and Cross-Petitioner
MASTER CHIPS, BVBA