Tod L. Gamlen, State Bar No. 83458
Jerry Salcido, State Bar No. 233282
**BAKER & McKENZIE LLP**
660 Hansen Way
Palo Alto, CA  94304-1044
Telephone: +1 650 856 2400
Facsimile:  +1 650 856 9299
tod.l.gamlen@bakernet.com
jerry.m.salcido@bakernet.com

Attorneys for Petitioner
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Petitioner,<br><br>v.<br><br>MASTER CHIPS BVBA,<br><br>Respondent. | **CIVIL ACTION**<br><br>**Case No.  08 00721–JW**<br><br>**REPLY MEMORANDUM OF MAXIM INTEGRATED PRODUCTS, INC., IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD**<br><br>Date:  **June 2, 2008**<br>Time:  **9:00 a.m.**<br>Dept.:  **Courtroom 8, 4th Floor**<br>Judge:  **The Honorable James Ware** |

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Master Chips' Opposition Ignores Fundamental Principles Relating to International Arbitrations and Vacating Arbitration Awards ...................................... 1

    B. Master Chips' Arguments Relating to the Arbitrator's Failure to Postpone the Arbitration Hearings Are Based on a Misunderstanding of the Law and the ICC Rules; and, on Irrelevant or Unsupportable Factual Assertions (Oppos. Memo. at 10-17) .................................................................................................. 4

        1. Master Chips Cannot Meaningfully Distinguish the Controlling Legal Authority ................................................................................................... 5

        2. Master Chips' Factual Assertions Are Irrelevant or Unsupportable ............... 6

    C. Master Chips' Opposition Omits Material Facts in its Attempt to Justify the Arbitrator's Violation of His Own Rules in Permitting Willemart to Testify in French .................................................................................................. 9

    D. Master Chips Focuses on Irrelevant and Distorted Facts to Validate the Arbitrator's Improper Disregard of the November 2006 Stipulation ....................... 12

    E. The Court Should Strike Master Chips' Cross–Petition ............................................ 15

III. CONCLUSION .............................................................................................................. 15

i

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.*, 377 F. Supp. 1208 (S.D.N.Y. 1974) .................................................................................................................................. 5

*Certain Underwriters v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926 (N.D. Cal. 2003) ........................... 2

*Coastal General Construction Services, Inc. v. Virgin Islands Housing Authority*, 238 F. Supp. 2d 707 (D.V.I. 2002) ................................................................................................. 4

*Culinary and Service Employees Union, AFL-CIO Local 555 v. Hawaii Employee Ben. Admin.*, 688 F.2d 1228 (9th Cir. 1982) ............................................................................ 15

*Gulf Petro Trading Co. v. Nigerian National Petroleum Corp.*, 512 F.3d 742 (5th Cir. 2008) .............................................................................................................................. 2

*Gunther v. Washington County*, 623 F.2d 1303 (9th Cir. 1979) .................................................... 3

*Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985) ................................................................................................................... 4, 9, 14

*Industrial Risk Insurers v. M.A.N. Gutehoffnunghatte GmBH*, 141 F.3d 1434 (11th Cir. 1998) ....................................................................................................................... 2, 3

*Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141 (2d Cir. 1992) .............................................. 12

*Jacada (Europe), Ltd v. Intl. Marketing Strategies, Inc.*, 401 F.3d 701 (6th Cir. 2005) ................. 2, 3

*Lindland v. U.S. Wrestling Ass'n*, 227 F.3d 1000 (7th Cir. 2000) .................................................... 2

*M & C Corp. v. Erwin Behr*, 87 F.3d 844 (6th Cir. 1996) ............................................................... 3

*M.B.L. International Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F. Supp. 52 (D.D.C. 1989) .................................................................................................. 15

*New Regency Prod, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101 (9th Cir. 2007) ..................... 2

*Nunley v. Kloehn*, 158 F.R.D. 614 (E.D. Wis. 1994) ..................................................................... 15

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019 (9th Cir. 1991) ............................................................................................................................ 9

*Pacific Reinsurance Mgt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019 (9th Cir. 1991) ...................................................................................................................................... 2, 9

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969 (2d Cir. 1974) ......................................................................... 3

*Robertson–Ceco Corp. v. Nat'l Union Fire Insurance Co.*, 292 F. Supp. 2d 1082 (N.D. Ill. 2003) ..................................................................................................................... 6

ii

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727 (9th Cir. 2006) ................................. 2

*Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985 (3d Cir.1997) ....................................................... 9

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) ............................................................................................................................... 12

*Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292 (9th Cir. 1994) ................................................................................................................................. 1

*Weinberg v. Silber*, 140 F. Supp. 2d 712 (N.D. Tex. 2001) ................................................................ 9

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997) ............................................................................................................................... 2, 3

### STATUTES, RULES & REGULATIONS

9 U.S.C. § 10 (a)(2) .................................................................................................................... 4, 6

9 U.S.C. § 10 (a)(3) ................................................................................................................. passim

9 U.S.C. § 10 (a)(4) ......................................................................................................................... 4

Fed. R. Civ. P. § 12(f) ................................................................................................................... 15

ICC Rules, Appx. III, Art. 1(3) .................................................................................................. 4, 6

ICC Rules, Art. 30(2) ...................................................................................................................... 8

ICC Rules, Art. 30(3) ...................................................................................................................... 8

ICC Rules, Art. V ............................................................................................................................ 3

ICC Rules, Art. V(1)(b) ................................................................................................................... 4

ICC Rules, Art. V(1)(c) ................................................................................................................... 4

ICC Rules, Art. V(1)(d) ................................................................................................................... 4

ICC Rules, Art. V(1)(e) ........................................................................................................ 2, 3, 15

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

iii

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD

## I. INTRODUCTION

In its opening papers Maxim Integrated Products, Inc. ("Maxim") sets forth three (3) reasons which, either separately or in combination, demonstrate that this Court should vacate the November 9, 2007 Partial Award ("the November 9 Award") which is the subject of this Petition. The opposition of Master Chips BVBA ("Master Chips") is based upon a misunderstanding and misreading of the law applicable to the vacating of international arbitration awards, a misunderstanding of the ICC Rules which governed the subject arbitration, misstatement of many of the very facts upon which the opposition is based, and disregard of the facts that are truly relevant to this Petition. Throughout the history of this case Master Chips has arrogantly and cavalierly disregarded its agreements relating to this arbitration and basic notions of fairness in order to seize upon certain benefits of the arbitration process but to evade the burdens and consequences of such a process. Such started when Master Chips unjustifiably filed a court action in Belgium and has continued to this very day, when it filed a Cross-Petition in violation of this Court's March 17, 2008 Order. Reading Master Chips' opposition through the lens of the *proper* legal standards and *supportable* facts demonstrates that Master Chips seeks to unjustifiably capitalize on Arbitrator misconduct which was caused in large part by the very type of misstatement and misrepresentation which Master Chips now bases its opposition. The Court should reject each of Master Chips' arguments, should grant the present Petition of Maxim, and should enter judgment vacating the November 9 Award. The Court should also summarily strike and dismiss Master Chips' "Cross–Petition" which seeks to confirm the November 9 Award as such Cross-Petition is in violation of this Court's March 17, 2007 Order.

## II. ARGUMENT

**A. Master Chips' Opposition Ignores Fundamental Principles Relating to International Arbitrations and Vacating Arbitration Awards**

***Master Chips' argument notwithstanding (Oppos. Memo. at 10-15) the Arbitrator was bound by the ICC Rules.*** "Arbitration is [a] matter of contract" (*Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) and the Arbitrator's authority is limited by the rules agreed upon by the contracting parties. *See Schoenduve Corp. v. Lucent*

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

1

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

*Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006). Master Chips agreed to submit to arbitration under the ICC Rules (EXH. 2 at § 16.G); Maxim was entitled to rely on those rules; and, the Arbitrator was obligated to follow them. As one court stated: "Arbitrators assuredly are bound by the contracts and other rules that give them power to act. An arbitrator who throws aside those rules and implements his 'own brand of [] justice' oversteps his powers, and the resulting award must be set aside." *Lindland v. U.S. Wrestling Ass'n*, 227 F.3d 1000, 1004 (7th Cir. 2000). Thus, while Master Chips treats the Arbitrator's numerous violations of the ICC Rules, and his own orders, with cavalier disinterest, the above authorities demonstrate the Arbitrator *was* constrained by the ICC Rules, his own orders, and the duty to give the parties a fair hearing.

Master Chips' reliance on the passage from *Industrial Risk Insurers v. M.A.N. Gutehoffnunghatte GmBH*, 141 F.3d 1434–44 (11th Cir. 1998) that ". . . arbitration proceedings are not constrained by formal rules of procedure or evidence . . ." is severely misplaced. Oppos. Memo. at 8:9–11. That passage emphasizes that arbitrations are not *court* proceedings, and therefore, are not governed by the *court* rules of evidence and procedure upon which a litigant could rely in a *court* proceeding.

***Section 10 of the FAA, 9 U.S.C. § 10, applies to petitions to vacate international arbitration awards (Oppos. Memo. at 9-10).*** There is no question that the Ninth Circuit and this Court apply the FAA's standard of vacatur to motions to vacate international arbitration awards. *See New Regency Prod, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101 (9th Cir. 2007); *Pacific Reinsurance Mgt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019 (9th Cir. 1991). *See also Certain Underwriters v. Argonaut Ins. Co.,* 264 F. Supp. 2d 926 (N.D. Cal. 2003). And, leaving the Eleventh Circuit aside for the moment, so does every other federal circuit that has addressed the issue.[1] The analysis of these cases is that, under Art. V(1)(e) of the Convention, district courts look to § 10 of the FAA for the standards to vacate an international arbitration award when the award was made under the law of the United States or one of the states. See Maxim's Opening Memo. at 8:23-9:17.

---

[1] *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15 (2d Cir. 1997); *Gulf Petro Trading Co. v. Nigerian National Petroleum Corp.*, 512 F.3d 742 (5th Cir. 2008); *Jacada (Europe), Ltd v. Intl. Marketing Strategies, Inc.*, 401 F.3d 701 (6th Cir. 2005).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

2

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

Notwithstanding these controlling authorities, Master Chips argues that the Court should not look to § 10 of the FAA, relying solely on the Eleventh Circuit's decision in *Industrial Risk Insurers*, *supra*, 141 F.3d 1434 (11th Cir. 1998). Several considerations demonstrate that the Court should reject this argument. *First*, *Industrial Risk Insurers* is not controlling authority in the Ninth Circuit. *See Gunther v. Washington County*, 623 F.2d 1303, 1319 (9th Cir. 1979).

*Second*, and more importantly, Master Chips has misread *Industrial Risk Insurers* by ignoring the distinction and relationship between *recognition, confirmation* and *enforcement* of an arbitration award, on the one hand, and *vacating* or *setting aside* an award on the other. Under Art. V(l)(e) it is a defense to *recognition* and *enforcement* if an award has been *vacated* by a "competent authority" (*e.g.*, this Court in this case) in the country in which the award was made, which is the United States in this case. *Id*. Article V does not directly speak to the grounds for *vacating* an award; rather, under Art. V(1)(e) that is left to the law of the country in which the award was made, *i.e.*, the United States (and the FAA) in this case. *See* Opening Memo. at 8:23-9:17. The discussion in *Industrial Risk Insurers*, 141 F.3d at 1443, is directed to the *enforcement* of an international arbitration award; and, the decision does not address Art. V(1)(e) of the Convention. Indeed, the passage cited by Master Chips relies on the very cases that *do* apply the standards of § 10 of the FAA to international awards.[2]

***Master Chips misunderstands the principles relating to vacating an arbitration award (Oppos. Memo. at 7-10).*** Master Chips' cites to standards based on "manifest disregard of the law" and "arbitrary and capricious"; however, such principles are applied when a party is seeking to vacate an arbitration award on grounds that, *on the merits*, the Arbitrator erred in his award. *See, e.g.*, *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974) and *Industrial Risk Insurers*, 141 F.3d 1434, 1446.

Those standards do not apply here—Maxim is seeking to vacate the award on the grounds that Maxim was basically deprived of a fair hearing, not because, *on the merits*, the award reflected

---

[2] Specifically, *Yusuf*, 126 F.3d 15 (*see* footnote 2); and, *M & C Corp. v. Erwin Behr*, 87 F.3d 844, 851 (6th Cir. 1996) in which the FAA did not apply because, unlike the present case, the award was not made in the United States. *See Jacada*, 401 F.3d at 709, n.8.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

3

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

"manifest disregard of the law" or was "arbitrary and capricious." *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985); *Coastal General Construction Services, Inc. v. Virgin Islands Housing Authority*, 238 F. Supp. 2d 707, 709 (D.V.I. 2002). That is, the award should be vacated because the Arbitrator is "guilty of misconduct in refusing to postpone the [arbitration] hearing," in "refusing to hear evidence pertinent and material to the controversy," and in "other misbehavior by which the rights of [Maxim] have been prejudiced" (9 U.S.C. § 10 (a)(3)); and, that in doing so, the Arbitrator deprived Maxim of due process (Article V(1)(b)), acted with evident partiality (9 U.S.C. § 10 (a)(2)), exceeded his authority (9 U.S.C. § 10 (a)(4); Article V(1)(c)), and violated the ICC Rules (Article V(1)(d)). These grounds raise different issues than where an arbitrating party seeks to vacate an award based on "the Arbitrators' contract interpretation." Oppos. Memo. at 8:1–6.

**B.    Master Chips' Arguments Relating to the Arbitrator's Failure to Postpone the Arbitration Hearings Are Based on a Misunderstanding of the Law and the ICC Rules; and, on Irrelevant or Unsupportable Factual Assertions (Oppos. Memo. at 10-17)**

Maxim is not arguing that Master Chips should be unable to increase its damages; however, the ICC Rules envision, and basic notions of fairness require, that Maxim be given a postponement to afford it a reasonable opportunity to meet and defend against such increased claims. Master Chips cannot have it both ways—if it wants to belatedly increase the scope of the arbitration tenfold Maxim should have been given a postponement so it could prepare for such expanded claims.

The repeated refusals of the Arbitrator to postpone the arbitration requires that the November 9 Award be vacated. In September 2006, after the scheduling was set and discovery was closed, Master Chips asked to increase its claim tenfold to $10 million without filing a request with the ICC Court and without paying any advance costs. Petition at 14:3–18. Since a $10 Million claim requires significantly more preparation than a €750,000 claim, on October 12, 2006 Maxim requested a postponement of the November 2006 hearing, but the Arbitrator refused. EXH. 12. Moreover, by the time of the November 2006 hearing Master Chips still had not paid any advance costs corresponding to a $10 Million claim. Under the ICC Rules, the Arbitrator could proceed ". . . only with respect to those claims . . . in regard to which the whole of the advance of costs has been *paid*." ICC Rules, Appendix III, Article 1(3) (EXH. 1 at page 40). The Arbitrator should have

4

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

proceeded only with a €750,000 claim; however, he allowed Master Chips to proceed with a $10 Million claim.[3] This was improper and inherently unfair—Maxim prepared for a €750,000 claim but Master Chips had the advantage of preparing for a $10 million claim.

Moreover, as of February 1, 2007 Master Chips still had not paid an advance on costs relating to a $10 million claim. In February, Master Chips paid costs correlating to a $2 million claim and stated the scope of its claims were so limited. *See* EXH. 31. Yet, on May 4, 2007, one business day before the May 7 final hearing, Master Chips again attempted to increase the scope of its damages claim to $10 million without seeking ICC approval. Maxim again maintained that if such increased claims were to be allowed, the Arbitrator should grant a postponement, not just of the "expert testimony" hearing scheduled for May 7, but of the entire arbitration so that all factual issues relating to a $10 million claim could be fairly prepared. The Arbitrator should not have denied this request a second time—he should have either rejected Master Chips' attempts to increase its claims as untimely; or, postponed the arbitration so Maxim could properly prepare.

**1.    Master Chips Cannot Meaningfully Distinguish the Controlling Legal Authority**

Master Chips' attempts to distinguish *Coastal General* on grounds that the claimant submitted fraudulent documents (*Id*., at 15:22–16:5) should be rejected because the court in that case never addressed fraud as a ground for vacatur. *See id*. at 708, n.2. Master Chips' attempts to distinguish *Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.*, 377 F. Supp. 1208, 1214 (S.D.N.Y. 1974) (Oppos. Memo at 16:6–15) on the grounds that Maxim's request for a continuance did not stem from an unavailable witness and *Master Chips* never requested a continuance should also be rejected. *Allendale* stands for the proposition that if a continuance is requested because necessary evidence is not available an arbitrator should allow such continuance. Here, Maxim's need for a continuance is even more compelling—Master Chips was changing the entire scope of its claims after discovery was completed. Moreover, that *Master Chips* never requested a continuance

---

[3] Master Chips repeatedly emphasizes that its "dire financial condition" prevented it from paying the advance on costs it had agreed to pay under the ICC Rules. Master Chips' cry of poverty is somewhat disingenuous and dubious in light of the facts that it squandered substantial sums on its improper Belgian court actions; and, magically (and without explanation) came up with the funds just prior to the May 2007 hearing. In any event, a proper balancing of *each* party's interests would have led to a postponement.

5

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

is immaterial—"sufficient cause" does not require that *both* arbitrating parties request a continuance. 9 U.S.C. § 10 (a)(3).

Master Chips' reliance on *Robertson–Ceco Corp. v. Nat'l Union Fire Insurance Co.*, 292 F. Supp. 2d 1082 (N.D. Ill. 2003) is also misplaced. The arbitration in that case was governed by the Commercial Arbitration Rules of the American Arbitration Association, which specifically provides that "Arbitrators are free to fashion any award that is just, equitable, and within the scope of the agreement of the parties." 292 F. Supp. at 1084. It was on *that* basis that the court felt it could confirm an award where the Arbitrator awarded more damages than requested by the claimant. 292 F. Supp. 2d at 1084–1085. This case, however, is governed by the ICC Rules and such rules provide that a claimant may pursue an amount of damages only if the required advance costs corresponding to the claim have been paid. EXH. 1, Appendix III, Article 1(3).

**2.   Master Chips' Factual Assertions Are Irrelevant or Unsupportable**

The various assertions that Master Chips relies on to contend the Arbitrator's refusals to continue the arbitration hearing are belied by the facts before the Court and the express language of the ICC Rules.[4]

- *Maxim's purported awareness of Master Chips' claimed damages of $10 million.*

Master Chips' primary argument is that Maxim was not "caught off guard" because it knew that Master Chips believed its damages were at least $10 million. While Maxim does not dispute that it "knew" that Master Chips believed that it was entitled to $10 million in damages, Master Chips did have to follow the ICC Rules in actually *pursuing* those damages. In this regard, Master Chips agreed to be bound by the ICC Rules (EXH. 2, pg. 16) and under those rules the amount that Master Chips had *properly claimed* up to the time of the close of discovery and the November 2006 hearing was €750,000. Maxim justifiably relied on those rules and defended itself against a

---

[4] Master Chips' opposition does not respond to the fact that after the ICC Court had rejected Master Chips' May 2007 attempt to increase its damages claim, the Arbitrator telephoned the ICC Court and persuaded it to allow Master Chips to file a formal request to increase its damages after the arbitration hearings had completed; and, the Arbitrator took it upon himself to persuade the ICC Court to allow Master Chips to increase its damages claim by nearly $4 million more than even that which Master Chips had claimed. Petition 23:23–25:11. These actions alone warrant vacating the arbitration award for evident partiality (9 U.S.C. § 10 (a)(2)); when coupled with the Arbitrator's refusal to postpone the hearing there is little doubt that the award should be vacated.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

6

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

€750,000 claim.[5]

Master Chips' reliance on Maxim's Answer and the Terms of Reference ("TOR") in this regard is also misplaced. While Maxim's Answer does recognize that Master Chips had "provisionally limit[ed] its claim to 750,000 EUR" Maxim also insisted that any increase in that claim "must be filed by Master Chips in the framework of the current arbitration proceedings," *i.e.*, in accordance with the ICC Rules. EXH. 7, pg. 11. Similarly, the fact that the TOR reflect Master Chips' assertions does not advance Master Chips' cause—the TOR merely repeats Master Chips' assertions, it does not validate them; and, does not absolve Master Chips of its obligation to follow the ICC Rules.

- ***Master Chips' assertions that Maxim somehow "waived" its right to rely on the ICC Rules and to seek a continuance.*** Master Chips has taken selective portions of the October 6, 2006 email (EXH. C) out of context to argue that "Maxim expressly recognized that Master Chips' increased damages claim would not require postponing the upcoming November 2006 hearing." Oppos. Memo. at 12:16–17. In its full context this email actually states that Maxim merely requested the Arbitrator to allow Maxim to change the briefing schedule and that a change in the *briefing schedule* should not impact the dates of the November 2006 hearings. Oppos. Memo at 12:13-15. Master Chips conveniently ignores that on October 12, 2006 Maxim asked the Arbitrator to continue the November 2006 hearing based on the fact that Master Chips had sought to increase its claim for damages and add new claims. EXH. 12.

- ***Master Chips' "interpretation" of the ICC Rules relating to advance costs.*** Much of Master Chips' opposition relies on the argument that the ICC Rules somehow required Maxim to pay a portion of the advance of costs corresponding to Master Chips' increased damages claim; and, that Maxim violated the rules by not paying such portion in January 2007. Oppos. Memo. at 12:18–

---

[5] Master Chips' assertion that it increased its claim in September 2006 (Oppos. Memo. at 14:4) and that the only time its claim was not for $10 million was between February 1, 2007 to May 4, 2007 (*Id*. at 13:9-10) is belied by the ICC Rules and the facts. As discussed above, in September 2006 Master Chips *asserted* its damages were approximately $10 million (EXH. A) but at that time did not pay any further advance costs. So, at that time the Arbitrator should have proceeded only with a €750,000 claim. No further advance on costs was made until February 2007 *after* discovery and *after* the November 2006 hearing. But that advance on costs corresponded only to a claim of $2 million, not $10 million. EXHS. 31 and 32.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

7

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

13:6; 14:16–15:2. In doing so Master Chips has misread and/or ignored the applicable ICC Rules (which are attached as EXHIBIT 1). Article 30(2) of the ICC Rules specifically provides that when counterclaims are asserted, as here, the ICC Court ". . . may fix separate advances on costs for the claims and counterclaims." Under Art. 30(3) when the ICC Court ". . . has set separate advance on costs in accordance with Article 30(2), each of the parties shall pay the advance on costs corresponding to its claims." A review of EXHIBITS 28 and 32 demonstrate that the ICC Court followed Arts. 30(2) and (3) in allocating advances on costs corresponding to each claim. Maxim paid its proportional share as directed by the ICC Court.[6]

- ***Master Chips' arguments that the amount of its claim is "irrelevant."*** Master Chips' arguments (Oppos. Memo at 13:13-22) to the effect that the amount that it was claiming is irrelevant to the scheduling of the hearing is factually unsupportable. *First*, contrary to Master Chips' assertion (Oppos. Memo. at 13:13-17) in October 2006 Maxim immediately requested a postponement. See EXH.12.

*Second*, Master Chips' "discussion" regarding Alcatel (Oppos. Memo. at 14:1-9) misses the mark for several reasons. While Maxim's inability to present evidence from Alcatel relating to whether sales to it were "commissionable" at the November 2006 hearing was *one example* of prejudice, Maxim does not argue it was the *only* prejudice. *See* Opening Memo. at 13:24-14:7. Substantial prejudice lies in the fact that a $10 million damages claim inherently requires more preparation that a €750,000 damages claim.

Perhaps more importantly, Master Chips simply misstates the "Alcatel facts." In this regard Master Chips' assertion that "Maxim had all the Alcatel data it needed" (Oppos. Memo. at 14:5–6) is an unsupportable distortion. While Maxim had its records of Maxim's *total sales* to Alcatel, the commissions due Master Chips are not based merely on the *amount* of Maxim's sales to Alcatel but rather on whether Master Chips was *responsible* for such sale; that is, Master Chips was entitled to a

---

[6] Master Chips itself recognized a formal request is required to alter the amount of claimed damages—Master Chips filed such a request to increase its claim from €750,000 to $2,000,000 in February 2007. EXH. 23. Further, Master Chips' argument is belied by the fact that the ICC Court rejected Master Chips' payment of advanced costs in May of 2007 for failing to file a formal request. Petition 23:23–25:11; EXH. 43.]

8

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

commission only on sales for which Maxim had the "design win." Testimony and records from Alcatel would have provided evidence of which Alcatel sales were commissionable because it was Alcatel who awarded the design wins. Alcatel's evidence of design wins was "pertinent and material" to Maxim's defense, particularly since Master Chips was unwilling to accept Maxim's evidence on "design wins," as discussed further below with respect to the November 2006 Stipulation.

**C.   Master Chips' Opposition Omits Material Facts in its Attempt to Justify the Arbitrator's Violation of His Own Rules in Permitting Willemart to Testify in French**

Misconduct by the Arbitrator that prejudices the rights of a party warrants vacating the arbitration award. 9 U.S.C. § 10 (a)(3). This ground for vacatur is "frequently applied when the Arbitrator has run afoul of his or her own rules in conducting the arbitration." *Weinberg v. Silber*, 140 F. Supp. 2d 712, 720 (N.D. Tex. 2001) citing *Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 993–94 (3d Cir.1997) (partially vacating an arbitration award where the Arbitrator had decided the merits after he said he would not).

In its opposition Master Chips cites to no authority in support of its assertion that the Arbitrator acted properly in allowing Willemart to testify in French and fails to distinguish the authority relied on by Maxim, that is, *Pacific Reinsurance*, *supra*, 935 F.2d 1019, and *Hoteles Condado*, *supra*, 763 F.2d 34. Master Chips does not dispute that "*Ex parte* evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." *Pacific Reinsurance*, 935 F.2d at 1025. Similarly, Master Chips does not deny that Willemart's testimony was "central and decisive." *Hoteles Condado*, 763 F.2d at 40.

Master Chips does not dispute the following facts that are relevant here: the parties' Distributor Agreement provides that the parties would arbitrate any disputes that should arise under that contract in accordance with the ICC Rules (EXH. 2 pg. 16); Article 15 provides that where the ICC Rules are silent on an issue the arbitration shall be governed by the rules set forth by the Arbitrator (EXH. 1 at 20); Procedural Order No. 1 provided that the official language of the arbitration was to be English and that evidence could be produced in English or Dutch; in Procedural

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

9

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

Order No.2 the Arbitrator ordered that no translators were required at the hearing; in allowing Willemart to testify in French the Arbitrator failed to abide by his own procedural orders; and, that the Arbitrator even went so far as to encourage Willemart to testify in French. Rather, Master Chips offers several *factual* arguments to the effect that Maxim was not prejudiced,[7] each of which is unsupportable.

- ***Master Chips' arguments that Maxim, in fact, "agreed" to having Willemart testify in French (Oppos. Memo. at 17).*** Such argument is based on Master Chips misrepresenting, omitting or ignoring the facts that are before this Court. The very transcript passages relied on by Master Chips demonstrates that Maxim's counsel, Bieke Noels, did not agree to *Willemart's* testifying *only* in French; rather she stated that Willemart providing his testimony to the Arbitrator in French and Willemart (not counsel) repeating it in Dutch for her benefit would be a solution:

> ARBITRATOR: if you prefer, you can tell me what you want in French and then maybe . . .
>
> Mr. Swinnen: repeat it in Dutch
>
> ARBITRATOR: repeat it in Dutch
>
> Mrs. Noels: voila, that is a fair solution

EXH. 42, May0707B–2.

Thus, it was Willemart who was to *repeat* his testimony in Dutch, but he never did.

More importantly, however, Master Chips conveniently disregards the initial portion of the transcript in which Ms. Noels stated on the record that she was not comfortable examining Willemart in French:

> Mrs. Noels: please excuse me, my French is not adequate enough . . . I do want the language of the legal proceedings to be followed.
>
> ARBITRATOR: yes, that is . . .
>
> Mrs. Noels: and the language of the legal proceedings is Dutch and English

---

[7] Maxim has demonstrated the prejudice that resulted from this misbehavior, including that Maxim's counsel could not adequately conduct an expert examination in French and therefore could not take advantage of the Arbitrator–granted right to cross–examine adverse witnesses.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

10

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

> Mrs. Thielemans: may I question Mr. Willemart in French and allow him to answer in French?
>
> ARBITRATOR: I have no objection to questioning Mr. Willemart in French, he is, of course, French speaking. It is somewhat difficult.
>
> Mrs. Noels: Yes, but for me it is difficult then to be able to ask questions in an adequate manner and to interpret them. My French is not adequate.
>
> Mrs. Thielemans: I think that the questions can be asked perfectly well in Dutch or in English.
>
> Mr. Swinnen: the point is that Mrs. Noels is taking this part of the legal proceedings and she doesn't feel her French is strong enough to be able to understand the subtle distinctions in what Mr. Willemart has to say and to respond to them efficiently. You will agree with me that in order to respond effectively and to say the right things, you must have a thorough command of the language. And Mrs. Noels says that she doesn't have sufficient command of the language to do that. And I think that she has the right to rely on the two official languages of this arbitration, which are Dutch and English.

EXH. 42, May0707B–1.

Master Chips also disregards Ms. Noels' declaration wherein she recounts her inability to adequately examine an expert witness in French. Rather, Master Chips relies on an unauthenticated printout of Ms. Noels' website profile to support its argument that Ms. Noels had no difficulty understanding Willemart; but such "evidence" does not counter Ms. Noels' statements on the record or her sworn declaration.[8]

- ***Master Chips' argument that Maxim had "ample opportunity" to refute Willemart's testimony (Oppos. Memo. at 18-19).*** The unofficial translation by adverse counsel does not constitute "ample opportunity." Yet, it is on this basis that Master Chips argues that Maxim had the opportunity to produce some evidence in the proceedings and therefore, the Arbitrator's preventing Maxim from conducting a thorough examination of Willemart is irrelevant. Vacatur is required when the Arbitrator's misbehavior prejudiced Maxim, not whether Maxim was able to

---

[8] Master Chips' argument that Ms. Noels had no need to speak French because her co–counsel speaks French is likewise faulty. Ms. Noels, not her co–counsel, was responsible for the examination of Willemart. She had spent numerous hours preparing for his examination. She knew the material better than any of her co–counsel and she could not delegate her responsibility to another last minute at the hearing. Indeed, co-counsel was not present for much of the testimony.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

11

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

adduce *some* evidence during the arbitration (9 U.S.C. § 10 (a)(3)), particularly in light of the fact that the Arbitrator ordered all evidence would be presented in Dutch or English and no translators were needed. Indeed, Master Chips submitted Willemart's written expert report in Dutch and it was on this report that Ms. Noels based her preparation. Moreover, if all of Willemart's testimony were to be translated it would consume so much time that Maxim's expert would have no time to testify!

Master Chips does not deny that the Arbitrator relied on Willemart's testimony in making his award and agreed with Willemart concerning the burden of proof, the different schools of thought on how to interpret the Belgian Act of 1961, how to read Belgian case law regarding the issues, and how to determine a reasonable termination period. EXH. 51, pgs. 23–37, 42–70. Ms. Noels could not, and did not, have a fair opportunity to cross–examine Willemart in a manner in which she was guaranteed by the Arbitrator—in English or Dutch. Indeed, the Arbitrator himself recognized there were subtle nuances of the law when Willemart testified in French, yet Noels could not realistically explore these nuances and protect Maxim's interests. Noels Decl. ¶¶ 11–12.

**D.  Master Chips Focuses on Irrelevant and Distorted Facts to Validate the Arbitrator's Improper Disregard of the November 2006 Stipulation**

Maxim cites no legal authority in support of its effort to justify the Arbitrator's disregard of the November 2006 Stipulation.[9] Rather Master Chips' relies on three factual assertions to justify the Arbitrator's disregard of the November 2006 Stipulation; in doing so, Master Chips has again distorted and misrepresented such facts.

- ***The November 2006 Stipulation was not entered into because of Maxim's "discovery abuses" (Oppos. Memo. at 20:10–21:7).*** A simple reading of the transcript (EXH. 13) of the November 2006 hearing in which the parties entered the November 2006 Stipulation

---

[9] The Court should reject Master Chips' attempts to distinguish *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 652–653 (5th Cir. 1979) and *Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141 (2d Cir. 1992). Master Chips argues that *Totem Marine Tug* "did not apply the limited Convention defenses," but Maxim has already established that the FAA standards under § 10 for vacating awards apply to international arbitration awards. Similarly, Master Chips' characterization of the Arbitrator's conduct in *Iran Aircraft Industries* does not distinguish that case. In *Iran Aircraft Industries* the party relied on the arbitrators' ruling that certain evidence need not be produced and then the arbitrators ruled against the party for doing exactly what they ordered. The same occurred here—under the November 2006 Stipulation, Maxim was not required to produce certain evidence and then the Arbitrator based his award on the failure of Maxim to do so.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

12

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

demonstrates that this assertion is unsupportable. The November 2006 Stipulation was entered into because Master Chips contended the documents requested by Master Chips and provided by Maxim[10] did not contain the information needed by Master Chips to address its damages claim, that is, that sales by Maxim to certain house accounts were the result of Master Chips being responsible for the design win.

Further, Master Chips characterizes the November 2006 Stipulation as though it had only one aspect to it, *i.e.*, that Maxim would "produce an Excel spreadsheet indicating all sales . . . of 34 specified products by Maxim to Alcatel . . ." Oppos. Memo. at 21:5–7. Master Chips ignores that the November 2006 Stipulation provided that (i) Maxim's *sole obligation* with respect to obtaining information regarding sales by third parties of the 34 specified products was to contact its primary distributor Arrow, and (ii) *Master Chips* (not Maxim) was required to contact Flextronics, one of Alcatel's primary subcontractors, to obtain sales information regarding the products. Petition pg. 16:1–14; EXH. 13.

- ***Maxim did not fail to comply with the November 2006 Stipulation so as to "force" the Arbitrator to consider Alcatel's public information (Oppos. Memo. at 14-15).*** The *only* noncompliance by Maxim that Master Chips can factually support was that Maxim produced a spreadsheet on December 18, 2006 rather than December 15. Oppos. Memo. at 21:9–22:4. Master Chips would have the Court believe that this three day delay "forced Master Chips and the Arbitrator

---

[10] In order to address the amount of commissions owed Maxim produced thousands of documents setting forth what Maxim considered a "design win" (Petition pg. 13:11–20), offered Master Chips' counsel the opportunity to inspect all of Maxim's documents on-site at Maxim's German headquarters (EXH. 13, Nov0806C–14), produced comprehensive spreadsheets showing all such sales (EXH. 13, Nov0806C–5,15), and obtained sales information from its primary distributor Arrow (EXH. 37). Master Chips, however, refused to inspect Maxim's records in Germany (EXH. 13, Nov0806C–14) and rejected all of the documents that Maxim produced on the grounds that Maxim produced only what it considered to be a design win; however, by definition that is all that Maxim possesses. It was those considerations which led the parties to enter into the November 2006 Stipulation which the Arbitrator ignored. Citing to Exhibit I Master Chips contends that the spreadsheet was incomplete and "the Arbitrator ordered Maxim to explain its deficient production," but "Maxim did not respond." Oppos. Memo. at 21:16-18. This is false. Exhibit I shows that the Arbitrator asked the parties to advise the Arbitrator as to whether "all requested documents have now been produced." Pg. 3 of 5. He did not make a finding that the production was "deficient" and he did not "order[] Maxim to explain its deficient production." Further, as to Master Chips' claim that Maxim never responded, at the time of the May 2007 hearings there was no dispute that Maxim had provided all the information. EXH. 39; EXH. 42 at May0707A-1.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

13

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

to rely on publicly available information." This delay, however, did not even weigh in the Arbitrator's decision to consider publicly available information; rather the Arbitrator considered Alcatel's public information for two reasons, each of which evidences a disregard for the November 2006 Stipulation:

> [The Spreadsheet] (i) [] does not include sales to intermediary companies that in turn sold products to Alcatel's manufacturing or purchasing entities, and (ii) it does not include sales to Alcatel subcontractors (such as Flextronics) . . .
>
> As the Arbitrator does not dispose of the necessary information, he is compelled to work with what is before him. Given Maxim's failure to have provided useable evidence with respect to Alcatel, the Arbitrator holds that under these circumstances it is entirely proper for MC to come to a "best estimate" of the commissions owed to it by extrapolating publicly available data with respect to Alcatel's production records.

EXH. 51, pg. 64–65.

Master Chips conveniently ignores this passage and the facts that Maxim (i) *did* produce sales information from the only "intermediary company," required of it, *i.e.*, Arrow; and, (ii) Master Chips, *not Maxim*, was required to obtain sales information from Flextronics. Perhaps even more problematic is that the sole reason for Master Chips' claiming that the spreadsheet was deficient was because of "the missing sales from Alcatel via Arrow, a Maxim Distributor." EXH. 21, pg. 1. However, Maxim did request the information from Arrow, and when provided, Maxim produced it; this was recognized by the parties at the May 2007 hearings. EXH. 42 at May0707A-1.

- ***Master Chips' arguments that arbitrators can consider any and all relevant evidence is misplaced (Oppos. Memo. at 22:4–11).*** While an arbitrator can consider all relevant evidence, he cannot do so to the exclusion of "pertinent and material" evidence. 9 U.S.C. 10(a)(3); *Hoteles Condado, supra,* 763 F.2d 34, 40 (1st Cir. 1985) (vacating arbitration award upon finding that arbitrator excluded "central and decisive" evidence). Here, the only reason the Arbitrator considered the publicly available information in lieu of the evidence that Maxim produced is because he relied on the misinformation by Master Chips that Maxim did not produce the Arrow sales information (which Maxim did, in fact, produce) or the Flextronics sales information (which was Master Chips' responsibility to obtain). EXH. 51 at 64-65.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

14

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3

### E. The Court Should Strike Master Chips' Cross–Petition

FED. R. CIV. P. § 12(f) provides that the Court may act on its own to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. *See Culinary and Service Employees Union, AFL-CIO Local 555 v. Hawaii Employee Ben. Admin.*, 688 F.2d 1228, 1232 (9th Cir. 1982). Where a party files an impermissible pleading, Section 12(f) empowers a District Court to strike the pleading. *See Nunley v. Kloehn*, 158 F.R.D. 614, 620 (E.D. Wis. 1994).

On March 19, 2008 the Court entered an order in which Master Chips was not to take any steps to ". . . enforce the November 9 Award or any other award that is, has been, or will be rendered in the ICC Arbitration Proceeding until after this Court has ruled on the Petition." Yet, in direct violation of that order Master Chips filed its Cross–Petition to confirm the November 9 Award. Confirmation of an award is a step in the enforcement of it. *See M.B.L. International Contractors, Inc. v. Republic of Trinidad and Tobago*, 725 F. Supp. 52, 53 (D.D.C. 1989). If the Court vacates the November 9 Award then under Art. V(1)(e) of the Convention the Court cannot confirm it. However, even if the Court denies the Petition the Court should strike it under FED. R. CIV. P. § 12(f).

### III. CONCLUSION

Application of the proper legal standards to the supportable facts demonstrates that Master Chips' opposition does not provide any basis to deny Maxim's Petition. From the filing of improper court litigations in Belgium to the submission of its "Cross-Petition" in violation of the March 17, 2008 Order Master Chips has consistently demonstrated an arrogant disregard of its agreement to pursue arbitration proceedings in accordance with the ICC Rules. The Court should grant this Petition and enter judgment vacating the November 9 Award; and, should dismiss and strike the "Cross-Petition."

Dated: May 19, 2008                                                  BAKER & McKENZIE LLP

By:   /s/ Tod L. Gamlen
   Tod L. Gamlen
   Attorneys for Petitioner
   MAXIM INTEGRATED PRODUCTS, INC.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

15

Case No. 08 00721-JW
MAXIM INTEGRATED PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPP. OF PETITION TO VACATE ARBITRATION AWARD
PALDMS/366281.3