HARVEY SISKIND LLP
LAWRENCE J. SISKIND (SBN 85628)
Email: siskind@harveysiskind.com
SETH I. APPEL (SBN 233421)
Email: sappel@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111
Telephone: (415) 354-0100
Facsimile: (415) 391-7124

Attorneys for Respondent and Cross-Petitioner
MASTER CHIPS, BVBA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAXIM INTEGRATED PRODUCTS, INC., <br><br> Petitioner, <br><br> v. <br><br> MASTER CHIPS, BVBA, <br><br> Respondent. | Case No. C 08 00721 JW <br><br> **CROSS-PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUPPLEMENTAL CROSS-PETITION TO CONFIRM ARBITRATION AWARD** <br><br> Date: September 15, 2008 <br> Time: 9:00 a.m. <br><br> The Honorable James Ware <br> Courtroom 8, 4th Floor |
| MASTER CHIPS, BVBA, <br><br> Cross-Petitioner, <br><br> v. <br><br> MAXIM INTEGRATED PRODUCTS, INC., <br><br> Cross-Respondent. | |

On July 24, 2008, Respondent and Cross-Petitioner Master Chips, BVBA ("Master Chips") filed its Supplemental Cross-Petition to Confirm Arbitration Award against Petitioner and Cross-Respondent Maxim Integrated Products, Inc. ("Maxim"). Master Chips submits this Memorandum in support of its Supplemental Cross-Petition.

**BRIEF STATEMENT OF FACTS**

On November 30, 2005, Master Chips initiated an arbitration proceeding against Maxim in the International Chamber of Commerce, International Court of Arbitration (the "ICC Court"). Upon the proposal of the Dutch National Committee, the ICC Court appointed Eric van Ginkel as sole arbitrator.[1]

Mr. van Ginkel (the "Arbitrator") is an experienced and widely respected international arbitrator. In addition to the ICC, he is an arbitrator and/or mediator for the American Arbitration Association, the Australian Centre for International Commercial Arbitration, the International Centre for Dispute Resolution, the International Mediation and Arbitration Center, the National Arbitration Forum, and the World Intellectual Property Organization. He holds degrees from several prestigious universities in the United States and Europe. [*See* Master Chips's Opposition, 4:21-27]

On November 9, 2007, after the parties had engaged in extensive discovery, briefing, and presentation of testimony, the ICC Court issued a Partial Award (the "Partial Award"). In the Partial Award, the Arbitrator ruled in favor of Master Chips and against Maxim on several claims. Based on those successful claims, the Arbitrator awarded certain damages to Master Chips in the Partial Award and stated that he would award additional damages to Master Chips in a Final Award (the "Final Award"). The Partial Award is attached as Exhibit A to the Declaration of Leo Goovaerts, filed on July 24, 2008, and included in the Court's electronic docket as No. 40.

---

[1] Master Chips's Petition for Arbitration, and the ICC's Terms of Reference appointing Mr. van Ginkel as Arbitrator, are included as Exhibits 4 and 9 to Maxim's Petition to Vacate Arbitration Award, included in the Court's electronic docket as No. 2.

On January 31, 2008, Maxim filed a Petition to Vacate Arbitration Award in this Court. On April 28, Master Chips answered and opposed Maxim's Petition to Vacate. It also filed a Cross-Petition to Confirm Arbitration Award. On May 19, Maxim filed a reply to Master Chips's opposition.[2]

On June 2, the Court heard oral argument concerning Maxim's Petition to Vacate Arbitration Award and Master Chips's Cross-Petition to Confirm Arbitration Award. During the argument, the Court discussed with counsel the possibility of deferring judgment until issuance of the Final Award.

On July 12, the ICC Court issued that Final Award. In it, the Arbitrator awarded to Master Chips the total amount of its damages, taking into account the calculations of an expert. The Final Award is attached as Exhibit B to the Declaration of Leo Goovaerts, filed on July 24, 2008, and included in the Court's electronic docket as No. 41.

On July 24, Master Chips filed a Supplemental Cross-Petition to Confirm Arbitration Award, in which it asked the Court to confirm both the Partial Award and the Final Award.[3]

The parties have already submitted lengthy briefs in this matter. Master Chips submits this Memorandum to address new issues pertinent to the Final Award.

## ARGUMENT

In the Final Award, the Arbitrator focused on three new issues that arose after issuance of the Partial Award. [*See* Final Award, 6-7] First, he considered whether to include certain commissions owed to Master Chips in determining the proper compensation due to Master Chips under Section 2 of the Belgian Act of July 21, 1961. Second, he considered whether to convert the amount of unpaid commissions to Euros on a quarterly basis to determine the amount of Master Chips's damages.

---

[2] Maxim's Petition to Vacate Arbitration Award is included in the Court's electronic docket as No. 1. Master Chips's Answer and Cross-Petition to Confirm Arbitration Award is included in the Court's electronic docket as No. 20. Master Chips's Memorandum in Opposition to Petition to Vacate, and in Support of Petition to Confirm, is included in the Court's electronic docket as No. 21. This document is referred to herein as Master Chips's "Opposition." Maxim's reply brief is included in the Court's electronic docket as No. 28. This document is referred to herein as Maxim's "Reply."

[3] Master Chips's Supplemental Cross-Petition to Confirm Arbitration Award is included the Court's electronic docket as No. 38.

Third, he considered whether to allow "capitalization of interest" (*i.e.*, compound interest) on Master Chips's damages.

Like his management of the arbitration proceeding itself, the Arbitrator's handling of these new issues in the Final Award was fair, practical, and in accordance with the ICC Court's Rules of Arbitration (the "Rules").

I. **Standard of Review**

Vacating an international arbitration award is proper under only the most extraordinary circumstances. This Court is required to give "substantial deference" to the rulings of the Arbitrator, and as long as there is "even a barely colorable justification" for his findings, his awards should stand. [*See* Master Chips's Opposition, 9:3-10:13]

The Final Award, like the Partial Award, falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. § 202. [*See* Maxim's Pet. To Vacate, ¶8] The Federal Arbitration Act, 9 U.S.C. § 101, *et seq.*, governs confirmation of arbitration awards under the Convention. 9 U.S.C. § 201.

Under 9 U.S.C. § 207, the Court "shall" confirm the Final Award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in said Convention." In other words, a party challenging an arbitration award is limited to the defenses identified in Article V of the Convention. [*See* Master Chips's Opposition, 9:3-10:13] For the reasons discussed below, and in Master Chips's previous filings, none of these defenses apply here.[4]

II. **The Final Award, Like the Partial Award, Should be Confirmed.**

A. **The Arbitrator Properly Considered New Issues.**

As a threshold matter, the Arbitrator considered whether the three new issues noted above were properly raised by Master Chips. [Final Award, 7-10] In doing so, he looked to Article 19 of the Rules, which provides:

---

[4] The only Convention defense cited by Maxim in these proceedings has been Article V(1)(b) ("The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case.").

3

CROSS-PETITIONER'S MPA IN SUPPORT OF SUPPLEMENTAL    Case No. C 08 00721 JW
CROSS-PETITION TO CONFIRM ARBITRATION AWARD

> After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of arbitration and other relevant circumstances.

Article 19 and the Rules as a whole give broad discretion to the Arbitrator.

Pursuant to Article 19, the Arbitrator found that any new claims were properly raised in light of "the nature of such new claims, the stage of the arbitration and other relevant circumstances." [Final Award, 8] He pointed out that the nature of any new claims "flows directly from the decisions made by the Arbitrator in his Partial Award." [*Id.*] Therefore, he explained, Master Chips raised them "at a logical stage in the arbitration, i.e., after the Partial Award was received by the parties and prior to the Final Award." [*Id.*, at 9] "Indeed," the Arbitrator observed, "it is hard to see how [Master Chips] could have raised any of these claims any earlier." [*Id.*]

The Arbitrator found support for his ruling regarding timeliness in the Terms of Reference, in which Master Chips reserved the right to "increase/expand" its demand, and Maxim reserved the right "to advance additional defenses." [Final Award, 8] The Terms of Reference also expressly provided that "within the confines of Article 19," the Arbitrator "may consider new or altered claims in due course." [*Id.*] Moreover, the Arbitrator added, the arbitration proceedings were not closed with respect to the Final Award until June 27, 2008, long after any new claims were asserted. [*Id.*]

Thus, in evaluating whether any new claims were properly raised, the Arbitrator interpreted the Rules in light of basic logic and fairness. This was the same sort of reasoning he used throughout the arbitration proceeding, such as when he allowed the November 2006 and May 2007 hearings to go forward as scheduled even though Master Chips had not yet paid advance costs corresponding to the full amount of its damages. Aware that both parties had always known the full amount of damages claimed by Master Chips and had prepared their cases accordingly, and further aware that Master Chips was in the process of attempting to raise money to cover corresponding advance costs, the Arbitrator properly allowed the hearings to proceed on the full amount of Master Chips's claims. This decision was logical and fair under the circumstances, and well within the Arbitrator's discretion under the Rules.

In Maxim's Reply, and at the June 2 hearing, Maxim argued for the first time that the Arbitrator's decision to allow the hearings to go forward as scheduled violated Article 1(3) of Appendix III of the Rules. [*See* Maxim's Reply, 4] This untimely argument reflects a misreading of the Rules.[5]

Article 1(3) provides:

> **In general**, after the Terms of Reference have been signed or approved by the Court and the provisional timetable has been established, the Arbitral Tribunal shall, in accordance with Article 30(4) of the Rules, proceed only with respect to those claims or counterclaims in regard to which the whole of the advance on costs has been paid.[6] (emphasis added)

Thus, the Rules confer discretion on the Arbitrator to allow an arbitration to proceed with respect to claims in regard to which advance costs have not been paid, under appropriate circumstances.

Appendix III, Article 1(3) is in harmony with the rest of the Rules, which fail to dictate a particular timetable for fixing advance costs. Under Rule 30.2, the Arbitrator shall fix advance costs "as soon as practicable," which may be late in the proceeding, even after discovery has closed. Moreover, Rule 30.2 provides that the amount of advance costs "may be subject to readjustment at any time during the arbitration." Article 1(10) of Appendix III elaborates on this rule:

> As provided in Article 30(2) of the Rules, the advance on costs may be subject to readjustment at any time during the arbitration, in particular to take into account fluctuations in the amount in dispute, changes in the amount of the estimated expenses of the arbitrator, or the evolving difficulty or complexity of arbitration proceedings.

---

[5] The thrust of Maxim's Petition to Vacate Arbitration Award was that the Arbitrator should have postponed the hearings because the amount of damages claimed by Master Chips came as a surprise. [Pet. to Vacate, 16:24-26 ("Maxim had prepared to defend itself against a €750,00 ($878,941) claim, but just prior to the November 2006 and May 2007 hearings Maxim found itself having to defend itself against five and six times that amount.")] As discussed in detail in Master Chips's Opposition, this argument was not supported by the facts. [*See* Master Chips's Opposition, 10-17] Apparently Maxim found Master Chips's Opposition persuasive, because it quickly changed its tune. [Reply, 6:18-20 ("While Maxim does not dispute that it 'knew' that Master Chips believed that it was entitled to $10 million in damages, Master Chips did have to follow the ICC Rules in actually *pursuing* those damages.")]

[6] Article 30(4) of the Rules provides: "When a request for an advance on costs has not been complied with, and after consultation with the Arbitral Tribunal, the Secretary General may direct the Arbitral Tribunal to suspend its work to set a time limit, which must be not less than 15 days, on the expiry of which the relevant claims, or counterclaims, shall be considered as withdrawn." Here, the Secretary General never directed the Arbitrator to suspend his work.

5
CROSS-PETITIONER'S MPA IN SUPPORT OF SUPPLEMENTAL                    Case No. C 08 00721 JW
CROSS-PETITION TO CONFIRM ARBITRATION AWARD

The Rules thus contemplate a flexible approach to both fixing and paying advance costs, taking into account a variety of factors and subject to the Arbitrator's broad discretion.[7] Similarly, the Rules contemplate a flexible approach to considering new issues, as reflecting in Article 19.

The Arbitrator's rulings in this case—in connection with both the Partial Award and the Final Award—were consistent with the flexible approach called for in the Rules.

**B.   The Arbitrator Properly Calculated the Amount of Damages.**

In the Final Award, the Arbitrator determined that it was appropriate to convert the amount of unpaid commissions to Euros on a quarterly basis, and to allow for capitalization of interest on certain damages. He also decided to exclude certain commissions owed to Master Chips from the computation of damages. Again, the Arbitrator acted in a fair and practical manner, and in accordance with applicable law.

   **1.   The Arbitrator Did Not Err by Converting the Amount of Unpaid Commissions to Euros on a Quarterly Basis.**

The Arbitrator recognized that the exchange rate between the U.S. Dollar and the Euro has changed drastically since Maxim's underpayment of commissions from 1999 to 2003. Accordingly, an award based on the current exchange rate would severely shortchange Master Chips. Therefore, in order to adequately compensate Master Chips, the Arbitrator converted the amount of unpaid commissions to Euros on a quarterly basis over the course of the relevant period. In making this determination, the Arbitrator engaged in a detailed analysis under Belgian law, which he properly found governed this issue. [Final Award, 13-19] He took into account "extensive literature and case law." [*Id.*, at 15] He carefully considered, and properly rejected, Maxim's arguments. [*Id.*, at 14]

The Arbitrator's ruling concerning this issue reflected a reasoned determination based on applicable law. It reflects a thorough understanding of the relevant authorities. It was not in error.

---

[7] The reason for a flexible approach is that advance costs are used to cover fees and administrative expenses. [Rules, Article 31]  They are not intended to have an impact on the issues in dispute.  If the ICC and the Arbitrator are comfortable proceeding with less than the full amount of advance costs paid, taking into account fees and administrative expenses, there is no reason to prevent them from doing so.

6

**2.    The Arbitrator Did Not Err by Allowing Capitalization of Interest.**

As a preliminary matter, the Arbitrator found that he had jurisdiction to rule on the capitalization issue. He weighed the arguments and authorities of both parties, and properly concluded that those of Master Chips were more persuasive. [Final Award, 22-23]

Turning to whether capitalization was appropriate, the Arbitrator applied Belgian Supreme Court precedent, which holds that capitalization is required under Article 1154 of the Belgian Civil Code (when certain conditions are satisfied) with regard to "debts of a certain amount," but not to "debts of value." [Final Award, 24] The Arbitrator found that only one portion of Master Chips's damages (restitution for payment of a Maxim employee's salary) constituted a debt of a certain amount, requiring capitalization beginning on January 1, 2008. The rest of Master Chips's damages constituted debts of value, although they converted into debts of a certain amount on the dates of the Partial and Final Awards. "Article 1154 will apply to these debts to the extent they remain unpaid, but only after the second condition of Article 1154 has been fulfilled, namely that at least an entire year has lapsed," the Arbitrator explained. [*Id*.] Thus, the Arbitrator allowed for capitalization as to these damages, but not before November 9, 2008.

The Arbitrator's ruling regarding capitalization was fair and consistent with Belgian law, and it cannot reasonably be challenged by Maxim. Indeed, insofar as the Arbitrator found that he had discretion with regard to capitalization (*i.e.*, capitalization concerning compensatory interest, a debt of value), he denied Master Chips's request. [Final Award, 25]

**3.    The Arbitrator Reasonably Excluded Certain Commissions Owed to Master Chips from his Computation of Damages.**

The Arbitrator determined that certain commissions owed to Master Chips should be not be included in determining the proper compensation due to Master Chips under Section 2 of the 1961 Act. [Final Award, 10-13] Master Chips assumes that Maxim does not challenge this determination.

While Master Chips is disappointed by the Arbitrator's ruling on this issue, it concedes that the ruling did not render it "unable to present [its] case," nor did it implicate any of the other defenses under the Convention. Therefore, Master Chips accepts the Arbitrator's ruling.

## CONCLUSION

For the reasons discussed above, and in Master Chips's previous filings in this proceeding as well as at the June 2 hearing, the Court should grant Master Chips's Cross-Petition to Confirm Arbitration Award and Supplemental Cross-Petition to Confirm Arbitration Award. The Court should confirm both the Partial Award and the Final Award.

Dated: August 7, 2008                          Respectfully submitted,

                                               HARVEY SISKIND LLP

                                               By: _____/s/_____
                                                        Seth I. Appel

                                               Attorneys for Respondent and Cross-Petitioner
                                               MASTER CHIPS, BVBA