Tod L. Gamlen, State Bar No. 83458
Jerry Salcido, State Bar No. 233282
**BAKER & McKENZIE LLP**
660 Hansen Way
Palo Alto, CA  94304–1044
Telephone:  +1 650 856 2400
Facsimile:   +1 650 856 9299
tod.l.gamlen@bakernet.com
jerry.m.salcido@bakernet.com

Attorneys for Petitioner
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXIM INTEGRATED PRODUCTS, INC., | **CIVIL ACTION** |
| Petitioner, | **Case No.  08 00721–JW** |
| v. | **MAXIM INTEGRATED PRODUCTS, INC.'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD** |
| MASTER CHIPS BVBA, | |
| Respondent. | |

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Partial Award and Maxim's Petition to Vacate the Partial Award. ..... 5

1. The Partial Award. ..... 5

2. Maxim's Petition to Vacate the Partial Award ..... 6

3. The June 2 Hearing on Maxim's Petition to Vacate the Partial Award ..... 7

B. The Final Award ..... 7

III. ARGUMENT ..... 10

A. The Supplemental Cross–Petition Should Be Denied Because Master Chips Did Not Seek Leave to File It ..... 10

B. The Final Award Should Be Vacated for the Same Reasons as the Partial Award. ..... 10

1. The Grounds for Vacating the Partial Award Apply Equally to the Final Award. ..... 10

2. Master Chips' Arguments Should Be Rejected—They Are Merely a Misleading Attempt to Reargue Its Opposition to Maxim's Initial Petition to Vacate the Partial Award and Are Irrelevant to the Fundamental Reasons to Vacate Both the Partial Award and the Final Award ..... 12

a. Master Chips' Reliance on the Three Computational Issues Addressed in the Final Award Is Misplaced. ..... 13

b. Master Chips Misreads and Misinterprets Art. 1(3) of the ICC Rules. ..... 14

c. Master Chips' Reliance on Arts. 30(2) and 31(10) Is Misplaced. ..... 15

IV. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page**

### CASES

*Hall v. Central Intelligence Agency*, 437 F.3d 94 (D.C. Cir. 2006) .................................................. 10

### STATUTES, RULES & REGULATIONS

9 U.S.C. § 10 ............................................................................................................................... 16

9 U.S.C. § 10 (a)(2) ....................................................................................................................... 7

9 U.S.C. § 10 (a)(3) ............................................................................................................ 7, 11, 15

9 U.S.C. § 10 (a)(4) ....................................................................................................................... 7

9 U.S.C. § 207 ............................................................................................................................. 10

FED. R. CIV. P. § 15(d) ................................................................................................................. 10

ICC Rules, App. III, Art. 1(3) ................................................................................................*passim*

ICC Rules, Art. 1(10) ............................................................................................................. 3, 15

ICC Rules, Art. 19 .................................................................................................................. 3, 13

ICC Rules, Art. 30(2) .............................................................................................................. 3, 15

ICC Rules, Art. 30(4) ............................................................................................................ 13, 16

ICC Rules, Art. V(1)(b) .......................................................................................................... 7, 11

ICC Rules, Art. V(1)(c) ................................................................................................................ 7

ICC Rules, Art. V(1)(d) ................................................................................................................ 7

ICC Rules, Art. V(1)(e) .............................................................................................................. 10

### OTHER STATUTES

Belgium Distributor Act, § 2 (1961) ............................................................................................ 5

Belgium Distributor Act, § 3 (1961) ............................................................................................ 5

Belgium Distributor Act, § 21 (1995) ....................................................................................... 5, 6

New York Convention, Art. V .................................................................................................... 10

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

ii

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD

## I.   INTRODUCTION

This action was commenced on January 31, 2008 when Petitioner Maxim Integrated Products, Inc. ("Maxim") filed its Petition ("Maxim's January 31 Petition to Vacate") to vacate the November 9, 2007 Partial Award ("Partial Award") rendered in the arbitration between Maxim and Respondent Master Chips BVBA ("Master Chips") and entitled *Master Chips BVBA v. Maxim Integrated Products, Inc.,* Case Number 14123/RCH/JHN which took place before the International Chamber of Commerce in its International Court of Arbitration ("ICC Court"). In the Partial Award, the Arbitrator found in favor of Master Chips on the issues of *liability* relating to its several claims; rendered a *damages* award on two (2) of such claims; and, postponed ruling on the *damages* on the remaining three (3) claims until the Arbitrator received a report from an appointed expert who was to calculate such damages. Maxim seeks to vacate the Partial Award on the grounds that the Arbitrator had refused Maxim's request to continue the arbitration hearing when Master Chips increased the amount of damages being claimed from $2 million to $10 million on the eve of the hearing; had allowed, indeed encouraged, Master Chips' expert to testify in French in violation of the Arbitrator's own Procedural Order No. 1 (which dictated that the official language of the arbitration was English); and, disregarded a November 2006 Stipulation which limited documents that Maxim was required to produce in the arbitration. Respondent Master Chips opposed Maxim's January 31 Petition to Vacate and filed its own Cross-Petition to Confirm the Partial Award. A hearing was held before this Court on June 2, 2008 on Maxim's Petition and Master Chips' Cross-Petition and the Court has yet to rule.

In the meantime, on July 28, 2008, the Arbitrator rendered his Final Award ("Final Award") in which the Arbitrator awarded damages to Master Chips on its three remaining claims – the *Termination Notice Claim*, the *Equitable Compensation Claim*, and the *Publicity Claim*. In that Final Award, Master Chips is awarded a total amount of damages of $4,766,419, attorney's fees of $1,851,000, cost of arbitration of $186,000 and cost of an appointed expert of $23,571. These amounts are well in excess of the $2 million which was the limit of Master Chips' claims under the ICC Rules.

The Court now has before it Maxim's Supplemental Petition to Vacate the Final Award

1

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

(Doc. Nos. 46-48) and Master Chips' Supplemental Cross-Petition to Confirm the Final Award (Doc. Nos. 38-44) (which is the subject of this opposition memorandum). As set forth herein, and in Maxim's Supplemental Petition and accompanying memorandum (Doc. Nos. 46-48) the Court should vacate the Final Award (and Partial Award) and deny Master Chips' present Supplemental Cross-Petition (as well as its original Cross-Petition) for several reasons.

From a *procedural* standpoint, Master Chips' Supplemental Cross-Petition should be denied because Master Chips has failed to seek, or obtain, leave of Court to file such Supplemental Cross-Petition.

From a *substantive* standpoint, the Court should vacate the Final Award (as well as the Partial Award). The Final Award merely "completes" the Partial Award by determining the *damages* on Master Chips' three remaining claims – the *Termination Notice Claim*, the *Equitable Compensation Claim*, and the *Publicity Claim*. The *liability* issues on all of Master Chips' claims (including the three referred to above) were addressed in the Partial Award and, the same reasons for vacating the Partial Award apply to the Final Award – the Arbitrator should have continued the arbitration hearing in light of Master Chips' last minute and substantial increase in the amount of damages being claimed; the Arbitrator should not have allowed Master Chips' expert to testify in French; and, the Arbitrator should not have disregarded the November 2006 Stipulation regarding the production of records. Simply stated, the Final Award is dependent upon the Partial Award and to the extent the Partial Award is vacated so too should the Final Award. Indeed, the case for vacating both awards is even more compelling in light of the Final Award because the Court and the parties now know the full extent of the prejudice to Maxim – under proper application of the ICC Rules Master Chips' claims were limited to $2 million yet Maxim is now subject to an award of $4,766,419 as well as attorney's fees, cost of arbitration and cost of an appointed expert. As Maxim has made clear throughout this case, it is not trying to deny Master Chips the ability to increase its damages – if Master Chips is allowed to do so Maxim, in turn, is entitled to even handed treatment and the ability to fairly prepare for such substantial and last-minute increase in damages claims; and the Arbitrator should follow his own procedural rules; and, the November 2006 Stipulation agreed to by the parties and accepted by the Arbitrator should be honored.

2

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

The Court should reject the arguments raised by Master Chips in its Memorandum in Support of its Supplemental Cross-Petition (Doc. No. 44). Such arguments are merely an attempt by Master Chips to re-argue its opposition to Maxim's January 31 Petition to Vacate; and, such arguments are irrelevant to the reasons to vacate both the Partial Award and Final Award. Master Chips' reliance on the three *computational* issues addressed in the Final Award is misplaced because such issues merely relate to how damages are to be calculated – such *computational* issues are unrelated to the *liability* issues decided in the Partial Award and unrelated to the reasons to vacate such award. Master Chips also misreads various provisions of the ICC Rules (Articles 19, Article 30(2), Article 1(10) and Appendix III, Article 1(3) ("Article 1(3)")) relating to the readjustment of advances on costs; more importantly, however, Master Chips' arguments relating to these provisions do nothing to address the three reasons to vacate the Partial Award and Final Award.

The Court should vacate the Final Award (and Partial Award) on the grounds set forth in Maxim's January 31, 2008 Petition to Vacate and should deny Master Chips' Cross–Petition and Supplemental Cross–Petition to Confirm the awards.

## II.    BACKGROUND

As the Court is aware, this case involves an arbitration hearing that took place in Belgium and entitled *Master Chips BVBA v. Maxim Integrated Products, Inc.*, Case No. 14123/RCH/JHN, before the ICC Court.[1] Maxim is a manufacturer of analog semiconductors and Master Chips was Maxim's former distributor in Belgium. The parties had entered into a December 1, 1998 Non–Exclusive Distributor Agreement; that agreement at ¶ 16, G, provided that disputes arising under the agreement or in any way arising out of the interpretation or application of the agreement were to be submitted to arbitration before the ICC Court in accordance with its rules; and, the place of the arbitration was to be Santa Clara County, California. In August 2001 Maxim sent Master Chips a notice terminating its business relationship with Master Chips, and such termination was to be effective after 18 months, that is, in March 2003.

---

[1] The background facts are set forth in detail in Maxim's January 31 Petition to Vacate (Doc No. 1).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

3

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

From that point forward Master Chips has engaged in a course of conduct that was intended to deprive, and did deprive, Maxim of the type of fair arbitration hearing that was contemplated by the parties' arbitration agreement. Master Chips' first step in this regard was the filing of a *court* action in Belgium, in direct violation of the parties' arbitration agreement. After four years of litigation in the Belgian court system and after a Belgian appellate court confirmed the Brussels Commercial Court's dismissal of the case on grounds that the dispute is subject to an arbitration clause Master Chips finally complied with the parties' agreement and commenced arbitration before the ICC Court.

Then, during the course of the arbitration proceedings, and as described in more detail in Maxim's January 31 Petition to Vacate, Master Chips abused and manipulated the arbitration process itself, which led to an arbitration hearing that was conducted in violation of the New York Convention, the FAA, and Maxim's rights to due process and a fair hearing. Among other things, Master Chips manipulated the amounts it was claiming in violation of the ICC Rules and the Arbitrator refused to continue the hearing so Maxim could defend itself against the damages claim Master Chips belatedly and improperly asserted; the Arbitrator improperly allowed Master Chips' expert to testify in French even though the language of the arbitration was to be in English; and, Master Chips misinterpreted facts to the Arbitrator relating to the production of documents which caused the Arbitrator to disregard a stipulation entered into by the parties.

On November 9, 2007 the Arbitrator, Eric Van Ginkel, issued his Partial Award. MAXIM EXH. 51. In that Partial Award the Arbitrator addressed and ruled upon the causes of *liability* on all of Master Chips' several claims and Maxim's counterclaims; however, the Arbitrator did not rule on the amount of *damages* for all of the claims. Rather, he awarded Master Chips damages on two (2) of its claims and referred the damages calculations on the remaining claims to an appointed expert, whose determination would be incorporated into the Final Award.

Maxim filed its January 31 Petition to Vacate (Doc. No. 1); Master Chips, in turn, filed an opposition (Doc. No. 21) and a Cross–Petition to confirm the Partial Award (Doc. No. 20) on April 28, 2008. The Court held a hearing on both Maxim's Petition to Vacate and Master Chips' Cross–Petition to Confirm on June 2, 2008 (Doc. No. 36).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

4

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

After the June 2 hearing in this Court, the Arbitrator issued his Final Award on July 12, 2008. MAXIM EXH. 57. Two weeks later, on July 24, 2008, respondent Master Chips filed a Supplemental Cross–Petition (Doc. No. 38) to confirm the Final Award, but did not request from the Court at that time, or any time before or since, for leave to do so. On August 11, 2008 Maxim filed motions to (i) strike Master Chips' Supplemental Cross–Petition; (ii) for leave to file a Supplemental Petition to Vacate the Final Award; and, (iii) to vacate the Final Award (Doc. No. 48).

**A.   The Partial Award and Maxim's Petition to Vacate the Partial Award.**

   **1.   The Partial Award.**

In the arbitration Master Chips asserted several claims arising from its August 2001 termination as a Maxim distributor in Belgium. *See* Maxim's January 31 Petition at 10–11. These claims were (i) a *Termination Notice Claim*; (ii) an *Equitable Compensation Claim;* (iii) a *Commission Claim*; (iv) a *Publicity Claim*; (v) a reimbursement for payments made for a Field Application Engineer ("*FAE Reimbursement Claim*"); (vi) a claim under § 21 of the 1995 Belgium Distributor Act; and, (vii) a claim for damages as a result of Maxim's pricing and publicity campaign. In the Partial Award the Arbitrator ruled on the issues of *liability* on all of Master Chips' claims and made rulings as to *damages* only on (iii) and (v) above, that is the *Commission Claim* and the *FAE Reimbursement Claim*. More specifically the Arbitrator ruled:

• *Termination Notice Claim* ((i), above)—Master Chips alleged that the termination notice period that Maxim had given Master Chips (18 months) was insufficient under Section 2 of the Belgian Distributor Act of 1961 (Partial Award, MAXIM EXH. 51, ¶ 35(A), p. 10). The Arbitrator found in Master Chips' favor, holding that 30 months would have been an appropriate termination notice period.

• *Equitable Compensation Claim* ((ii) above)—Master Chips alleged that it was entitled to equitable compensation for the client accounts it had developed and which stayed with Maxim after the termination under Section 3 of the Belgian Distributor Act of 1961 (Partial Award, MAXIM EXH. 51, ¶ 35(D), p. 12). The Arbitrator ruled that the three factors of Section 3 were satisfied, that is, (1) Master Chips personally brought in the clientele such as Alcatel; (2) the clientele added considerable value to the Maxim/Master Chips relationship; and (3) the clientele remained loyal to

5

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

Master Chips. *Id*. at ¶¶ 119-121, pp. 49-50.

- *Commission Claim* ((iii), above)—Master Chips alleged that Maxim had failed to pay Master Chips certain commissions that were due (Partial Award, MAXIM EXH. 51, ¶ 35(E), p. 12). The Arbitrator found in favor of Master Chips and awarded it $2,081,043, plus interest. *Id*. at ¶ 163, p. 69.

- *Publicity Claim* ((iv), above)—Master Chips alleged that Maxim limited Master Chips' ability to sell Maxim's products by conducting extensive advertising campaigns to encourage direct sales through Maxim but at the same time requiring Master Chips to continue paying 4% of total sales on publicity and advertising (Partial Award, MAXIM EXH. 51, ¶ 35(C)(i), p. 11). The Arbitrator ruled that there was an "abuse of right" on Maxim's part for requiring Master Chips to spend money on publicity from September 8, 2002 through March 7, 2003, and therefore, held that Maxim is required to reimburse Master Chips for publicity expenses during that time period, plus interest. *Id*. at ¶ 104, pp. 44-45.

- *FAE Reimbursement Claim* ((v), above)—The Arbitrator awarded Master Chips $43,861 on its claim that it was entitled to reimbursement for its contributions to the FAE. Partial Award, MAXIM EXH. 51, ¶ 107, pp. 45-46.

- The Arbitrator found that Maxim was not liable on Master Chips' claim under Section 21 of the 1995 Belgium Distributor Act (Partial Award, MAXIM EXH. 51, ¶ 175, p. 74) or for Master Chips' claim that it suffered damages as the result of Maxim's pricing and publicity campaign (Partial Award, MAXIM EXH. 51, ¶ 35(C)(iii), p. 11; ¶ 3, p. 75).

While the Partial Award finds Maxim to be liable on the (i) *Termination Notice Claim*, (ii) *Equitable Compensation Claim*, and (iv) *Publicity Claim*, the Arbitrator deferred the amount to be awarded on these claims to the Final Award to allow an appointed expert to calculate the damages and provide the Arbitrator with a report with respect to the damages on such claims. Partial Award, MAXIM EXH. 51, ¶ 175, pp. 74–75.

**2. Maxim's Petition to Vacate the Partial Award**

Maxim filed its January 31 Petition to Vacate contending that the Partial Award should be vacated because the Arbitrator is "guilty of misconduct in refusing to postpone the [arbitration]

6

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

hearing," in "refusing to hear evidence pertinent and material to the controversy," and in "other misbehavior by which the rights of [Maxim] have been prejudiced" (9 U.S.C. § 10 (a)(3)) (Doc. Nos. 1, 3); and, that in doing so, the Arbitrator deprived Maxim of due process (Article V(1)(b)) acted with evident partiality (9 U.S.C. § 10(a)(2)), exceeded his authority (9 U.S.C. § 10(a)(4); Article V(1)(c)), and violated the ICC Rules (Article V(1)(d)). *See* Maxim's Reply Memorandum in Support of Petition to Vacate Arbitration Award p. 4:3–11 (Doc. No. 28).[2]

Maxim bases its contention on the grounds that (i) the Arbitrator refused to continue the arbitration proceedings after allowing Master Chips to increase its damages claim from $2 million to $10 million on the eve of the arbitration hearing; (ii) disobeyed his own procedural order by allowing Master Chips' expert witness Marc Willemart to testify in French, a language in which Maxim's counsel who was responsible for examining Willemart is not fluent; and, (iii) disregarded a November 2006 discovery stipulation that set forth each party's disclosure obligations, which led to the Arbitrator considering irrelevant evidence to the detriment of Maxim.

**3.    The June 2 Hearing on Maxim's Petition to Vacate the Partial Award**

On June 2, 2008 the hearing was held on Maxim's Petition to Vacate the Partial Award and Master Chips' Cross–Petition to Confirm the Partial Award (Doc. No. 20). At the hearing, the Court expressed an interest in knowing whether there was a final award in this case and wanted to know what its options were, presumably because the Court anticipated that its ruling would affect both the Partial and Final Awards. Tr. at 2:21-6:14 (Doc. No. 36). Maxim's counsel pointed out that the grounds for vacating the Partial Award would apply to vacate any subsequent Final Award since the Arbitrator ruled on all questions of liability in the Partial Award and the only thing that remained was to apply a dollar value to the damages. *Id.* at 3:25-6:8; 9:12-10:4 (Doc. No. 36).

**B.    The Final Award**

On July 12, 2008 (that is, after the June 2 hearing), the Arbitrator issued the Final Award,

---

[2] Master Chips' implication that Maxim is asserting only one basis to vacate the Partial Award when it states that "only Convention defense cited by Maxim in these proceedings has been Article V(1)(b)" (footnote 4 on p. 3 of its Memorandum of Points and Authorities in Support of Supplemental Cross–Petition to Confirm Arbitration Award) is simply not true—Maxim is asserting several bases to vacate both the Partial Award and the Final Award (which is dependent upon the Partial Award).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

7

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

which Maxim submitted as EXH. 57. The purpose of the Final Award was to award *damages* on the *Termination Notice Claim*, the *Equitable Compensation Claim*, and the *Publicity Claim* for which Maxim's *liability* had already been ruled upon in the Partial Award. As stated by the Arbitrator in his Final Award at ¶ 17, p. 5

> On March 12, 2008, the Expert rendered his final report to the Arbitrator. Except as otherwise noted herein, the Expert's findings form the basis for the decisions regarding the issues that (in and pursuant to the Partial Award) the Arbitrator had deferred to this Final Award.

MAXIM EXH. 57.

In his Final Award, the Arbitrator addressed the amount of damages quantified by the appointed expert for each of these three claims, *i.e.*, (1) the *Termination Notice Claim* (Final Award, MAXIM EXH. 57, § IX at ¶¶ 79–83, pp. 29–31); (2) the *Equitable Compensation Claim* (Final Award, MAXIM EXH. 57, § XI at ¶¶ 89–92, pp. 33–35); and (3) the *Publicity Claim* (Final Award, MAXIM EXH. 57, § X at ¶¶ 84–88, pp. 31–32), and incorporated the expert's findings into his Final Award.

The Arbitrator also initially addressed three *computational* issues in the Final Award, namely (1) whether the *Termination Notice Claim* should include gross commissions ("gross commissions issue"); (2) whether the damages awarded in the Partial Award on the *Commission Claim* should be quantified in euros rather than dollars (*i.e.*, "currency exchange issue"); and, (3) whether Master Chips is entitled to capitalization of interest (*i.e.*, "compound interest issue"). Final Award, MAXIM EXH. 57, § IV, ¶ 21, pp. 6–7. The Arbitrator ruled against Master Chips on the gross commissions issue (Final Award, MAXIM EXH. 57, ¶ 41, p. 13) and ruled in favor of Master Chips on the currency exchange issue and compound interest issue (Final Award, MAXIM EXH. 57, ¶¶ 59, 76, pp. 19, 27).

These *computational* issues did not involve any re–evaluation of liability since the Arbitrator had made all of his rulings on liability in the Partial Award. Rather, the three *computational* issues merely involved *how* the damages should be calculated. These three *computational* issues were raised by Master Chips in its memorials (*i.e.*, briefs) of December 12 and 21, 2007. Final Award, MAXIM EXH. 57, ¶ 14, pp. 4, 6. Maxim was given an opportunity to respond to the three

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

8

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

computational issues and did so in its memorials of January 15, and 21, 2008. Final Award, MAXIM EXH. 57, ¶¶ 14, 22, pp. 4, 7.

As a result of the *computational* issues, and primarily as a result of calculating the damages in euros rather than dollars, the Arbitrator increased the damages being awarded on certain claims by a total of €1,109,412 or $1,636,300—he awarded Master Chips an additional €821,916 ($1,217,093) as damages for the *Commission Claim* (Final Award, MAXIM EXH. 57, ¶ 59, p. 19),[3] an additional €4,480 ($6,634) for the *Publicity Claim* (Final Award, MAXIM EXH. 57, ¶ 87, p. 32), and an additional €283,016 ($419,090) for the *Equitable Compensation Claim* (Final Award, MAXIM EXH. 57, Table V, p. 34).

Thus, the Final Award sets forth *all* of the damages being awarded, including the damages awarded in the Partial Award as follows:

1. Termination Notice Claim—€174,844 ($258,909) + interest;
2. The Equitable Compensation Claim—€799,558 ($1,183,985) + interest;
3. The Commission Claims—$2,081,043 + €821,916 ($1,217,093) + interest;
4. The Publicity Claim—€17,145 ($25,388) + interest;
5. Reimbursement for the Field Application Engineer—$43,861 + interest;
6. Attorneys Fees—€1,250,000 ($1,851,000);
7. Costs of Arbitration—$186,000; and
8. Costs of Appointed Expert—€15,918 ($23,571).

Leaving aside the Attorneys Fees (6), Costs of Arbitration (7) and Costs of Appointed Expert (8) the total damages awarded to Master Chips amount to approximately $4,766,419. This is $4,016,419 more than the $750,000 originally asserted by Master Chips in its arbitration demand and $2,766,419 million more than the $2 million claim asserted by Master Chips until the eve of the May 2007 arbitration hearings and for which Maxim prepared its defense.

//

//

---

[3] All conversions from euros to dollars in this brief are based on a conversion date of August 25, 2008.

9

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

## III.     ARGUMENT

### A.    The Supplemental Cross–Petition Should Be Denied Because Master Chips Did Not Seek Leave to File It

The Court should deny Master Chips' request to confirm the Final Award because Master Chips never sought, nor obtained, leave of court to file its Supplemental Cross–Petition as required by FEDERAL RULES OF CIVIL PROCEDURE 15(d).  This rule reads in part:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.

*See also Hall v. Central Intelligence Agency*, 437 F.3d 94, 100 (D.C. Cir. 2006) ("[supplemental pleadings] always require leave of the court").

As set forth in its Motion to Strike the Supplemental Cross–Petition (Doc. No. 48), Maxim notified Master Chips that the Supplemental Cross–Petition was subject to a motion to strike, but Master Chips did nothing to rectify the deficiency of failing to obtain leave of court.  As set forth in Maxim's August 11, 2008 Motion to Strike (Doc. No. 48) at 3:10-19, Maxim even sought to enter into a stipulation with Master Chips that would eliminate the need for the filing of supplemental pleadings, but to no avail.  The Court, therefore, should deny Master Chips' Supplemental Cross–Petition.

### B.    The Final Award Should Be Vacated for the Same Reasons as the Partial Award.

#### 1.    The Grounds for Vacating the Partial Award Apply Equally to the Final Award.

A federal court can confirm an international arbitration award only if none of the grounds for refusing confirmation (Article V of the New York Convention) apply.  9 U.S.C. § 207.  Article V of the New York Convention sets forth seven (7) grounds for refusing to confirm an arbitration award, including when the award has been vacated by a competent authority of the country in which, or under the laws of which, the award was made.  Article V(1)(e).  In determining whether to vacate an international arbitration award made in the United States or under its laws, federal courts apply the FAA's standards of vacatur in addition to those encompassed by Article V of the New York Convention.  *See* Maxim's Memorandum 8:24–9:10:4 (Doc. No. 3).

10

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

As set forth in Maxim's January 31, 2008 Petition to Vacate and supporting papers Maxim moved to vacate the Partial Award for three (3) independent grounds, each of which constitutes a separate basis for vacating the Partial Award because each deprived Maxim of a fair hearing. 9 U.S.C. § 10(a)(3); Article V(1)(b).

*First*, the Arbitrator refused to continue the arbitration hearing—twice—even though "sufficient cause" existed to do so. 9 U.S.C. § 10(a)(3). The *sufficient cause* that justified, indeed required, the Arbitrator to continue the November 2006 and the May 2007 arbitration hearings was Master Chips increases of the amount of its claimed damages on the eve of the hearings without first paying the advance costs required by Article 1(3) of the ICC Rules. Maxim's Memorandum 13:4–16 (Doc. No. 3). Not only did the Arbitrator refuse to continue the hearings, he approved Master Chips' increase of damages without first obtaining approval from the ICC Court; and, when the ICC Court rejected the increase the Arbitrator intervened as an *advocate* for Master Chips to persuade the ICC Court not only to allow the increase but to permit Master Chips to increase its damages claim by yet another 30%. Maxim's Memorandum 13:17–23 (Doc. No. 3).

*Second*, the Arbitrator—in violation of his own Procedural Order No. 1—permitted *and encouraged* Master Chips' expert witness, Marc Willemart, to speak in French. English, however, was the official language of the proceedings, with allowance for submitting evidence in Dutch. Maxim's attorney, Bieke Noels, who was responsible for Willemart's examination and who had prepared for months to effectively cross–examine him, is not fluent in French. She was, therefore, prevented from adequately examining Willemart, to Maxim's prejudice. *See* Maxim's Memorandum 14:24–15:17 (Doc. No. 3).

*Third*, after limiting the scope of discovery by approving the parties' November 2006 Stipulation, the Arbitrator simply disregarded it. Under that Stipulation Maxim was not required to contact any third party contractor other than its primary distributor, Arrow, to request sales records. Maxim complied with the stipulation but the Arbitrator, through Master Chips' misrepresentations, concluded months later that Maxim should have produced sales data from the very contractor that *Master Chips* had agreed to contact. The Arbitrator then penalized Maxim by permitting Master Chips to produce publicly available sales data for Maxim products regardless of whether Maxim had

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

11

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

the "design win"—which made a sale commissionable—for the product. As a direct result, the Arbitrator awarded Master Chips over $2 million in past commissions, a gross over–compensation. The Arbitrator, had he evaluated only the relevant sales records, could never have reached such an award of damages. *See* Maxim's Memorandum 15:20–16:22 (Doc. No. 3).

As discussed in Section II.B. above, the purpose of the Final Award was merely to determine the amount of *damages* on certain claims. *Liability* on such damages had already been determined by the Arbitrator in the Partial Award, and the Arbitrator made no new findings of *liability* in the Final Award. The Final Award, therefore, is dependent upon the Partial Award. Thus, the bases asserted by Maxim for vacating the Partial Award apply equally to the Final Award. Accordingly, if the Court finds that any of the three factual bases set forth in Maxim's Petition warrant vacatur, the Court should vacate both the Partial and the Final Awards. Indeed, if anything, the Final Award further demonstrates the need to vacate both awards. Under proper application of the ICC Court Rules, the award to Master Chips should not have exceeded $2 million. The full extent of the prejudice to Maxim is now known – Maxim is now faced with an award of approximately $4,766,419, well in excess of the $2 million limit agreed to by Master Chips, as well as additional costs and fees for a total of approximately $7.95 million.

**2.     Master Chips' Arguments Should Be Rejected—They Are Merely a Misleading Attempt to Reargue Its Opposition to Maxim's Initial Petition to Vacate the Partial Award and Are Irrelevant to the Fundamental Reasons to Vacate Both the Partial Award and the Final Award**

In its memorandum in support of its Supplemental Cross–Petition to Confirm the Final Award Master Chips makes several arguments, each of which the Court should reject. Not only are such arguments an attempt by Master Chips to reargue its prior opposition to Maxim's January 31 Petition to Vacate, they are irrelevant to the fundamental reasons why both awards should be vacated -- the Arbitrator should have continued the arbitration hearings in light of Master Chips' last minute and drastic increase in damages; the Arbitrator should not have allowed Master Chips expert to testify in French; and, the Arbitrator should not have ignored the November 2006 Stipulation.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

12

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

### a. Master Chips' Reliance on the Three *Computational* Issues Addressed in the Final Award Is Misplaced.

In opposing Maxim's Petition to Vacate the Partial Award Master Chips argued that Art. 19 of the ICC Rules granted the Arbitrator authority to consider "new claims" in his discretion; and, therefore, it was not improper for the Arbitrator to allow Master Chips to increase its claims. Master Chips August 7, 2008 Oppos. Memo at 3:22-4:4 (Doc. No. 44). As explained by Maxim, such an argument is unsupportable because the Arbitrator was bound by the rules, such as Article 1(3) which required Master Chips to post the whole of the advance costs on its claims before the Arbitrator could proceed on such claims. Maxim's May 19, 2008 Reply Memo at 1:25-2:15; 4:19-5:3 (Doc. No. 28). Master Chips attempts to reargue this position by seizing upon the three *computational* issues decided by the Arbitrator in the Final Award. The Court should reject such attempts for several reasons.

*First*, Master Chips' argument that Article 19,[4] permitted the Arbitrator to proceed with Master Chips' claims even though Master Chips increased the amount of damages it was seeking by *five times* one business day before the arbitration hearing (Master Chips' Memorandum 3:2–4:4) is unsupportable. Such argument improperly discounts Article 1(3)[5] of the ICC Rules which required Master Chips to post the whole of the advance costs on its claims before the Arbitrator could proceed on such claims. Article 19 does not give the Arbitrator discretion to disregard Article 1(3)

---

[4] Article 19 provides as follows:

> After the Terms of Reference have been signed or approved by the Court, no party shall make new claims or counterclaims which fall outside the limits of the Terms of Reference unless it has been authorized to do so by the Arbitral Tribunal, which shall consider the nature of such new claims or counterclaims, the stage of the arbitration and other relevant circumstances.

[5] Article 1(3) provides as follows:

> In general, after the Terms of Reference have been signed or approved by the Court and the provisional timetable has been established, the Arbitral Tribunal shall, in accordance with Article 30(4) of the Rules, proceed only with respect to those claims or counterclaims in regard to which the whole of the advance on costs has been paid.

13

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

and Master Chips was required to comply with Article 1(3) in order to increase its damages claims. To accept Master Chips' argument would read Article 1(3) out of the ICC Rules.

*Second*, Master Chips' assertion that the Arbitrator "interpreted the Rules in light of basic logic and fairness" in considering the *computational* issues because Master Chips could not have raised the *computational* issues any earlier, that the *computational* issues flowed directly from the decision made by the Arbitrator in the Partial Award, and that the parties reserved the right to alter their demands and defenses (Master Chips' Memorandum 4:5–19) does not justify the Arbitrator allowing Master Chips to increase its damages on the eve of the hearing and denying Maxim's request for a continuance. The three *computational* issues deal solely with how to *calculate* damages; they do not deal with the scope of Master Chips' claims and the dramatic increase in such scope , and Maxim's request for a continuance in light of such changed scope. The Arbitrator, whether through neglect or otherwise, did not consider the Rules at all, let alone logically or fairly, when considering whether to continue the arbitration hearings. Indeed, the Arbitrator professed ignorance of the requirements of Article 1(3) until the ICC Court told him that Master Chips cannot increase its claim for damages until it posts the required advance costs.

*Third*, the *computational* issues were issues of law that did not require Maxim to conduct further discovery or additional factual preparation. Master Chips' increased damages claims, on the other hand, completely altered what was required for Maxim to defend itself, including acquiring additional documents and witnesses, but Maxim was prevented from doing so by the Arbitrator's refusing to continue the arbitration hearings.

**b.    Master Chips Misreads and Misinterprets Art. 1(3) of the ICC Rules.**

In a further attempt to re–argue its opposition to Maxim's Petition to Vacate the Partial Award, Master Chips asserts that Maxim argued "for the first time in its Reply and at the June 2, 2008 hearing" that the Arbitrator's failure to continue the arbitration hearings violated Article 1(3). Such assertion is not only irrelevant to any "new issues" addressed by the Final Award, but is also unsupportable—Maxim has argued throughout that the Arbitrator violated the ICC Court's established procedures, including Article 1(3) for paying advance costs. *See e.g.*, Maxim's Petition, 3:21–23 (Doc. No. 1); Maxim's Memorandum 1:23–25; 6:6; 14:8–13 (Doc. No. 3).

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

14

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

Master Chips also misinterprets Article 1(3) by arguing that because Article 1(3) is prefaced with the words "in general" that the Arbitrator can proceed with respect to claims for which no advance costs have been paid if he does so "under appropriate circumstances." Master Chips' Memo. 5:8–9. Article 1(3) makes no exception for, or reference to, "appropriate circumstances." Moreover, even if it did provide for such discretion the Arbitrator abused that discretion by proceeding on a $10 million claim, as opposed to the $2 million claim, without continuing the arbitration proceedings to give Maxim time to adequately prepare.

### c. Master Chips' Reliance on Arts. 30(2) and 31(10) Is Misplaced.

Master Chips' reliance on Article 30(2) and Article 1(10) (Master Chips Memo. at 5:10-18) is misplaced for several reasons. *First*, contrary to the assertion in Master Chips' Memo. at 5:11–12, Article 30(2) states that the *ICC Court* will set the advance costs "as soon as practicable" not the *Arbitrator*.

*Second*, while Article 1(10) does allow for readjustment of advance costs during the arbitration proceedings, the rule does not support Master Chips' conclusion that the rules allow for setting costs "late in the proceeding, even after discovery has closed." Master Chips' Memo. at 5:11–13. If that were the case a claimant such as Master Chips could simply postpone identifying the true amount of its damages until after discovery closed and the arbitration hearing begins as a strategy to prevent a respondent from fairly preparing its defense. Master Chips used such a tactic here and it resulted in prejudice to Maxim.

*Third*, the impropriety by Master Chips and prejudice to Maxim does not arise from a readjustment of advance costs by the ICC Court or the Arbitrator. Such arises from Master Chips last minute increase in the amount of its claims and the refusal of the Arbitrator to continue the hearing in light of such last minute change in the status of the case. Stated differently, Maxim does not deny that the advance on costs can be readjusted during an ICC Court arbitration proceeding – however, such does not even address, let alone override, 9 U.S.C. § 10(a)(3) and the duty of an arbitrator to postpone a hearing when sufficient cause appears.

*Fourth*, Master Chips' argument is negated by the fact that the ICC Court *rejected* Master Chips' late posting of advance costs. Such were only accepted *after* the Arbitrator intervened on

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

15

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1

Master Chips' behalf, thereby evidencing that Master Chips had not paid the advance costs "as soon as practicable." In this case it was the result of the biased intervention by the Arbitrator on Master Chips' behalf that allowed for the setting of advance costs after discovery closed.[6]

Master Chips' ultimate conclusion that the ICC Court Rules "contemplate a flexible approach" to paying advance costs and considering new issues and that the Arbitrator's actions in this case were consistent with that approach (Master Chips' Memo. at 6:1–4) is misplaced. Regardless of any purported "flexibility" of such rules, they are not, and never can be, so "flexible" as to allow an Arbitrator to deprive a party of a fair hearing, which is what happened here. And, such purported "flexibility" cannot be invoked to override the protections set forth in the New York Convention and Section 10 of the FAA, 9 U.S.C. § 10. Stated simply, Maxim is not trying to deny Master Chips the ability to increase the amount of its claim – Maxim is merely asking for even handed treatment by the Arbitrator, that is, a continuance so that Maxim could fairly prepare for the increased claim.

## IV. CONCLUSION

The Court should vacate the Final Award (as well as the Partial Award) and deny Master Chips' Supplemental Cross–Petition to confirm the Final Award (as well as its initial Cross-Petition to Confirm the Partial Award).

Dated:  August 25, 2008                     BAKER & McKENZIE LLP

By:   /s/ Tod L. Gamlen
Tod L. Gamlen
Attorneys for Petitioner
MAXIM INTEGRATED PRODUCTS, INC.

---

[6] Master Chips cites to Article 30(4) for the proposition that Master Chips acted properly in paying additional advance costs one business day before the May 2007 hearing since the Secretary General of the ICC Court "never directed the Arbitrator to suspend his work." The Secretary General will only make such a direction if a party does not comply with a request for an advance cost. Here, Master Chips complied with the advance costs on a *$2 million claim* so the Secretary General had no reason to make such a direction. These facts, however, do not justify Master Chips' unilateral payment of advance costs in May 2007 on an increased $10 million claim because according to the ICC Court the claim was limited to $2 million, and therefore, no further funds were required.

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

16

Case No. 08 00721-JW
MAXIM'S OPPOSITION TO MASTER CHIPS BVBA'S SUPPLEMENTAL PETITION TO CONFIRM ARBITRATION AWARD
PALDMS/374494.1