1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Maxim Integrated Products, Inc.,                    NO. C 08-00721 JW

              Petitioner,          **ORDER DENYING MAXIM'S PETITION
   v.**                                    **TO VACATE ARBITRATION AWARD;
                        GRANTING MASTER CHIPS' CROSS-
Master Chips, BVBA,**                         **PETITION TO CONFIRM
              Respondent.     ARBITRATION AWARD**

_____/

## I.  INTRODUCTION

     Maxim Integrated Products, Inc. ("Maxim") brings this petition against Master Chips, BVBA

("MC") to vacate a foreign arbitration award.  MC cross-petitions for an order confirming the

arbitration award.  The Court conducted a hearing on June 2, 2008.  Based on the papers submitted

to date and oral argument, the Court DENIES Maxim's petition to vacate and GRANTS MC's cross-

petition to confirm the arbitration award.

## II.  BACKGROUND

     Maxim is an American manufacturer of electronic chips and circuits.  MC is a Belgian

company that formerly distributed Maxim's products.[1]  From 1987 to 1998, MC was the exclusive

distributor of Maxim's products in Belgium and Luxemborg.  In 1998, the parties signed a Non-

---

    [1]  (Petition ¶ 2, Docket Item No. 1.; Answer and Cross-Petition ¶ 2, hereafter, "Answer,"
Docket Item No. 20.)  The parties have each moved to file supplemental petitions with respect to the
final arbitration award.  (See Docket Item Nos. 32, 38, 43, 45, 48.)  The Courts GRANTS the parties
motions to file supplemental petitions for good cause shown and considers the supplemental
petitions alongside the arguments raised in the original petitions.

1  Exclusive Distributor Agreement ("Agreement").[2]  Under the Agreement, Maxim began directly

2  servicing several large customers in Belgium while MC continued to distribute to smaller

3  purchasers. (Agreement at 3.)  On August 31, 2001, Maxim gave MC written notice of its intent to

4  terminate the Agreement effective March 7, 2003.  (Exhibits, Ex. 3.)

5          MC then sued Maxim in Brussels alleging that the termination of the Agreement violated

6  Brussels law.  (Exhibits, Ex. 51 at 3, hereafter, "Arbitration Award.")  The Brussels Court enforced

7  the arbitration clause contained in the Agreement and dismissed the action.  (Id.)

8          On November 30, 2005, MC initiated arbitration proceedings in the International Court of

9  Arbitration ("ICA").  (Exhibits, Ex. 4.)  Maxim answered MC's arbitration claims and asserted

10  counterclaims.  The ICA appointed Eric van Ginkel ("Arbitrator") as sole arbitrator.  (Exhibits, Ex.

11  5.)  Although MC's claims were governed by Belgian law, the Arbitration was conducted in the

12  United States under United States procedural law.  (Exhibits, Ex. 8, hereafter, "Procedural Order No.

13  1.")

14          The Arbitrator conducted hearings in November 2006 and May 2007.  (Arbitration Award at

15  3.)  On November 9, 2007, the Arbitrator ruled in favor of MC on several claims including, *inter*

16  *alia*, whether Maxim properly terminated the Agreement.  The Arbitrator granted MC a partial

17  award of approximately $3 millions.  (Id. at 74-75.)  The remainder of the award was to be

18  calculated by a damages expert appointed by the Arbitrator.  (Id.)  On July 12, 2008, the Arbitrator

19  granted a final award to MC of approximately $9 millions.  (Docket Item No. 41.)

20          Presently before the Court are Maxim's petition to vacate and MC's cross-petition to confirm

21  the Arbitration Award.

22                              **III.  STANDARDS**

23          "[A] party to a foreign arbitration may apply to federal district court for an 'order confirming

24  the award as against any other party to the arbitration.'"  Ministry of Def. of the Islamic Republic of

25

26  _____

27          [2] (Maxim's Exhibits in Support of Petition to Vacate Arbitration Award, hereafter, "Exhibits," Ex. 2, hereafter, "Agreement," Docket Item No. 2.)

28                                    2

United States District Court
For the Northern District of California

1   Iran v. Gould, Inc. ("Gould II"), 969 F.2d 764, 770 (9th Cir. 1992) (quoting 9 U.S.C. § 207).  The

2   enforcement of foreign arbitration agreement is governed by the Convention on the Recognition and

3   Enforcement of Foreign Arbitral Awards ("Convention").  31 U.S.T. 2517 (codified at 9 U.S.C. §§

4   201, *et seq.*); see China Nat. Metal Products Import/Export Co. v. Apex Digital, Inc., 379 F.3d 796,

5   799 (9th Cir. 2004).  The district court's review of a foreign arbitration award is limited; the "court

6   shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or

7   enforcement of the award specified in the . . . Convention."  9 U.S.C. § 207; see Gould II, 969 F.2d

8   at 799.

9       Under the Convention, a court may refuse to recognize or enforce an arbitral award if:

10  (a)   The parties to the agreement ... were ... under some incapacity, or the said agreement
          is not valid under the law ...; or

11  (b)   The party against whom the award is invoked was not given proper notice of the
          appointment of the arbitrator or of the arbitration proceedings ...; or

12  (c)   The award deals with a difference not contemplated by or not falling within the terms
          of the submission to arbitration, or it contains decisions on matters beyond the scope

13        of the submission to arbitration ...; or

    (d)   The composition of the arbitral authority or the arbitral procedure was not in
14        accordance with the agreement of the parties ...; or

    (e)   The award has not yet become binding on the parties, or has been set aside or
15        suspended by a competent authority of the country in which, or under the law of
          which, that award was made.

16
    Convention art. V(1), Dec. 29, 1970, 21 U.S.T. 2517.  A court may also refuse to enforce an arbitral
17
    award if it finds that:
18
    (a)   The subject matter of the difference is not capable of settlement by arbitration under
19        the laws of [the United States]; or

    (b)   The recognition or enforcement of the award would be contrary to the public policy
20        of [the United States].

21  Id. art V(2).

22      "A party seeking to avoid enforcement is limited to the seven defenses as listed in Article V

23  of the Convention, and also has the burden of proof to establish any defense."  Ministry of Def. of

24  Islamic Republic of Iran v. Gould Inc. ("Gould I"), 887 F.2d 1357, 1364 n.11 (9th Cir. 1989) (citing

25  Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier (Rakta), 508 F.2d

26  969, 973 (2nd Cir. 1974).  However, Article V(1)(e) of the Convention has been interpreted to

27

28                                             3

United States District Court

For the Northern District of California

1  incorporate additional defenses available under the local laws of the country in which, or under the

2  law of which, the arbitral award was made.  See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us,

3  Inc., 126 F.3d 15, 21 (2nd Cir. 1997).  In the United States, arbitration proceedings are governed by

4  the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*

5          Under the FAA, an arbitral award may be set aside if:

6      (1)   the award was procured by corruption, fraud, or undue means;
       (2)   there was evident partiality or corruption in the arbitrator;
7      (3)   the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon
             sufficient cause shown, or in refusing to hear evidence pertinent and material to the
8            controversy; or of any other misbehavior by which the rights of any party have been
             prejudiced; or
9      (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a
             mutual, final, and definite award upon the subject matter submitted was not made.
10
11  9 U.S.C. § 10(a).  The party challenging an award under these provisions also bears the burden of

12  proving facts which would establish the reasons to vacate the award.  Sheet Metal Workers Int'l.

13  Ass'n, Local No. 162 v. Jason Mfg., Inc., 900 F.2d 1392, 1398 (9th Cir. 1990).

14                              **IV.  DISCUSSION**

15          Maxim petitions to vacate the Arbitration Award on the grounds that the Arbitrator engaged

16  in misconduct by (1) refusing to postpone evidentiary hearings, (2) allowing a key witness to testify

17  in French without an interpreter for counsel, and (3) considering evidence that the parties had agreed

18  to exclude.  (Maxim's Memorandum in Support of Petition at 4, hereafter, "Memo in Support,"

19  Docket Item No. 3.)  The Court considers each issue in turn.

    **A.      Refusal to Postpone Evidentiary Hearing**
20
21          Maxim contends that the arbitral award should be vacated because the Arbitrator failed to

22  postpone the evidentiary hearings despite last minute changes in MC's claims.  (Memo in Support at

23  4.)

24          Failure to postpone a hearing may be considered a cause for vacating an arbitration award.  9

25  U.S.C. § 10(a)(3).  However, "a court's review of the arbitrator's decision to postpone or not

26  postpone a hearing is quite limited."  ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1463 (10th

27  Cir. 1995).  Courts will avoid intervening in an arbitrator's decision not to postpone a hearing if any

28                                          4

1    reasonable basis for the decision exists.  See El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co., 247

2    F.3d 843, 848 (8th Cir. 2001); Scott v. Prudential Sec. Inc., 141 F.3d 1007, 1016 (11th Cir. 1998).

3    To constitute misconduct requiring vacatur of an award, an error in the arbitrator's determination

4    must "so affect the rights of a party that it may be said that [it] was deprived of a fair hearing."

5    Newark Stereotypers' Union v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968).

6        Thus, the Court considers (1) whether the Arbitrator made an error in refusing to postpone

7    evidentiary hearings, and (2) whether such an error would have caused prejudice to Maxim.

8        **1.    Whether the Arbitrator Erred**

9        In this case, Maxim requested a continuance of both the November 2006 and May 2007

10   hearings based on the changing scope of MC's claims in the arbitration.  MC's initial request before

11   the International Court of Arbitration ("ICA") alleged damages in excess of €9,000,000.  (Exhibits,

12   Ex. 4.)  However, MC limited its claim to €750,000 because it could not afford to pay the advance

13   costs required by the ICA to prosecute the full amount of the claim.[3]  (Id.)  In September and

14   October, 2006, MC attempted to increase its damages claim to approximately $11,000,000 and to

15   add additional legal theories under Belgian law.[4]  Maxim objected to the increase and requested a

16   continuance of the November 2006 hearing so that it could conduct relevant discovery and prepare a

17   defense with regard to the new claims.  (Exhibits, Ex. 12.)  The Arbitrator denied the request.[5]

18   (Swinnen Decl. ¶ 23.)  The hearing was held as scheduled and the parties presented fact evidence

19   regarding their claims.  (Id.)

20       On January 10, 2007, the ICA permitted MC to increase its claim to approximately

21   $10,000,000 conditioned on the payment of $105,000 in additional advance fees.  (Exhibits, Ex. 25.)

22

23   _____

24       [3]  A request for arbitration before the ICA must be accompanied by advance payment of
     administrative and arbitrator fees.  (Exhibits, Ex. 1 - ICC Rules of Arbitration.)  The amount of the
     fees depends on the amount in controversy.  (Id.)

25

26       [4]  (Declaration of Jan Swinnen in Support of Maxim's Petition to Vacate Arbitration Award ¶
     23, hereafter, "Swinnen Decl.," Docket Item No. 4.)

27       [5]  Neither Maxim nor MC has presented the Court with the Arbitrator's reason for denial.

28                                          5

1    Responsibility for payment of the additional fees was originally divided evenly between the parties.

2    (Id.)  Maxim objected to the additional fees on the grounds that it had not changed the amounts of its

3    counterclaims and should not be required to pay additional advance costs.  (Exhibits, Ex. 28.)  In

4    response, the ICA calculated the advance costs separately for each party: Maxim was required to pay

5    an additional $20,873 and MC was required to pay an additional $161,808.[6]  (Exhibits, Ex. 29.)

6        MC was unable to pay its share of the additional advance costs.  (Exhibits, Ex. 31.)

7    Consequently, on February 1, 2007, MC reduced its claim to $2,000,000.  (Id.)  The ICA reduced the

8    additional advance fees owed by MC to $105,000.  (Exhibits, Ex. 33.)  On March 14, 2007, MC paid

9    the additional fees to support its $2,000,000 claim.  (Exhibits, Ex. 34.)

10       On Friday, May 4, 2007, the last business day before the Monday, May 7, 2007 hearing, MC

11   wired an additional $56,808 to the ICA so that it might assert its full claim of approximately $10

12   million in damages.[7]  (Exhibits, Ex. 38.)  At the hearing on May 7, 2007, Maxim objected to the

13   increase in damages and requested a continuance of the hearing in order for it to re-evaluate its

14   defense.  (Exhibits, Ex. 43.)  The Arbitrator denied the request for a continuance and permitted MC

15   to assert its increased claim for $10 million.  (Exhibits, Ex. 42A.)  The Arbitrator based his decision

16   on a finding that Maxim was always aware of the full amount of the claim and could not claim

17   prejudice based on the formal increase.  (Id.)

18       As noted above, the ICA Rules provide that a request for arbitration must be accompanied by

19   advance payment of administrative and arbitrator fees.  (Exhibits, Ex. 1.)  The amount of the fees

20   paid depends on the amount in controversy – the higher the fee paid the greater the amount allowed.

21   (Id.)  However, the Rules allow readjustment of these fees "at any time during the arbitration."  (Id.)

22   In light of these rules, Maxim has not met its burden of showing the Arbitrator had no reasonable

23   _____

24       [6]  The ICA fee schedule sets a higher rate for smaller claims.  Thus, the parties' total fees are
     greater when the claims and counterclaims are considered separately than when the claims and
25   counterclaims are considered together.  (Exhibits, Ex. 1.)

26       [7]  The ICA recognized that MC's actions were procedurally improper.  (Exhibits, Exs. 43-
     44.)  However, it ultimately permitted MC to formally increase its claim to $13,578,174.  (Exhibits,
27   Exs. 45-50.)

28                                                          6

1   basis for his decision.  Accordingly, the Court finds that the arbitrator did not err in failing to

2   postpone the hearings at issue.

3               **2.       Whether Maxim Was Prejudiced**

4           Assuming *arguendo* that Maxim could show error on the part of the Arbitrator, the Court

5   addresses the issue of prejudice.  Maxim contends that it was prejudiced because its defense strategy

6   going into the November 2006 hearing had been premised on MC's claim for €750,000 and its

7   strategy going into the May 2007 hearing was premised on MC's claim for $2,000,000, so it was

8   unprepared at both hearings to defend a $10 millions claim.  (Memo in Support at 13.)

9           Maxim's contentions are undermined by the fact that it was on notice from the beginning of

10  the arbitration that MC was attempting to collect more than $10 millions in damages.  The initial

11  Claim before the ICA stated that MC sought over €9,000,000 in total damages but limited its claim

12  to €750,000 "out of sheer necessity" because it could not pay the advance costs.  (Exhibits, Ex. 4.)

13  In its Answer to the Arbitration Claim, Maxim acknowledged that MC was seeking more than $10

14  millions in damages.  (Exhibits, Ex. 7 at 8.)  Maxim also acknowledged that although the formal

15  claim was limited to €750,000, MC had reserved its right to claim the full $10 millions upon

16  subsequent payment of advance fees.  (Id.)  The Terms of Reference, which set forth the procedures

17  and scope of the Arbitration, also stated that MC was seeking more than $10 millions in damages,

18  subject to payment of advance fees.   (Id., Ex. 9 § 11.)  MC attempted to formally increase the

19  amount of its claim in September 2006 and in January 2007.  Although Maxim successfully

20  challenged MC's attempts on procedural grounds, Maxim was clearly aware that MC intended to

21  assert the full amount of its claim.  Thus, Maxim's contention that it was somehow surprised when

22  MC paid the advance fees and asserted a claim of more than $10 million is without merit.

23          Maxim's contention that it would have conducted additional discovery regarding damages is

24  equally unpersuasive.[8]  Per the terms of the arbitration, evidence regarding damages had to be

25  _____

26          [8]  Maxim offers only one specific example of how it was unprepared: Maxim contends that
    had it known it faced a potential liability of more than $10 millions, it would have sought additional
27  discovery from one of its main customers regarding sales data.  (Memo in Support at 14.)

28                                                          7

United States District Court

For the Northern District of California

1  submitted by the November 2006 hearing. (Exhibits, Ex. 10.) Maxim concedes that going into the

2  November 2006 hearing, the Arbitrator had assumed the formal amount of the claim was more than

3  $10 million; it was not until after the hearing that Maxim successfully challenged the procedure MC

4  used to increase its claim. (Swinnen Decl. § 23.) Although Maxim requested and was denied a

5  continuance of the hearing, Maxim did not subsequently attempt to conduct the additional discovery

6  or supplement the record with additional evidence. The record shows that the Arbitrator continued

7  to accept additional evidence even after the close of discovery. (Arbitration Award ¶¶ 8-9.) Thus,

8  Maxim could have conducted the discovery at issue, but chose not to.

9         Finally, Maxim has failed to show the relevance or impact of the additional discovery it

10 claims it would have conducted. The additional discovery would have purportedly included sales

11 data from Alcatel, one of Maxim's largest customers. (Memo in Support at 14.) Maxim states that

12 this evidence would have shown which "Alcatel sales were commissionable." (Maxim's Reply In

13 Support of Petition to Vacate Arbitration Award at 9, hereafter, "Reply," Docket Item No. 28.)

14 However, Maxim provides no evidence (other than mere speculation) that the data from Alcatel

15 would have significantly altered the damages calculation. Thus, Maxim has failed to satisfy its

16 burden of proving that it was prejudiced by the Arbitrator's decision to deny its request to postpone

17 the hearings. Accordingly, the Court DENIES Maxim's Petition to vacate the award on this ground.

18 **B.**    **Permitting a Witness to Testify in French**

19        Maxim contends that it was prejudiced when the Arbitrator permitted MC's expert witness

20 Marc Willemart to testify in French.[9] (Memo in Support at 15.)

21        "In making evidentiary determinations, arbitrators are not required to follow all the niceties

22 observed by the federal courts, but they must give the parties a fundamentally fair hearing."

23 Rosensweig v. Morgan Stanley & Co., Inc., 494 F.3d 1328, 1333 (11th Cir. 2007) (citing Tempo

24 Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2nd Cir. 1997)). Evidentiary decisions that prevent a

25 party from adequately rebutting evidence may violate the party's rights and may be a ground for

26 _____

27        [9] Mr. Willemart is MC's expert on Belgian law.

28                                          8

vacating an arbitration award.  <u>Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.</u>, 935 F.2d 1019, 1025 (9th Cir. 1991).

In this case, the Arbitrator specified that the official language of the arbitration would be English, but that written and oral evidence could be submitted in English or Dutch without a need for translation.  (Exhibits, Ex. 8.)  At the May 7, 2007 hearing, MC began questioning Mr. Willemart in French.  (Exhibits, Ex. 42A.)  Counsel for Maxim objected on the grounds that the languages of the arbitration were English and Dutch and that they were not prepared to cross-examine based on French answers.  (<u>Id.</u>)  Counsel for MC agreed to conduct the examination in English or Dutch.  (<u>Id.</u>)  The Arbitrator then interjected and asked Mr. Willemart whether he would prefer to testify in French.  (<u>Id.</u>)  Mr. Willemart answered that it would be easier for him to explain the nuances of the law in French.  (<u>Id.</u>)  Maxim suggested that Mr. Willemart testify in French but repeat his answers in Dutch upon request.  (<u>Id.</u>)  The Arbitrator adopted Maxim's suggestion.  (<u>Id.</u>)  Since Maxim proposed, and agreed to, the solution reached by the Arbitrator, Maxim has failed to meet its burden of showing it did not have an adequate opportunity to rebut the evidence presented by the expert witness.  Accordingly, the Court DENIES Maxim's Petition to vacate the award on this ground.

**C.**    **<u>Considering Evidence the Parties Had Agreed to Exclude</u>**

Maxim contends that the Arbitrator committed misconduct by accepting evidence that the parties had agreed by stipulation to exclude.  (Memo in Support at 7.)

Decisions to accept or exclude evidence, "absent bad faith or error, are left entirely to the discretion of the arbitrator."  <u>Brotherhood of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.</u>, 522 F.3d 746, 750 (7th Cir. 2008).  "Arbitrators may admit and rely on evidence inadmissible under the Federal Rules of Evidence."  <u>Sunshine Min. Co. v. United Steelworkers of America, AFL-CIO, CLC</u>, 823 F.2d 1289, 1295 (9th Cir. 1987). "Similarly, a party [to an arbitration] does not have an absolute right to cross-examination."  <u>Id.</u> "The arbitrator must, however, give each of the parties to the dispute an adequate opportunity to

United States District Court

For the Northern District of California

1  present its evidence and arguments." Hoteles Condado Beach, La Concha & Convention Center v.

2  Union de Tronquistas Local, 901, 763 F.2d 34, 40 (1st Cir. 1985)

3      In this case, the Arbitrator permitted MC to prove its damages by relying on publicly

4  available information regarding Maxim's sales to a third-party distributor.  (See Arbitration Award.)

5  The parties had initially stipulated that Maxim would present the sales data from its internal records.

6  The record reflects that a discovery dispute arose between the parties over whether Maxim had

7  produced the data specified in the stipulation.[10]  On April 14, 2007, the Arbitrator warned Maxim

8  that "in the absence of data supplied by [Maxim], [MC] has the right to present its own best

9  evidence.  [MC] is therefore free to either obtain such data directly from [the third-party], or to

10  extrapolate in a reasonable manner such data from publicly available information."  (Exhibits, Ex.

11  36.)  In the Arbitration Award, the Arbitrator stated that the disclosures provided by Maxim were

12  incomplete.  (Arbitration Award at 65.)  The Arbitrator then proceeded to calculate damages based

13  on all the evidence before him.  (Id. at 66.)

14      It appears from the record that the Arbitrator's decision to consider the outside data was

15  essentially a sanction against Maxim for failing to comply with discovery obligations.  The

16  Arbitrator warned Maxim in advance of the May 2007 hearing that he would consider outside data

17  unless Maxim produced its records.  There is no indication that the Arbitrator's finding regarding

18  Maxim's compliance was made in bad faith.  Thus, the Court does not find that the Arbitrator acted

19  improperly in considering the evidence submitted.  Accordingly, the Court DENIES Maxim's

20  Petition to vacate the award on this ground.

21      In sum, since Maxim has failed to meet its burden of showing a ground for refusal or deferral

22  of recognition of the Arbitrator's Award, the Court confirms the arbitration awards issued on

23  November 9, 2007 and July 12, 2008 pursuant to 9 U.S.C. § 207.

24

25

26

27  [10] (See Declaration of Sabine Thielemans in Opposition to Petition to Vacate, Ex. I, Docket Item No. 23.)

28

**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.  CONCLUSION**

The Court DENIES Maxim's Petition to Vacate the Arbitration Award and GRANTS MC's Cross-Petition to Confirm the Arbitration Award.[11]


Dated:  August 27, 2008                                    _____
                                                           JAMES WARE
                                                           United States District Judge

---

[11]  MC filed a motion to strike a portion of Maxim's Reply brief on the ground that it raised new arguments which were not contained in the opening brief.  (See Docket Item No. 29.)  Maxim filed a motion to disregard MC motion to strike.  (See Docket Item No. 32.)  Since the Court did not rely on the arguments MC finds objectionable, both motions are DENIED as moot.

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Gerald Michael Salcido jerry.m.salcido@bakernet.com
Lawrence J. Siskind siskind@harveysiskind.com
Seth Isaac Appel sappel@harveysiskind.com
Tod L. Gamlen tod.l.gamlen@bakernet.com

**Dated:  August 27, 2008**                                            **Richard W. Wieking, Clerk**


                                                                       **By:   /s/ JW Chambers**
                                                                            **Elizabeth Garcia**
                                                                            **Courtroom Deputy**

**United States District Court**
For the Northern District of California